UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND; BOARD OF TRUSTEES OF THE IUOE LOCAL 4 ANNUITY & SAVINGS FUND; BOARD OF TRUSTEES OF THE IUOE LOCAL 4 HEALTH AND WELFARE FUND; BOARD OF TRUSTEES OF THE HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND; INTERNATIONAL UNION OF OPERAT-ING ENGINEERS LOCAL 4; IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST; IUOE LOCAL 4 SOCIAL ACTION COMMITTEE<br><br>    Plaintiffs,<br><br>  v.<br><br>GINA ALONGI<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No.<br>:<br>:<br>:<br>: |

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

**<u>PARTIES</u>**

1. Plaintiffs are the Board of Trustees of several multiemployer employee benefit plans that were created via collective bargaining between International Union of Operating Engineers Local 4 ("Local 4" or the "Union") and employers who are bound to such collective bargaining agreements, together with a Union and a labor management trust fund.

2. The IUOE Local 4 Pension Fund (hereinafter the "Pension Fund") is a trust fund established in accordance with the requirements of Section 302(c) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5). The Trustees of the Pension Fund, who are plaintiffs in this action, are collectively the "named fiduciary," "plan administrator" and "plan sponsor," and each

1

is an individual "fiduciary" within the meaning of Sections of 402(a) and 3(16) and 3(21) of the Employee Retirement Income Security Act of 1974 (as amended) ("ERISA"), 29 U.S.C. §§1102(a) and 1002(16) and (21).  The Pension Fund was established and is maintained according to the provisions of its Restated Agreement and Declaration of Trust.

3. The Pension Fund is a "multiemployer plan," "employee benefit plan" and "employee pension benefit plan" within the meaning of Sections 3(37), 3(3), and 3(2) of ERISA, 29 U.S.C. §1002(37), (3) and (2) and provides pension benefits through a defined benefit program overseen by the Trustees.

4. The IUOE Local 4 Annuity & Savings Fund (hereinafter the "Annuity Fund") is a trust fund established in accordance with the requirements of Section 302(c) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5).  The Trustees of the Pension Fund, who are plaintiffs in this action, are collectively the "named fiduciary," "plan administrator" and "plan sponsor," and each is an individual "fiduciary" within the meaning of Sections of 402(a) and 3(16) and 3(21) of the ERISA, 29 U.S.C. §§1102(a) and 1002(16) and (21).  The Annuity Fund was established and is maintained according to the provisions of its Restated Agreement and Declaration of Trust.

5. The Annuity Fund is a "multiemployer plan," "employee benefit plan" and "employee pension benefit plan" within the meaning of Sections 3(37), 3(3), and 3(2) of ERISA, 29 U.S.C. §1002(37), (3) and (2) and provides pension benefits through a defined contribution program overseen by the Trustees.

6. The IUOE Local 4 Health and Welfare Fund (hereinafter the "Health and Welfare Fund") is a trust fund established in accordance with the requirements of Section 302(c) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5).  The Trustees of the Health and Welfare Fund, who are plaintiffs in this action, are collectively the "named fiduciary," "plan administrator"

and "plan sponsor," of the Health and Welfare Fund and each is an individual "fiduciary" within the meaning of Sections 402(a) and 3(16) and 3(21) of ERISA, 29 U.S.C. §§1102(a) and 1002(16) and (21). The Health and Welfare Fund was established and is maintained according to the provisions of its Restated Agreement and Declaration of Trust.

7. The Health and Welfare Fund is a "multiemployer plan," "employee benefit plan" and "employee welfare benefit plan" within the meaning of Sections 3(37), 3(3), and 3(1) of ERISA, 29 U.S.C. §1002(37), (3) and (1) and provides medical, surgical, prescription drug, and other related benefits through a program overseen by the Trustees.

8. The Hoisting and Portable Engineers Apprenticeship & Training Fund (hereinafter the "Training Fund") is a trust fund established in accordance with the requirements of Section 302(c) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5). The Trustees of the Training Fund, who are plaintiffs in this action, are collectively the "named fiduciary," "plan administrator" and "plan sponsor," of the Training Fund and each is an individual "fiduciary" within the meaning of Sections 402(a) and 3(16) and 3(21) of ERISA, 29 U.S.C. §§1102(a) and 1002(16) and (21). The Training Fund was established and is maintained according to the provisions of its Restated Agreement and Declaration of Trust.

9. The Training Fund is a "multiemployer plan," and "employee benefit plan" and "employee welfare benefit plan" within the meaning of Sections 3(37), 3(3), and 3(1) of ERISA, 29 U.S.C. §1002(37), (3) and (1) and provides a training program for apprentices and journeymen operating engineers in which the skills necessary to learn and master the craft are taught.

10. The Pension Fund, Annuity Fund, Health and Welfare Fund and Apprenticeship Fund are hereinafter jointly or severally referred to as "the Funds" or "ERISA Funds." The Funds are

financed by means of employer contributions paid for each hour of work performed by participants working under the terms of an IUOE Local 4 collective bargaining agreement.

11. The Funds are collectively administered by employees retained on behalf of the Trustees to carry out their day to day operations, including but not limited to, the collection of employer contributions, the crediting of hours worked by participants, determinations of eligibility for benefits, and the payment of benefits and reasonable administrative expenses. These employees are employed by the Health and Welfare Fund, but perform work for each of the Funds and other plaintiffs pursuant to the terms of a shared services agreement, which requires each Fund to reimburse the Welfare Fund for its proportionate share of such services. (The Amended Agreement to Share Administrative Services and Office Space ("Shared Services Agreement") is attached hereto as Exhibit A to the Complaint.)

12. Fund Office employees also provide services to the International Union of Operating Engineers Local 4 ("Union"), a labor organization as defined in 29 U.S.C. §152(5), the Union's Social Action Committee (SAC), as well as the Local 4 Labor Management Cooperation Trust Fund (LMCT), a labor management committee as defined in 29 U.S.C. §186(c)(9). The Union, LMCT, and SAC are all charged with their proportionate share of Fund Office services under the Shared Services Agreement. In 2017, the combined cost allocation to the Union, LMCT, and SAC amounted to over 10% of shared services provided under the Shared Services Agreement.

13. Fund Office employees work out of an office leased by the Funds from Local 4 at 16 Trotter Drive, Medway, MA 02053. The employees work under the day to day direction of a Fund employee with the title of Administrator. In addition to supervising Fund employees and overseeing the day to day operations of the Funds, the Administrator acts as the primary liaison to the Trustees and to outside professional advisors retained by the Funds.

14. Defendant Gina Alongi (hereinafter "Ms. Alongi" or "Defendant"), who resides at 4 Orchard Hill Drive, Westborough, MA 01581, served as the Administrator for the Funds from 1996 until July 21, 2020, when she was terminated by the Trustees.

15. As the Administrator, Ms. Alongi was entrusted with overseeing the day to day operations of the Funds in accordance with plan documents and policies adopted by the Trustees, the named fiduciaries of the respective Funds.  As shown below, however, Ms. Alongi impermissibly exercised discretion over the use of plan assets and made independent decisions regarding the use of Fund resources in a manner contrary to plan documents and policies.  When so acting, she was at all times relevant to this action a fiduciary as defined in ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

16. As a fiduciary, Ms. Alongi had a duty to act for the sole and exclusive benefit of the Funds and their participants and beneficiaries, to use plan assets for the sole purpose of providing benefits or for defraying legitimate and reasonable expenses of the Funds, and to conduct herself with the care, skill, prudence and diligence of a prudent expert.   29 U.S.C. §1104(a)(1)(A) and (B).

17. As a fiduciary, Ms. Alongi further had the duty to conduct herself in accordance with the documents and instruments governing the Funds' operations, including such written policies and practices adopted by their respective Boards of Trustees.   29 U.S.C. §1104(a)(1)(D).

18. The Funds are subject to the extensive and elaborate legal and regulatory framework found in ERISA and its attendant regulations.   As such, they are additionally subject to periodic review of its operations by both the Internal Revenue Service and the United States Department of Labor, both of which undertake oversight functions with respect to such plans.

19. The Funds have been subject to audits by both the Department of Labor and the Internal Revenue Service over the years. Following one such audit in 2004, the Department of Labor required reforms to the manner in which the Funds allocate shared expenses for, among other things, the cost of each employee. The reforms in the manner in which expenses were allocated were required so that the Funds would comply with the requirements of Prohibited Transaction Exemption 77-10 that requires a pro rata allocation of such expenses. As a result, the Funds agreed that each employee would keep a daily time sheet in which the services they rendered and the Fund to which they rendered such services was noted. Defendant Alongi served as Administrator at the time that this reform was agreed to with the Department of Labor and was well aware that it was a crucial aspect of the resolution of that governmental audit.

20. Defendant Alongi, while employed as the Administrator, was responsible for the oversight of all Fund employees and to assure compliance by them with Fund policies. Defendant was also subject to those same policies, including the obligation to track her time so that the cost of her services could be appropriately allocated among the Funds, the Union, LMCT, and SAC.

21. Defendant Alongi received a substantial compensation package for her role as Administrator, including a salary at the time of her dismissal of $248,745, participation in three different pension plans, the IUOE Local 4 Pension Fund, the IUOE Local 4 Annuity Fund, and the International Union of Operating Engineers General Pension Plan, all of which were completely employer financed, fully employer paid medical coverage through the IUOE Local 4 Health and Welfare Fund, for total employee benefit costs of $57,540, and an employer provided automobile with an estimated annual cost to the Funds of $24,515. During the time period relevant to this lawsuit, from January 1, 2015 through the date of her termination in 2020, the overall annual compensation package that Defendant Alongi received from the Funds was worth in excess of

$300,000 per year in all years.  Defendant Alongi was also entitled to four weeks of paid vacation per year and a generous allotment of paid sick leave.

22. The position of Administrator, as befits its responsibilities and compensation, is a full time job.  The Fund office maintains normal business hours of 8:00 AM to 4:00 PM, with a one-hour lunch break.  It was the expectation of the Trustees that the Administrator would be present in the office during these hours, or that if permission was granted for her to work shifted hours, that she would provide at least seven hours of daily work and would devote her full working hours to the operations of the Funds and do so in compliance with Fund documents and policies.

## JURISDICTION

23. This Court has jurisdiction under 28 U.S.C. § 1331, under Sections 404, 409, and 502 of ERISA, 29 U.S.C. §§ 1104, 1109, and 1132.

24. Venue is proper in this district pursuant to 29 U.S.C. §§ 1132(e)(2) and 28 U.S.C. §1391(b) because the Fund is located in this district.

25. This Court has personal jurisdiction over the Defendant pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

## COUNT I
### (FOR BREACH OF FIDUCIARY DUTY)

26. The Plaintiffs hereby adopt, incorporate and restate in Count I paragraphs 1 through 25 as if fully set forth in Count I.

27. The Shared Services Agreement provides in part at page 3, paragraph 3 that "the Fund Office Staff will maintain records of the amount of salary during each pay period charged to each Organization by each employee of the Fund office and the amount of time spent by Fund Office Staff who perform work for more than one Organization on the work performed for each Organization." In other words, the Shared Services Agreement required all employees to keep track of their time and,

7

to the extent that they worked for Funds other than the Health and Welfare Fund, to keep records of the time they devoted to each specific Fund or "Organization" as the Agreement terms it. Employees were expected to do this by means of daily time sheets.

28. Defendant Alongi failed to maintain accurate records of her working time despite the requirements of the Shared Services Agreement and despite the fact that she provided at least some services to each of the constituent Funds for which she served as Administrator. Rather, instead of filling out the required daily time sheets, Defendant Alongi simply recycled from year to year earlier allocations of time that she had spent working for each Fund. Upon information and belief, Defendant Alongi had originally filled out time sheets like the rest of her staff, but quickly abandoned the required process, instead having the Funds' accounting firm simply "interview" her annually to estimate her allocations contrary to the mandate of the Shared Services Agreement.

29. In so doing, Ms. Alongi acted contrary to the written documents governing the operations of the Funds, in the process creating possible misallocation of expenses between the related Funds, potentially subjecting the Funds and Trustees to liability for Prohibited Transactions under ERISA for violation of the requirements of Prohibited Transaction Exemption 77-10, said exemption being based on a pro rata allocation of expenses, as well as omitting those hours of work performed for a completely unrelated entity during her expected normal working hours.

### A.   Work for Massachusetts Coalition of Taft-Hartley Funds by Defendant Gina Alongi

30. The Massachusetts Coalition of Taft-Hartley Funds (the "Coalition") is an organization consisting of multiemployer health and welfare funds in the New England region. The Coalition was formed to serve as an organization in which similarly situated health and welfare funds, their trustees, administrators, and professional advisors could come together to discuss issues of mutual concern, band together for purposes of obtaining advantageous agreements with

providers based on greater heft in the marketplace, and otherwise attempt to advance the interests of such funds.

31. Defendant Alongi served as the Executive Director of the Coalition during all times relevant to this Complaint.  During 2019, the last year for which a Form 990 for the Coalition is publicly available, Ms. Alongi was paid $46,000 per year for her work for the Coalition, and she reported and averred that she performed ten hours of work per week in return for this compensation.  (Attached as Exhibit B to this Complaint.)  All Form 990s dating back to at least 2013 contain this same report and averment that she worked ten hours per week for the Coalition.

32. The Funds received no more benefit from Ms. Alongi serving as Executive Director of the Coalition than they would have received had she simply been an unpaid participant at the Coalition's meetings.  Further, upon information and belief, it has been many years since the Local 4 Funds derived any substantial pecuniary benefit from the Coalition's agreements as the Health and Welfare Fund ceased using many of the Coalition's preferred vendors and products.

33. Unbeknownst to the Trustees of the Local 4 Funds, Ms. Alongi was regularly performing work for the Coalition during the Funds' standard work day of 8:00 AM to 4:00 PM, a period of time for which she was supposed to be working for the sole and exclusive benefit of the Local 4 Funds and their participants and beneficiaries and for which she was receiving total compensation in excess of $300,000 per year.

34. After several of Ms. Alongi's transgressions came to light in 2020 and she was terminated, the Trustees engaged the accounting firm of Schultheis & Panettieri LLP to conduct a forensic audit of the time that Ms. Alongi was actively working during the period January 1, 2015 up to the date of her termination in 2020.  This review of Ms. Alongi's work activities, included a review of her arrival times at the office by means of ascertaining when she entered the Fund office

via electronic key, her email activity on her Fund-provided email account, and call activity on both her office landline and Fund-provided cellular phone.

35. The analysis by Schultheis & Panettieri LLP found that for the time period under review, Ms. Alongi was seldom at the Fund office when it opened at 8:00 AM and, indeed, routinely arrived hours after the established start of the workday. As set forth in the attached Exhibit C to this Complaint, Ms. Alongi's average arrival time to the office for the years in question were as follows:

    2015:  10:58 AM

    2016:  10:41 AM

    2017:  10:28 AM

    2018:  9:55 AM

    2019:  9:50 AM

    2020:  8:19 AM

36. The forensic analysis of Ms. Alongi's computer, emails, and land and cellular phones shows that on the vast majority of days, her work activities ceased at or around 4:00 PM. Further analysis of Defendant Alongi's email and phone activity during the period in question demonstrate that she performed little or no work during weekends or after normal business hours during this time period. There were very few outgoing calls made from her office phone after 4:00 p.m. (See Exhibit D to this Complaint).

37. During the pandemic between March and July 2020, when Ms. Alongi did not have access to her office phone, the vast majority of calls made after 4:00 p.m. on her work-issued cell phone were to family or friends. (See Exhibit E to this Complaint).

38. Over 95% of her emails for the period January 1, 2015 through her date of termination were sent between the hours of 9:30 a.m. and 4:30 p.m., and of those, many were personal and Coalition-related emails sent from her Local 4 Funds account. Of the total 22,000 emails sent during the subject period, only 523 were sent prior to 9:30 a.m. (roughly 2% of the total), and of those 523, 348 were sent in 2020. Her email activity on weekends was even more scant, with only 69 emails sent, most of which appeared to be personal in nature. (See Exhibit F to this Complaint).

39. Accordingly, if, as she reported, under penalty of perjury on the Form 990, that she was performing ten hours per week working for the Coalition, Ms. Alongi was spending in excess of 25% of her work time performing work for the Coalition rather than the Local 4 Funds.

40. By so doing, Ms. Alongi unilaterally and in an *ultra vires* fashion diverted plan assets for her own benefit and that of a party unrelated to the Plaintiff Funds by whom she was employed.

41. During the period January 1, 2015 through July 21, 2020, the Fund paid compensation, benefits, and payroll taxes on behalf of Defendant Alongi in the amount of $1,736,125. They also paid an additional $106,692 in expenses related to her Funds-provided vehicle, which was a Cadillac Escalade for all years until 2019. By spending in excess of 25% of her working hours for the benefit of an entity other than the Local 4 Funds without the knowledge and approval of the Trustees, Ms. Alongi unlawfully and in contravention of her duty to the Funds, deprived the Funds of the expected value of her services and improperly diverted plan assets in a manner other than for the sole and exclusive benefit of the participants and beneficiaries of the Funds and other than for the purposes of defraying reasonable and legitimate expenses of the Funds.

42. By exercising discretionary control over plan assets, Defendant Alongi acted as a fiduciary as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). Defendant Alongi

has further acknowledged her status as a fiduciary by means of paying an elimination of recourse premium to cover herself under the Funds' fiduciary insurance policy.

43. By diverting plan assets for the benefit of an entity unrelated to the Funds, Ms. Alongi breached her fiduciary duty owed to Plaintiff Funds and is liable under Section 409 of ERISA, 29 U.S.C. §1109 and is thus obligated to make good to the Funds any such losses resulting from such breaches and to restore to the Funds any profits that she made through the unlawful use of such assets.

44. Accordingly, Ms. Alongi should be ordered to disgorge 25% of the value of the compensation received by her during the relevant time period, or the sum of $460,704, plus all sums that she received from the Coalition for work performed at the Funds' expense during the period January 1, 2015 through July 21, 2020.

### B. Work for Massachusetts Coalition of Taft-Hartley Funds by Other Fund Employees as Directed by Defendant Gina Alongi

45. In addition to diverting her own time to the Coalition while being compensated by the Funds, Ms. Alongi further breached her fiduciary duty by directing Fund employees to perform work and provide services to the Coalition while being compensated by the Funds, while working within the Fund office, using Fund resources and equipment.

46. Defendant Alongi further breached her fiduciary duty by instructing the employees under her supervision to not only provide services to the Coalition without the Funds receiving compensation in return, but by instructing them to falsify their time sheets to disguise the true nature of the work that they were doing.

47. Interviews with Fund employees conducted by forensic auditors Schultheis & Panetierri LLP and an analysis by the auditors of how these employees spent their time show that

a substantial portion of the Funds' payroll expenses were in fact diverted to the benefit of the Coalition.

48. The following Fund employees provided services to the Coalition at Defendant Alongi's direction and devoted the noted estimated percentage of their time to such activities during the time in question, rather than for the sole benefit of the Funds, their participants and beneficiaries, during the business day:

- Rosemarie Alongi – 30%
- Laura Jean Hickey – 30%
- Taylor Ryan - 38%
- Rosemary Ortega – 12.5%
- Bettyann Trefry – 4%
- Terri Berardi – 1%
- Amy Boisvert – 1%
- Rebecca Zaccardi – 1%

As a result of the hours spent working for the Coalition instead of for the Funds, many of these employees – including Ms. Alongi – failed to work the 1,800 hours they were required to work each year under the terms of a Participation Agreement by which the non-collectively bargained employees of the Funds Office were allowed to participate in the Local 4 benefit plans. As such, these employees may not have received the requisite hours needed to obtain health insurance and a full pension credit in each of the subject years and had contributions made into their Annuity Fund individual accounts to which they may not be entitled.

49. The Coalition paid nominal annual rent to the Funds of $574 for limited storage of documents related to its operations. In fact, as set forth above, a substantial portion of the

workforce employed within the Local 4 Funds' office space devoted their time to Coalition business. Additionally, at the time of Defendant Alongi's termination, the Funds were forced to hire movers to ship at least 40 large boxes of Coalition documents from its premises. The fair market value of the office space used for Coalition business based on 1.43 full time employees occupying 7.15% of the office space as determined via the forensic audit was estimated to have been $27,614 during the period January 1, 2015 through July 21, 2020, rather than the $3,157 actually paid for the Coalition. Accordingly, the Funds were shortchanged by $24,457 for the space provided to the Coalition as a result of the unilateral and *ultra vires* actions of Defendant.

50. By exercising discretionary control over plan assets in the person of these Fund employees, Defendant Alongi acted as a fiduciary as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

51. By diverting plan assets for the benefit of an entity unrelated to the Funds, Ms. Alongi breached her fiduciary duty owed to Plaintiff Funds and is liable under Section 409 of ERISA, 29 U.S.C. §1109 to make whole the Funds for any and all losses resulting from such breaches.

52. Accordingly, Ms. Alongi should be ordered to compensate the Fund for the value of the compensation received by these employees during the relevant time period that were devoted to the Coalition rather than the Fund, or the sum of $688,173, as well as the rent totaling an additional $24,457.

### C. Cashing out of Vacation without Authorization by Trustees

53. As part of her compensation package, Defendant Alongi was permitted to take four weeks of paid vacation each year, the most amount permitted by the Funds' Employee Handbook.

54. Starting in 2013, unbeknownst to the Trustees and without proper approval from them, Ms. Alongi began taking an additional two weeks of vacation over and above the allotment of four to which she was entitled.

55. During the period January 1, 2015 through July 21, 2020, Defendant Alongi engaged in a practice of cashing out this additional two weeks of vacation in the middle of the year, in effect, awarding herself, in a unilateral and *ultra vires* fashion, an extra two weeks of salary.

56. In 2015, 2017, 2018, 2019, and 2020, Ms. Alongi received an additional 80 hours each year, of compensation in this fashion. In 2016, she received an additional 64 hours of compensation in this fashion.

57. Defendant Alongi ordered Fund staff to issue her a check for these vacation hours without withholding for taxes in each of these years at a total cost to the Funds of $49,849.20.

58. By exercising discretionary control over plan assets in this fashion, Defendant Alongi acted as a fiduciary as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

59. By diverting plan assets for her own benefit without proper notification to or authorization by the Trustees, Ms. Alongi breached her fiduciary duty owed to Plaintiff Funds and is liable under Section 409 of ERISA, 29 U.S.C. §1109 to make whole the Funds any such losses resulting from such breaches.

60. Accordingly, Ms. Alongi should be ordered to compensate the Fund for the value of this compensation unlawfully received by her in the amount $49,849.20.

### D. Failure to Work Hours for Which She was Compensated

61. As befits a highly compensated executive, the Trustees of the Local 4 Funds hired Ms. Alongi to be a full time employee and to be present at the Fund office and devote at least 35 hours per week to overseeing the operations of the Funds and to supervise its employees in the

performance of their tasks for the participants and beneficiaries of the Funds.  As befits a job of this nature and carrying this level of compensation, the Trustees had an expectation that this would be the minimum number of hours worked per week, with the likelihood that more hours than this would be necessary with some frequency.

62. The forensic audit conducted by Schultheis & Panettieri LLP shows that, in addition to the time impermissibly spent on Coalition business, Defendant Alongi routinely failed to work anything like a full time schedule during the period January 1, 2015 through December 31, 2019. Only after the Chairman of the Boards of Trustees directed Defendant Alongi to be in the office by the start of the business day in January 2020, did Ms. Alongi commence working full days for the Funds.

63. As noted in paragraph 33 of this Complaint, the Defendant routinely arrived to work hours after the Funds' 8:00 AM business hours commenced.

64. Defendant Alongi did not make up for this late arrival by either working past the closing time of 4:00 PM or on weekends.  Rather, all records indicate that she simply worked an abbreviated day on top of performing the ten hours of work for the Coalition during the week.

65. The report prepared by Schultheis & Panettieri LLP indicates that in the period 2015-2019, Ms. Alongi worked substantially less than a 7 hour day, averaging 5.25 hours in 2015, 5.5 hours in 2016, 5.75 hours in 2017, and 6.25 hours in 2018 and 2019, minus the two hours that she avers, under penalty of perjury in the Form 990, to have worked for the Coalition during each day.

66. By so doing, Ms. Alongi deprived the Fund of its reasonably expected hours of service, leading to her being substantially overpaid for the limited time that she actually spent on her job as Administrator.

67. By virtue of so doing, Ms. Alongi received excess compensation in the amount of $282,152 during this period.

### E. Forfeiture of Pension Benefits

68. By virtue of the conduct detailed in Counts 1 A-D, Defendant Alongi engaged in conduct in violation of Part 4 of ERISA, the section of the law dealing with fiduciary obligations and breaches thereof, 29 U.S.C. §1101-1114.

69. Defendant Alongi is a participant in the Pension and Annuity Funds and is currently drawing a pension from the Pension Fund and accessing the balance she maintains in her individual account with the Annuity Fund.

70. Pursuant to Section 206(d)(4) of ERISA, 29 U.S.C. §1056(d)(4), the anti-alienation provisions of ERISA do not apply to an offset of a participant's pension benefits if the participant is ordered to pay a civil judgment entered by a court in an action brought in connection with a violation of part 4 of ERISA, which includes the fiduciary and co-fiduciary breach provisions of ERISA. Specifically, that statute provides in relevant part that

(4) Paragraph (1) [The anti-alienation provision contained in Section 206(d)(1), 29 U.S.C. 1056(d)(1)] shall not apply to any offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay to the plan if—

(A) the order or requirement to pay arises— (ii) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of this subtitle

(B) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the plan against the participant's benefits provided under the plan, and

71. Accordingly, should the Court find violations of Part 4 of ERISA in this action, Plaintiffs seek an order permitting the Pension and Annuity Funds to offset benefits payable to Defendant Alongi to satisfy any judgment entered in this case.

**WHEREFORE,** the Plaintiffs pray judgment on Counts I A, B, C, D, and E as follows:

1. That the Court find the Defendant liable in the amount of $1,455,486, plus the amounts received by her from the Massachusetts Coalition of Taft-Hartley Funds, plus interest, attorney's fees, costs, and any other amounts owed to the Plaintiffs, for breaching her fiduciary duty to the Plaintiffs;

2. An order permitting the Pension and Annuity Funds to offset benefits payable to Defendant Alongi to satisfy any judgment entered in the case; and

3. Such further relief as the Court deems appropriate.

Respectfully submitted,

DATE: January 29, 2021

s/ Jennifer L. Markowski_____
Jennifer L. Markowski
Freeman, Mathis & Gary LLP
60 State Street, Suite 600
Boston, MA  02109-1800
Telephone (617) 963-5975
Facsimile (617)
JMarkowski@fmglaw.com
BBO# 655927

s/ Charles W. Gilligan_____
Charles W. Gilligan*
Jennifer Simon*
Daniel Keenan*
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC  20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
cgilligan@odonoghuelaw.com
dkeenan@odonoghuelaw.com
*Pro Hac Vice Motions to be Submitted

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Complaint has been served by certified mail, as required by 502(h) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132(h), on this 29th day of January 2021 on the following:

>Secretary of the Treasury
>15th. and Pennsylvania Ave., N.W.
>Washington, DC  20220
>ATTN: Employee Plans
>     Internal Revenue Service
>
>Secretary of Labor
>200 Constitution Avenue, N.W.
>Washington, DC  20210
>ATTN: Assistant Solicitor
>     for Plan Benefits Security

>s/ Charles W. Gilligan
>Charles W. Gilligan