UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:21-cv-10163-FDS |
| GINA ALONGI, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY

The Plaintiffs, Trustees of several multiemployer employee benefit plans, filed the Complaint in this matter to recover losses that resulted from breaches of fiduciary duty committed by the Defendant, Gina Alongi ("Ms. Alongi" or "Defendant"), the former Administrator of the Plaintiff Funds. Ms. Alongi was terminated from her position as Administrator on July 21, 2020, after the Trustees discovered some of these issues. Following her termination, the Trustees discovered further diversions of plan assets and corresponding breaches of fiduciary duty that form the basis of this lawsuit.

As set forth in the Complaint, Ms. Alongi acted as a fiduciary as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A) by exercising discretionary control over plan assets. Ms. Alongi breached her fiduciary duty and is liable under Section 409 of ERISA, 29 U.S.C. § 1109 by diverting plan assets for the benefit of an entity unrelated to the Plaintiff Funds, and herself. In response, the Trustees filed this action on January 29, 2021, pursuant to Section 502 of ERISA, 29 U.S.C. §1132 seeking recovery of any losses resulting from Ms. Alongi's breaches and restoration of any profits that she made through unlawful use of plan assets. The well-plead allegations in the Complaint are based, in part, on a forensic audit conducted by an outside certified

public accounting firm engaged by the Trustees after the severity and breadth of Ms. Alongi's illegal conduct came to light.  As set forth below, the Trustees' cause of action and the remedy sought thereon is a matter that lies exclusively within the jurisdiction of the federal courts.

After she was terminated, Ms. Alongi filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") in which she alleged unlawful retaliation, harassment, and discrimination on the basis of sex and disability, based on allegedly inappropriate conduct by a Trustee. She subsequently filed a complaint in Norfolk Superior Court on February 10, 2021. Ms. Alongi filed a Motion to Stay this matter on March 4, 2021, seeking abstention or an order staying this litigation pending the resolution of the proceedings in state court.

The Motion to Stay is totally devoid of merit. Although the parties in the concurrent proceedings are substantially similar, this matter is wholly unrelated to the discrimination claims pressed by Ms. Alongi in state court. As an initial matter, the cases are factually and legally distinct. Contrary to the Defendant's position, the outcome in one court has absolutely no bearing, procedurally or otherwise, on the other. No law or statute holds that an individual that breached fiduciary duties to an ERISA fund could not have been the victim of discrimination; nor does any law or statute hold that an individual could not have committed a fiduciary breach if she was discriminated against. At end, the only thing these cases have in common is the parties. Second, and critically, the Congressional grant of *exclusive jurisdiction* to federal courts over claims for breach of fiduciary brought pursuant to Sections 404, 409, and 502 of ERISA, 29 U.S.C. §§1104, 1109, 1132, render the abstention doctrines advocated by the Defendant wholly inapplicable to this matter. All relevant statutes and case law point to one conclusion: the Court must deny the Motion to Stay, and must adhere to "the virtually unflagging obligation of the federal courts to

exercise the jurisdiction given them," articulated by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

### Relevant Factual and Procedural Background

The Plaintiffs are the Board of Trustees of several employee benefit plans created via collective bargaining between the International Union of Operating Engineers Local 4 ("Union") and employers who are bound to such collective bargaining agreements.  The Trustees of each of the Plaintiff Funds are collectively the "named fiduciary," "plan administrator" and "plan sponsor," and each is an individual "fiduciary" of the respective Funds within the meaning of Sections of 402(a) and 3(16) and 3(21) of the Employee Retirement Income Security Act of 1974 (as amended) ("ERISA"), 29 U.S.C. §§1102(a) and 1002(16) and (21). The Funds are subject to the extensive and elaborate legal and regulatory framework found in ERISA and its attendant regulations, which impose stringent fiduciary status on individuals exercising discretion over the disposition of benefit fund assets.

Ms. Alongi served as the Administrator for the Funds from 1996 until July 21, 2020, when she was terminated by the Trustees. In addition to supervising Fund employees and overseeing the day-to-day operations of the Funds in accordance with plan documents and policies adopted by the Trustees, the Administrator acts as the primary liaison to the Trustees and to outside professional advisors retained by the Funds. Ms. Alongi received a substantial compensation package for her role as Administrator, including a salary at the time of her dismissal of $248,745, participation in three different employer financed pension plans, fully employer paid medical coverage, an employer provided automobile, four weeks of paid vacation per year, and a generous allotment of paid sick leave. Ms. Alongi was at all times relevant to this action a fiduciary as defined in ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).  As a fiduciary, Ms. Alongi had a duty

under ERISA to act for the sole and exclusive benefit of the Funds, their participants and beneficiaries, to use plan assets for the sole purpose of providing benefits or for defraying legitimate and reasonable expenses of the Funds, and to conduct herself with the care, skill, prudence and diligence of a prudent expert; she was further required to act in accordance with the documents and instruments governing the Funds' operations, including such written policies and practices adopted by their respective Boards of Trustees. 29 U.S.C. §1104(a)(1)(A), (B), and (D).

During the period relevant to this lawsuit, Ms. Alongi also served as the Executive Director of the Massachusetts Coalition of Taft-Hartley Funds (the "Coalition") an organization consisting of multiemployer health and welfare funds in the New England region formed for purposes of obtaining advantageous agreements with providers based on greater heft in the marketplace, and advancing the interests of multiemployer funds. According to Ms. Alongi, she performed ten hours of work per week for the Coalition, and as of 2019 she was paid $46,000 per year for that work. The Funds received no benefit from Ms. Alongi serving as Executive Director of the Coalition.

As is plead in detail in the Complaint, Ms. Alongi impermissibly exercised discretion over the use of plan assets and made independent decisions regarding the use of Fund resources in a manner contrary to plan documents and policies in violation of her fiduciary obligations while serving as Administrator. Her breaches of fiduciary include, *inter alia*, failure to maintain accurate records of her working time and routinely failing to perform work constituting anything close to the full time schedule for which she was compensated; regularly performing work for the Coalition during periods of time for which she was supposed to be working for the sole and exclusive benefit of the Funds and their participants and beneficiaries, and falsifying time records to avoid detection of the same; improperly directing individuals employed by the Funds to perform work for the Coalition while concealing that work from the Trustees and arranging the storage of a substantial

amount of Coalition documents and data at the Funds' office at virtually no cost to the Coalition; and taking an additional two weeks of vacation without proper Trustee approval and cashing out this additional two weeks of vacation in the middle of the year, in effect unilaterally awarding herself an extra two weeks of salary. After several of Ms. Alongi's transgressions became known and she was terminated on July 22, 2020, the Trustees engaged the accounting firm of Schultheis & Panettieri LLP to conduct a forensic audit of the time that Ms. Alongi was actively working during the period January 1, 2015 up to the date of her termination in 2020. The examination of Ms. Alongi's work activities included a review of her arrival times at the office by means of ascertaining when she entered the Fund office via electronic key, her email activity on her Fund-provided email account, and call activity on her office landline and Fund-provided cellular phone. The documents and data supporting this analysis are attached to the Complaint as Exhibits C-F.

After she was terminated, Ms. Alongi filed a complaint with MCAD on September 3, 2020, alleging unlawful retaliation, harassment, and discrimination on the basis of sex and disability, based on claims that a Trustee of the Funds engaged in certain allegedly inappropriate conduct in the workplace. Among other defenses, the Funds cited Ms. Alongi's "gross breach of fiduciary duty" as the basis for her termination in response to the complaint filed with MCAD. Ms. Alongi subsequently filed a complaint in Norfolk Superior Court on February 10, 2021 ("State Court Action") alleging claims under Massachusetts anti-discrimination laws.

<u>Argument</u>

**I.      This Court has Exclusive Jurisdiction Over this Matter.**

The Complaint pending before this Court involves one claim; the Plaintiffs seek redress for the Defendant's breaches of fiduciary duty, which violated Sections 404 and 409 ERISA, 29 U.S.C. §§1104, 1109. This action is brought pursuant to Section 502 of ERISA, 29 U.S.C. §1132.

Thus, as the First Circuit has observed, this Court's jurisdiction over this matter is *exclusive. See Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449, N 8 (1st Cir. 1995) ("ERISA permits several other types of civil actions (e.g., for injunctive relief, for breach of fiduciary duty, etc.) subject to exclusive jurisdiction in the federal courts rather than concurrent jurisdiction."). Indeed, courts in this Circuit have noted that, while ERISA's jurisdictional provision provides concurrent jurisdiction in federal and state courts to resolve a "benefits-due action" filed by a plan participant:

> [W]ith respect to a claim asserting the breach of a fiduciary duty, the jurisdiction of the federal courts is exclusive. *See* 29 U.S.C. § 1132(e)(1). This means that if a plaintiff brought a breach-of-fiduciary-duty claim in state court and the defendant pleaded ERISA preemption, the court would be deprived of jurisdiction over the subject matter.

*Urological Surgery Pro. Ass'n v. William Mann Co.*, 764 F. Supp. 2d 311, 327 (D.N.H. 2011). As the Supreme Court has held, this statutory grant of exclusive jurisdiction is a component of "the detailed provisions of § 502(a)" which "set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). This grant of exclusive jurisdiction comports with the explicit articulation of Congressional intent that led to its inclusion in ERISA:

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive. This conclusion is fully confirmed by the legislative history of the civil enforcement provision. The legislative history demonstrates that the pre-emptive force of § 502(a) was modeled after § 301 of the LMRA.

*Id*. Accordingly, this Court's exclusive jurisdiction over the claims plead in this matter is beyond dispute. This reality reveals the fallacies underpinning each argument presented in the Defendant's Motion to Stay. First, the Plaintiffs cannot pursue these claims or seek redress for the same in the State Court Action filed by the Defendant as a matter of law. Second, and contrary to the

Defendant's protestations, this action does not "interfere" with or otherwise have any bearing on the claims pursued by the Defendant in the State Court Action. It does not follow that an individual accused of a breach of fiduciary duty (via well plead and substantially supported factual allegations) could not have been a victim of workplace discrimination, nor does it follow that a victim of workplace discrimination could not have breached a stringent, statutorily imposed fiduciary duty. It is well-settled law that, in situations such as these, the abstention doctrines pursuant to which the Defendant seeks to stay this matter do not apply. Indeed, the First Circuit has observed that "[i]t has long been established that the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010); *see also Ezike v. Bliss*, 2017 WL 1826495, at *4 (D. Mass. May 5, 2017) ("Thus, there is no exceptional concern here, and the routine inefficiencies resulting from parallel litigation are not enough to weigh in favor of abstention.").

## II.   This Court Must Not Abstain in Favor of the State Court Action

The Court must not stay this action because its exclusive jurisdiction over the Plaintiffs' allegations of fiduciary breach under ERISA, as well as the separate and distinct nature of the claims at issue herein and in the State Court Action, render the *Younger* and *Colorado River* abstention doctrines inapplicable.

### A.   *Younger* Abstention is Inappropriate Because the Court has Exclusive Jurisdiction Over This Matter and This Litigation Does Not Interfere With the State Court Action

In *Younger v. Harris*, 401 U.S. 37 (1971) the Supreme Court held that a federal court should abstain from deciding a lawsuit seeking to enjoin a state criminal proceeding if the state proceeding affords the party seeking the federal court's intervention the opportunity to raise federal defenses, and no irreparable harm will ensue as a result of the abstention. *Sirva Relocation, LLC v. Richie*,

794 F.3d 185, 192 (1st Cir. 2015). The *Younger* doctrine has subsequently been applied to certain civil actions, though it is "most commonly applied to suits seeking declaratory or injunctive relief." *Rossi v. Gemma,* 489 F.3d 26, 34 (1st Cir. 2007). *Younger* and its progeny instruct federal courts not to "interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." *Id.* (quoting *Maymo–Meléndez v. Álvarez–Ramírez,* 364 F.3d 27, 31 (1st Cir. 2004)).

The Supreme Court subsequently explained in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) "that a federal court must abstain when there is [1] an ongoing state proceeding (judicial in nature), [2] which implicates important state interests and [3] provides an adequate opportunity to raise federal defenses." *Sirva, LLC,* 794 F.3d at 192 (*citing Middlesex*, 457 U.S. at 432). Lower courts occasionally applied these three factors "as an exclusive test for determining the applicability of the *Younger* doctrine," *id.*, and the Supreme Court further clarified the types of state proceedings to which the doctrine applies in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013). In *Sprint*, the Supreme Court held that "only three types of state proceedings trigger *Younger* abstention: (i) criminal prosecutions, (ii) 'civil proceedings that are akin to criminal prosecutions,' and (iii) proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Sirva*, 794 F.3d at 192 (*citing Sprint*, 571 U.S. at 73). "If a proceeding does not fit within this taxonomy, *Younger* abstention will not lie." *Id.* (*citing Sprint,* 571 U.S. at 80).

The First Circuit applies a three-step approach to *Younger* abstention analyses. First, "a federal court must ascertain whether a particular state proceeding falls within the *Younger* taxonomy," second, "the court must then…consider whether the *Middlesex* factors support abstention," and if these first two steps are satisfied, "the court must take the third step and

determine whether any of the isthmian exceptions to the *Younger* doctrine apply." *Sirva*, 794 F.3d at 192-93.

The Defendant posits that this matter "falls squarely within the *Younger* taxonomy because it is a proceeding that implicates Massachusetts' interest in enforcing the orders and judgments of its courts." The Plaintiffs concede this point, as the First Circuit has noted that "[an] MCAD proceeding is plainly the sort of civil enforcement action that fits within the *Younger* design." *Id.* at 195. That said, this cause of action does not "interfere" with the State Court Action, thereby rendering *Younger* abstention inapplicable. As the Defendant observes, the First Circuit holds that *Younger* abstention "applies *only* when the relief asked of the federal court '*interfere[s]' with the state proceedings*." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 70 (1st Cir. 2005) (emphasis added). The Defendant asserts that abstention is appropriate in this case because "the Funds' attempt to litigate its defense to Ms. Alongi's claims in this forum interferes with an ongoing state judicial proceeding …" Thus, whether this action "interferes" with the State Court Action is the touchstone of this inquiry. This matter does not interfere in any way, shape, or form with the State Court Action, because the outcome of one case has no preclusive effect or procedural bearing on the other. The First Circuit has described the types of interference that render *Younger* abstention appropriate as thus:

> In *Younger* itself, the 'interference' was the attempt to enjoin the pending state criminal proceeding from going forward. The principle, of course, is somewhat broader: interference also clearly exists where the plaintiff is seeking a declaratory judgment that a prosecution, or the statute serving as its basis, is illegal or unconstitutional. Interference is thus usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so.

*Rullan*, 397 F.3d at 70. There is no hint of any such interference in this case, and despite the Defendant's efforts to convince the Court otherwise, a finding that the Defendant violated ERISA will not preclude her from continuing to assert her discrimination claims. At end, the matters

involve similar parties but largely distinct factual and legal arguments and analyses. Thus, the first factor of the First Circuit's *Younger* abstention analysis is not satisfied, because the total lack of interference places this matter outside of the *Younger* taxonomy. *Sirva,* 794 F.3d at 192-93.

The Defendant further fails to provide any basis to support a finding that the second factor of the First Circuit's *Younger* abstention analysis, consideration of the *Middlesex* factors, is satisfied. Though the Plaintiffs concede that first two factors of the *Middlesex* analysis are met, the third factor, whether the state proceeding affords the Plaintiffs the opportunity to assert their federal claims, is not satisfied as a matter of law. The Defendant baldly asserts that "the Funds will be able to litigate all issues raised in their federal claim in the state action: as evidenced by its position statement and sur-reply filed in the MCAD matter, the factual allegations raised in this action form the exact same basis for its defense to Ms. Alongi's discrimination and retaliation claims." The Defendant further claims that "the Funds will have an opportunity to litigate its purported breach of fiduciary theory in defense of Ms. Alongi's discrimination and retaliation claims in the State Court Action."

This is simply not so. The Defendant fatally amalgamates a federal claim for breach of fiduciary duty with raising Ms. Alongi's conduct as an affirmative defense in the State Court Action, and in so doing muddles its analysis. As noted, ERISA's civil enforcement scheme, which reserves exclusive jurisdiction over Section 502 causes of action for federal courts, renders this assertion a legal impossibility. *See Urological Surgery Pro. Ass'n*, 764 F. Supp. 2d at 327 ("This means that if a plaintiff brought a breach-of-fiduciary-duty claim in state court and the defendant pleaded ERISA preemption, the court would be deprived of jurisdiction over the subject matter.") Thus, the *Middlesex* factors do not support abstention, and the second factor of the First Circuit's *Younger* abstention analysis is, like the first factor, not satisfied by the circumstances of this case.

Finally, the third factor in the First Circuit's *Younger* abstention analysis, whether any exceptions to the *Younger* doctrine apply, further weighs against abstention. According to the First Circuit, among the "handful of exceptions to the *Younger* doctrine" is the principal that "a federal court need not stay its hand if the state forum provides inadequate protection of federal rights." *Sirva*, 794 F.3d at 192. As discussed *supra*, it is beyond dispute that the State Court Action is an inadequate forum for assertion of this cause of action, as it is impossible for the Plaintiffs to file a counterclaim for fiduciary breach in that forum. Additionally, "[a]bstention is inappropriate, for example, when a state proceeding is brought in bad faith, that is, for the purpose of harassment." *Id*. Here, the Defendant filed the MCAD proceedings and subsequent State Court Action only after she was terminated with cause for flagrant violations of ERISA, years after the last alleged instance of discrimination occurred. The Plaintiffs have denied the allegations, vigorously defended the MCAD proceedings, and are preparing to aggressively defend the State Court Action as well.

For these reasons, all three factors considered by First Circuit courts hold that abstention under the *Younger* doctrine is not appropriate in this matter.

### B. *Colorado River* Abstention is Inappropriate Because There are No "Exceptional Circumstances" That Warrant Abstention

As articulated by this Court, "[u]nder the so-called *Colorado River* abstention doctrine, a district court may dismiss a case in which federal and state court proceedings overlap and 'wise judicial administration' counsels for abstention." *Quality One Wireless, LLC v. Goldie Grp., LLC*, 37 F. Supp. 3d 536, 544 (D. Mass. 2014) (*citing Colorado River,* 424 U.S. at 818). In crafting the *Colorado River* doctrine, however, the Supreme Court cautiously noted "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. Thus, "the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." *Quality One Wireless,* LLC, 37 F. Supp. 3d at 544 *citing Jimenez,* 597

F.3d at 27. Accordingly, "exceptional circumstances must exist" to justify application of the doctrine. *Id*. (*citing Moses H. Cone v. Mercury Const. Corp.,* 460 U.S. 1, 16 (1983)). To that end, the Supreme Court crafted a "narrow" abstention doctrine that "is to be approached with the most caution," *Jimenez*, 597 F.3d at 27, and the First Circuit has cautioned that the "authority to find such a clear justification is confined by an 'exceptional-circumstances test[.]'" *Id*. (*citing Moses H. Cone,* 460 U.S. at 16). The test is comprised of a "non-exclusive list of factors…drawn from *Colorado River* and its progeny," which include:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Quality One Wireless, LLC*, 37 F. Supp. 3d at 544 (*citing Rullan*, 397 F.3d at 71–72). No one factor is necessarily determinative, and when courts apply this test, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also United States v. Fairway Cap. Corp.*, 483 F.3d 34, 40 (1st Cir. 2007) (The first Circuit has "emphasized that these circumstances are quite limited…").

As a threshold matter, and as is discussed *supra*, the federal and state actions here are not parallel in form or substance. Although certain parties overlap, the claims involve distinct causes of action and factual and legal analyses. Accordingly, unlike the causes of action at issue in *Quality One Wireless, LLC*, this Court has exclusive jurisdiction over this case, and there exists *no* likelihood, much less "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." 37 F. Supp. 3d at 544 (*citing Clark v. Lacy,* 376 F.3d 682, 686 (7th Cir.2004)). Thus, the Court must follow the Supreme Court's direction and adhere to its "virtually unflagging obligation…to exercise the jurisdiction given [it]." *Colorado River*, 424 U.S. at 817.

As for the factors identified in *Colorado River*, the Defendant asserts that "factor numbers (1), (2), (6), and (8) are neutral." The first factor, whether either court has assumed jurisdiction over a *res*, is inapplicable. The second factor, the geographical inconvenience of the forum, is neutral because the "courts are equally convenient." *Quality One Wireless, LLC*, 37 F. Supp. 3d at 544. The eighth and final factor, respect for the principles underlying removal jurisdiction, is also inapplicable because the First Circuit holds "that this factor is relevant if a plaintiff was attempting to evade the policy in 28 U.S.C. §1441 that only a defendant be able to remove a lawsuit from state court to federal court." *Fairway Cap. Corp.*, 483 F.3d at 44. Here, neither party has evinced a desire to remove either proceeding, though the Plaintiffs note that the Defendant seeks *de facto* removal of its federal claims to the State Court Action, which is a legal impossibility.

Each of the remaining factors weigh against abstention. The Defendant asserts that the third factor, the avoidance of piecemeal litigation, weighs in favor of abstention. She admits, however, that the First Circuit holds that "[w]eight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an exceptional basis for surrendering federal jurisdiction…" *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 116 (1st Cir. 2012). To support her position that the existence of parallel actions provides the required "exceptional basis" for abstention, the Defendant incorrectly contends that this action will interfere with a state court's ability "to interpret and enforce its discrimination laws." In support of this contention, Defendant cites cases holding that parallel actions would interfere with a state court proceeding in circumstances involving 1) "underlying unresolved issued of Puerto Rican law," *Rivera-Feliciano v. Acevedo-Vila*, 438 F.3d 50, 62 (1st Cir. 2006); 2) a pending state court appeal that could moot parallel federal court litigation, *Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 3 (1st Cir. 2002); and 3) an insurance policy central to the claims in parallel litigation that might

be interpreted differently in each forum. *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985). Each of those cases is inapposite to the matter at hand, and none involve a breach of fiduciary claim under ERISA explicitly reserved for exclusive jurisdiction in Article III Courts.

Additionally, the Defendant attempts to analogize this matter to that at issue in *Currie*, where the First Circuit found that "[t]hat federal statutory question is intertwined with a complex issue of state law, pending before the state courts." *Currie*, 290 F.3d at 10. The "federal statutory question" at issue herein is in no way "intertwined with a complex issue of state law." There is no issue of state law involved, even on the periphery, of this matter. As the First Circuit noted in *Currie*, the application of *Colorado River* abstention "has special appeal where a state court decision 'may substantially, perhaps even fully, answer certain questions of state law in a way that will permit easy answers, relatively speaking, to the federal ones.'" *Id*. at 11 (*citing Kartell v. Blue Shield of Mass.,* 592 F.2d 1191, 1193–94 (1st Cir.1979)). That is not the case here.

Finally, Defendant argues that the "issues raised in this action will be litigated in the State Court Action," and "maintaining both the state and federal proceedings at once would be unnecessarily duplicative" and a waste of party and judicial resources. The Defendant notably cites *no law* in support of this position. The Defendant's position is simply wrong as a matter of law, as litigating the claims at issue in this case in the State Court Action is a legal impossibility. *See Urological Surgery Pro. Ass'n,* 764 F. Supp. 2d at 327; *Pilot Life Ins. Co.*, 481 U.S. at 54. Because the outcome of the parallel cases has little, if any, impact on the other, this litigation does not constitute an "improper 'race to judgment.'" (*Id*.).

The Defendant asserts that the fourth factor, the order in which the forums obtained jurisdiction, weighs in favor of abstention because "the State Court Action obtained jurisdiction

first, because Ms. Alongi's Superior Court claims were first filed with the MCAD, several months before this action was filed." The Defendant reasons that the State Court obtained jurisdiction over Ms. Alongi's discrimination claims when she initiated MCAD proceedings, and that that matter is more advanced because "deadlines have already been assigned in the State Court Action." Again, the Defendant's arguments miss the mark. The State Court Action cannot as a matter of law "obtain jurisdiction" over the ERISA breach of fiduciary duty claim at issue herein. Accordingly, this factor is neutral.

Revealingly, the Defendant cites the eight factors courts consider when analyzing application of the *Colorado River* doctrine, yet explicitly analyzes application of only *seven* of them. That consideration of the fifth factor, whether state or federal law controls, is the *only omission* from the Defendant's analysis speaks volumes. Indeed, the Supreme Court has:

> [E]mphasize[d] that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender [] the presence of federal-law issues must always be a major consideration weighing against surrender.

*Moses H. Cone*, 460 U.S. at 25–26 (emphasis in the original). In this vein, the First Circuit declined to order abstention under the *Colorado River* doctrine in *Fairway Capital Corp*, in part because "[i]n light of the statutory policy of giving federal courts exclusive jurisdiction to resolve disputes over property involved in a SBA receivership proceeding, 15 U.S.C. §687c(b), we conclude that it was within the discretion of the district court to find that the presence of a single state law issue did not outweigh the federal interests here." 483 F.3d at 43. Here, the "statutory policy of giving federal courts exclusive jurisdiction" to resolve breaches of fiduciary duty claims under ERISA,

15

*and the total absence of any state law issue* weighs so heavily against abstention that it is dispositive. Thus, the fifth factor weighs decisively and conclusively against abstention.

The Defendant asserts that the sixth factor, the adequacy of the state forum to protect the parties' interests, is "neutral because, given that the Funds have raised their breach of fiduciary allegations as a defense to Ms. Alongi's discrimination and relation claims, the State Court Action is equipped to protect all parties' interests."  In support of this contention, the Defendant puzzlingly cites *Fairway Capital Corp*., which, according to the Defendant, "hold[s] that the adequacy of the state forum is relevant only when it would disfavor abstention." 483 F.3d at 43. As discussed in relation to the *Younger* abstention analysis and factor five above, the state forum is jurisdictionally barred from permitting the Plaintiffs to assert their claim to protect their, and their participants' and beneficiaries', interests. Indeed, in *Fairway Capital Corp*. the First Circuit cited the Supreme Court's observation that:

> [T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.

*Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 479, (1981). Here, the explicit statutory directive of exclusive jurisdiction contained in Section 502 of ERISA is dispositive. *See Urological Surgery Pro. Ass'n,* 764 F. Supp. at 327; 29 U.S.C. § 1132. Thus, the sixth factor also weighs decisively against abstention.

Lastly, the Defendant asserts that the seventh factor, whether the federal claim is "vexatious or contrived" weighs "heavily" in favor of abstention because "the present action contains baseless allegations and is motivated by nothing more than a desire to retaliate against Ms. Alongi for— and prevent her from—exercising her rights…by causing unnecessary delay and forcing her to incur unnecessary additional costs associated with purely duplicative litigation." This position is

devoid of merit. The allegations contained in the Complaint in this matter are well plead, and based on a forensic audit and investigation conducted by certified public accountants. The Trustees have an obligation to investigate and remedy breaches of fiduciary duty, particularly where the breach results in a loss of assets used to fund benefits for participants and their beneficiaries.

When analyzing this factor, courts must consider "the nature of the claims because 'the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation.'" *Ezike*, 2017 WL 1826495, at \*5 (*citing Villa Marina*, 915 F.2d at 15). In this Circuit, "[r]eactiveness is 'where one party files a federal action in reaction to an adverse ruling in state court' and vexatiousness 'ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts.'" *Id*. (*citing Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F. Supp. 2d 217, 222 (D. Mass. 1999)). The Plaintiffs have not acted reactively. There has been no "adverse ruling in state court," *id*., and this litigation was not "contrived to circumvent the state court procedures, schedule or rulings." *Id*.; *see also Paul Revere*, 66 F. Supp. 2d at 222 ("The paradigm case of reactiveness involves a situation … where a plaintiff filed a motion for a preliminary injunction in federal court after losing the identical motion in state court."). The Plaintiffs do not expect that the proceedings in this Court will "circumvent the state court procedures, schedule or rulings," to the contrary, the Plaintiffs have not sought a stay in that matter and do not plan to do so.

Nor does the filing of this suit constitute vexatious conduct. First, as is discussed, *supra*, the parties are not "litigating the same issue in two separate courts," so a necessary element of vexatious conduct is not present. *Ezike*, at \*5 (*citing Paul Revere*, 66 F. Supp. At 222). Second, the Defendant's complaints regarding legal costs does not implicate the *Colorado River* doctrine.

The doctrine does not authorize the Defendant to avoid defending meritorious litigation for violations of federal law solely because she has filed an unrelated discrimination claim in the State Court Action. This factor weighs against abstention.

For these reasons, all relevant factors considered by First Circuit courts hold that abstention under the *Colorado River* doctrine is not appropriate in this matter.

### C. ERISA does not Preempt State Law Discrimination Claims

The Defendant admits that neither of the *Younger* and *Colorado River* abstention doctrines apply if the state forum is inadequate "to protect the parties' interests." *Rullan*, 397 F.3d at 71–72. Separate from its abstention analysis, the Defendant contends that because "ERISA does not preempt any of Ms. Alongi's state law claims" and the Funds have asserted her fiduciary breaches as the basis for her termination and a defense to her allegations in the MCAD proceedings, it is "indisputable" that "the Funds will be able to litigate its breach of fiduciary duty allegations in state court through its defense to Ms. Alongi's state law claims."

In support of this untenable position, the Defendant posits "ERISA does not preempt any of Ms. Alongi's state law claims," and cites case law holding that ERISA does not preempt state anti-discrimination laws that prohibit conduct also proscribed by federal law, such the Americans with Disabilities Act and Title VII. That is so, but once again irrelevant. The Defendant incorrectly conflates exclusive federal court jurisdiction for breach of fiduciary duty with permissive concurrent jurisdiction for overlapping violations of state and federal anti-discrimination statutes. The Defendant claims, *without citation to any legal authority whatsoever* that asserting the basis for Mr. Alongi's termination as a defense to the MCAD proceedings somehow "enables" the Funds "to litigate its breach of fiduciary duty allegations in state court through its defense." (*Id.*). Finally, to support its position that the Plaintiffs' "interests will be

adequately protected in the State Court Action," the Defendant cites an unreported case from the U.S. District Court for the Northern District of Illinois in which the court mentioned in dicta that "[a]n ERISA breach of fiduciary duty claim, like its common-law counterpart, has two liability components: a duty and a breach." *Anderson v. DePhillips,* 2004 WL 816464, at *4 (N.D. Ill. Mar. 17, 2004).  This passing statement does not support the Defendant's contentions and, notably, that claim for breach of fiduciary duty under ERISA was filed and litigated in the geographically appropriate *federal district court.*

The Funds cannot plead a counterclaim for fiduciary breach in the State Court Action, and the state court is not jurisdictionally authorized to find a fiduciary breach pursuant to Sections 404, 409, and 502 of ERISA, 29 U.S.C. §§1104, 1109, 1132, or to grant the Funds the relief sought herein to remedy Ms. Alongi's illegal conduct. This line of argument pursued by the Defendant makes little sense, and does not support its request to stay these proceedings.

### D.      The Doctrine of Abatement does not Require a Stay

The Defendant repackages the same erroneous arguments in support of a claim that the Court should stay this matter pursuant to "the doctrine of abatement" or the "prior pending action doctrine." Once again, this argument suffers a number of fatal defects.

Under the abatement doctrine, "the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good ground for abatement of the later suit." *O'Reilly v. Curtis Pub. Co*., 31 F. Supp. 364, 364–65 (D. Mass. 1940). This Court has held that "a court may stay or dismiss a later-filed action under the doctrine if two conditions are met: (1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action." *Rowayton*

*Venture Grp. LLC v. McCarthy*, 2020 WL 4340985, at *3 (D. Mass. July 28, 2020) (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360 (3d ed. 2004).

Here, none of the relevant factors under the prior-pending-action doctrine support the issuance of a stay. The state court is not a "court of competent jurisdiction" as a matter of law. This litigation is not predicated on the same cause of action or the same transaction.  There is no threat of inconsistent judgments because breach of fiduciary duty and workplace discrimination are separate and independent causes of action.   The relief sought in each action is not similar, much less "identical." And this Court *must* exercise its exclusive jurisdiction over the Plaintiffs' claims, rendering the Defendant's claims regarding judicial efficiency inapplicable.

For the same reasons, this matter does not satisfy the first factor articulated by this Court *Rowayton Venture Grp. LLC*. Nor is the second, mandatory, factor articulated in *Rowayton* met. The controlling issues in this action will not be satisfied in the State Court Action because even assuming, *arguendo*, that the state court grants Ms. Alongi the relief she seeks, it does not follow that she could not have committed a fiduciary breach under ERISA because she was discriminated against. For these reasons, the Defendant's assertions regarding which action was "first-filed" are irrelevant to this inquiry. The Court should not stay this action pursuant to the prior-pending-action doctrine.

## Conclusion

For the reasons stated herein, and in accordance with all relevant law, this Court should deny the Defendant's Motion to Stay.

Respectfully submitted,

Date: March 16, 2021

/s/ Jennifer L. Markowski
Jennifer L. Markowski, BBO# 655927
**FREEMAN, MATHIS & GARY LLP**
60 State Street, Suite 600
Boston, Massachusetts 02109-1800
Telephone (617) 963-5975
jmarkowski@fmglaw.com

/s/ Charles W. Gilligan
Charles W. Gilligan (pending pro hac vice)
Jennifer Simon (pending pro hac vice)
Daniel Keenan (pending pro hac vice)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
cgilligan@odonoghuelaw.com
jsimon@odonoghuelaw.com
dkeenan@odonoghuelaw.com

## CERTIFICATE OF SERVICE

I, Jennifer L. Markowski, hereby certify that I have, on this 16th day of March 2021, served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF).


*Jennifer L. Markowski*
Jennifer L. Markowski