UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:21-cv-10163-FDS |
| GINA ALONGI, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO
FILE AMENDED ANSWER TO ASSERT COUNTERCLAIMS**

The Plaintiffs, Trustees of several multiemployer employee benefit plans, filed this action

on January 29, 2021, pursuant to Section 502 of ERISA, 29 U.S.C. §1132 seeking recovery of any

losses resulting from Ms. Alongi's fiduciary breaches and restoration of any profits that she made

through unlawful use of plan assets. The well-plead allegations in the Complaint are based, in part,

on a forensic audit conducted by an outside certified public accounting firm engaged by the

Trustees after the severity and breadth of Ms. Alongi's unlawful conduct came to light. The

Defendant, Gina Alongi, filed a complaint in the Norfolk Superior Court on February 10, 2021 in

which she alleged unlawful retaliation, harassment, and discrimination on the basis of sex and

disability. (ECF No. 22, pp. 3-4).

The parties have worked diligently to complete extensive discovery in this matter in

accordance with the Scheduling Order issued by the Court and the subsequent extensions thereto

granted by the Court. The parties recently conducted a Status Conference in this matter on

September 12, 2022, and the parties advised the Court that discovery was complete. With the

Court's guidance and input, the parties agreed to submit dispositive motions in this matter by

October 18, 2022. (ECF No. 43). No mention of an amendment to Defendant's Answer or the

assertion of a counterclaim was raised during this Status Conference. Nonetheless, counsel for Defendant proceeded to file a Motion for Leave to File Amended Answer to Assert Counterclaims ("Motion to Amend") on September 23, 2022.  (ECF Nos. 44, 45).

As with the Motion to Stay filed in this matter (ECF No. 7), the belated and untimely Motion to Amend is totally devoid of merit. The bases for the Plaintiffs' Opposition are articulated herein, and the Plaintiffs respectfully assert that the Defendant's Motion to Amend must be denied.

## Relevant Factual and Procedural Background

As the Court has already noted in this matter, "[t]he Funds filed this lawsuit on January 29, 2021. Alongi did not file her complaint in Superior Court until February 10, 2021. Thus, this lawsuit was pending at the time of Alongi's state-court action." (ECF No. 22, p. 8). The Defendant filed a Motion to Stay these proceedings on March 4, 2021, implausibly arguing, *inter alia*, that the Norfolk Superior Court was the proper venue for this litigation, which exclusively concerns alleged breaches of fiduciary duty pursuant to ERISA on Ms. Alongi's part. The Court denied that Motion on August 9, 2021, and the Defendant filed an Answer on August 27, 2021, after the Plaintiffs agreed to two separate Stipulations agreeing to provide the Defendant additional time to file the same. (ECF Nos. 22-24).  In denying the Motion to Stay, the Court noted that this Court was only Court competent to hear the Plaintiffs' allegations, and further noted as follows:

> The Court is of course cognizant that there may be overlapping factual questions in the federal and state cases, which may result in duplicative efforts. There are potential mechanisms the parties could employ, however, to streamline the lawsuits for the sake of efficiency, such as cross-designating depositions for both proceedings. The Court is also aware that it is possible that the proceedings in one action could result in issue or claim preclusion in the other action.

(ECF No. 22, p. 9). Thus, cognizant of the fact that the Plaintiffs' claims here and the Defendant's lawsuit filed in Norfolk Superior Court would advance in those separate venues, the Court advised the parties to streamline the lawsuits for efficiency by, among other things, cross-designating

depositions. (*Id*.). The parties did so, but the mere existence of *certain* overlapping facts relevant to the distinct and entirely separate legal claims and analyses at issue in these matters have remained just that – distinct and entirely separate.

The Court held a Scheduling Conference on October 26, 2021 and issued a Scheduling Order that same date. (ECF No. 33). In the Scheduling Order, the Court provided that the deadline for "Amendments to pleadings" was November 19, 2021. (*Id*.). The Court subsequently extended certain deadlines contained in the Scheduling Order twice, but neither of those subsequent Amended Scheduling Orders included an extension of the deadline to amend pleadings in this matter. (ECF Nos. 35, 39). The parties subsequently completed extensive discovery, including dozens of days of depositions, by the August 1, 2022 deadline ultimately set by the Court, following which they participated in a Status Conference on September 12, 2022, in which the parties briefly discussed with the Court that they had successfully completed discovery, unsuccessfully engaged in mediation with a private mediator, and arrived at a mutually agreeable date for the filing of dispositive motions. The Plaintiffs advised the Court that they planned to file a partial dispositive motion in this matter, and with the Court's input the parties agreed that dispositive motions would be due in this matter on or before October 18, 2022. (ECF No. 43). During this recent Status Conference, counsel for the Defendant made no mention – whatsoever – of seeking to amend its Answer to assert a "counterclaim" in the form of an entire, mature Superior Court proceeding in this Court while the parties prepared dispositive motions in accordance with the Court's direction during the Status Conference.

The Defendant subsequently filed the Motion to Amend on September 23, 2022, after leaving undersigned counsel a voicemail simply advising that the Motion would be filed that afternoon.

## Argument

The Defendant incorrectly asserts that Federal Rule of Civil Procedure 15(a)(2) informs the Court's analysis of its Motion to Amend. (ECF No. 45, pp. 3-4). Federal Rule of Civil Procedure 15(a) provides that leave of this Court is required to amend an answer more than 21 days after service. Fed. R. Civ. P. 15(a). Indeed, while leave shall be given freely "when justice so requires," as provided in Rule 15(a)(2), "the court will not 'mindlessly grant every request.'" *Jones Lang LaSalle New England, LLC v. 350 Waltham Assocs., LLC*, No. 1:17-CV-11784-IT, 2020 WL 419516, at *3 (D. Mass. Jan. 27, 2020) citing *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006). As is discussed briefly *infra*, the Defendant's Motion to Amend would not satisfy even that more lenient standard, if it applied.

It does not, because "[a]t a certain point, this amendment-friendly regime may cease to govern." *U.S. ex rel. D'Agostino v. EV3, Inc*., 802 F.3d 188, 192 (1st Cir. 2015). The First Circuit holds that where, as here, a district court has included a deadline for amendment of pleadings in a Scheduling Order, a party seeking to amend pleadings after the deadline has expired must satisfy "Rule 16(b)'s more stringent good cause standard." *Id*. Indeed, as the First Circuit has explained:

> Rule 16 directs a district court to issue a scheduling order charting the anticipated course of the litigation. *See id.* 16(b)(1). One customary element of such an order is a deadline for amending the pleadings. *See id.* 16(b)(3)(A). Such a deadline, like other deadlines contained in a scheduling order, may be modified only upon a showing of 'good cause.' *Id.* 16(b)(4). Thus, when a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order, Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard.

*Id*.; *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008) citing *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004) ("Our case law clearly establishes that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely give[n]' standard, governs motions to amend filed after scheduling order deadlines.").

Here, as noted *supra*, the Court entered a Scheduling Order, which provided that the deadline for "Amendments to pleadings" was November 19, 2021. (ECF No. 33). Scheduling orders issued pursuant to Rule 16(b), including deadlines for "subsequent proceedings in the litigation" included therein serve an essential function, and "[o]ne purpose of the rule is 'to assure that at some point ... the pleadings will be fixed.'" *Trans-Spec Truck Serv., Inc.,* 524 F.3d at 327 citing *O'Connell*, 357 F.3d at 154 (quoting Adv. Comm. Notes to 1983 Amends. to Fed.R.Civ.P. 16(b)). The touchstone of the "good cause" standard employed by First Circuit courts is the diligence of the party seeking amendment:

> Unlike Rule 15(a)'s 'freely given' standard, which focuses mostly on the bad faith of the moving party and the prejudice to the opposing party, *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227 (1962), Rule 16(b)'s 'good cause' standard *emphasizes the diligence of the party seeking the amendment*.

*O'Connell*, 357 F.3d at 155 (emphasis added). Additionally, "[p]rejudice to the opposing party remains relevant but is not the dominant criterion," though "'indifference' by the moving party 'seal[s] off this avenue of relief' irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause." *Id*. citing *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998).

## I.     The Motion to Amend Must be Denied Because the Defendant has Failed to Establish "Good Cause."

The Plaintiffs respectfully assert that the Motion to Amend must be denied because the Defendant has utterly failed to articulate – much less establish – good cause for the amendment it seeks. (ECF No. 45). Instead, the Defendant haphazardly cites the inapplicable, more lenient "leave freely given standard" under Rule 15(a), and simply makes broad pronouncements asserting that "[i]f Ms. Alongi is not permitted to bring her related stat court claims into his action, the parties will be forced to participate in two separate trials, in different forums, which will involve

heavily overlapping facts and issues." (ECF No. 45, p. 5) (*sic*). The Defendant cites *no* applicable case law to support its position, and fails to so much as mention the standard she must satisfy to establish entitlement to the relief she seeks. As with one of the meritless arguments asserted in support of her Motion to Stay, here too the Court's observation that the Defendant "has provided no caselaw, however, supporting that approach," rings true. (ECF No. 22, p. 8).

The Defendant filed her Answer on August 27, 2021. (ECF No. 24), several months after her unsuccessful motion to stay these proceedings. The Defendant filed the Motion to Amend on September 23, 2022. (ECF Nos. 44, 45). Thus, Defendant filed her Motion to Amend *392 days* after she filed her Answer in this matter, and *309 days* after the deadline imposed by this Court.

In *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, the First Circuit upheld a district court's denial of a motion to amend a pleading where the movant "filed its motion to amend eleven months after the deadline established by the scheduling order." *Trans-Spec Truck Serv., Inc.*, 524 F.3d at 327. In that case, the movant sought "to justify its delay by pointing to information discovered at various depositions," but as is the case here, "[t]he allegations that Trans–Spec seeks to add to its amended complaint are based on information that Trans–Spec had or should have had from the outset of the case." *Id*. In misstating the applicable standard, the Defendant has made several damning admissions that clearly foreclose her ability to establish "good cause," had she actually attempted to do so. The Defendant states at the outset of her Motion to Amend that:

> The counterclaims that Ms. Alongi intends to assert are the same exact claims brought by Ms. Alongi against the Funds and Mr. McLaughlin in an action currently pending in Norfolk Superior Court.

(ECF No. 45, p. 1). The Defendant further states:

> Ms. Alongi does not intend to assert any 'new' claims or allegations against any party: the counterclaim that she requests to assert are a carbon copy of her allegations and claims in the State Court Action.

(*Id*., p. 5). The "same exact claims" that the Defendant seeks to assert were included in a lawsuit that, as this Court has observed, was filed in the Norfolk Superior Court on February 10, 2021. (ECF No. 22, p. 8). Thus, this lawsuit was pending and the Defendant was fully aware of the information and allegations included therein for at least 282 days prior to the deadline for "Amendments to pleadings" included in the Scheduling Order issued by the Court, which expired on November 19, 2021. (ECF No. 33). The Defendant fails to offer a single recently uncovered or discovered fact necessitating the Motion to Amend. It is truly impossible at this stage for the Defendant to seek to add a counterclaim based on *anything* other than "information that [she] had or should have had from the outset of the case." *Trans-Spec Truck Serv., Inc.*, 524 F.3d at 327.

What is more, analogous case law underscores the dilatory nature of the Defendant's action herein. The Defendant had every opportunity to limit her litigation to one forum but chose deliberately to avail itself of a state court proceeding despite the fact that she could have attempted to bring this counterclaim when this lawsuit was filed. Instead, the Defendant forged ahead with a state court claim while unsuccessfully trying to prevent Plaintiffs from proceeding in this matter with the March 4, 2021 Motion to Stay. *See Trans-Spec Truck Serv., Inc.,* 524 F.3d at 327 ("The explanation for the delay seems to be simply that Trans–Spec thought that it would prevail on the motion to dismiss without any need to further amend. In that, its calculations were wrong."). Now, more than eighteen months after its initial filing in this matter, Defendant is attempting to radically alter the nature of the case before this Court. But as the First Circuit has held, the Defendant now "must be bound by the consequences of its litigation strategy." *Id*.; *see also James v. Watt*, 716 F.2d 71, 77 (1st Cir. 1983). The disingenuous nature of the Defendant's threadbare arguments is put on full display when examined in conjunction with the Motion to Stay the Defendant filed in this very case. Therein, the Defendant vehemently asserted that:

> This present action and Ms. Alongi's state court action (the "State Court Action") involve the same parties and identical issues which can, *and indeed must, be resolved in the pending State Court Action*.

(ECF No. 7, p. 1, *emphasis added*). The Defendant further emphasized in its Motion to Stay that:

> Abstention is appropriate under the doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971) because the Funds' attempt to litigate its defense to Ms. Alongi's claims in this forum interferes with *an ongoing state judicial proceeding that implicates Massachusetts' important state interest in enforcing its anti-discrimination laws*.

(ECF No. 8, p. 7, *emphasis added*). Finally, the Defendant argued before this very Court that:

> Massachusetts has a strong and well-defined interest in enforcing its discrimination laws *in its own courts*.

(ECF No. 8, p. 9, *emphasis added*). Put simply, the Defendant chose to file a lawsuit in the Norfolk Superior Court. She subsequently sought to stay these proceedings by asserting that the Superior Court was the only appropriate venue for disposition of her claims. The First Circuit's observation in *James v. Watt*, 716 F.2d 71 (1st Cir. 1983) that "the pleadings in this case were drawn as part of a litigating strategy and plaintiffs showed the district court no reason why they should not be bound by the consequences of that strategy," succinctly describes the scenario the Court is considering here. *Id*. at 77. Now, at the eleventh hour, evidently dissatisfied with her choice of forum after arguing it was the only place where her rights could be vindicated, the Defendant seeks to consolidate two separate procedurally advanced cases into a single action before this Court, and in support of her endeavor the Defendant takes a position completely contrary to that taken before this very Court.

The Defendant now comes before this Court a mere *eleven days* after a Status Conference in which the Court invited the parties to address any concerns or issues regarding the progress of this matter and filed a Motion to Amend which would radically shift the legal issues and claims which have been pending before this Court since January 2021 without any articulable basis for

doing so. This should not be permitted. Indeed, "[i]n an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation," and "[f]or Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a 'frivolous piece of paper idly entered, which can be cavalierly disregarded without peril.'" *O'Connell,* 357 F.3d at 155 *citing Tower Ventures, Inc. v. Westfield,* 296 F.3d 43, 45 (1st Cir. 2002), *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 608 (9th Cir. 1992). Thus, as the First Circuit has observed, "liberally granting motions to amend the pleadings—filed after a party has disregarded the scheduling order deadline—would effectively 'nullif[y] the purpose of Rule 16(b)(1).'" *Id. citing Riofrio Anda v. Ralston Purina, Co*., 959 F.2d 1149, 1155 (1st Cir. 1992); *see also U.S. ex rel. D'Agostino*, 802 F.3d at 194 ("Were a district court powerless to enforce such deadlines, scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient.").

## II.    Having Failed to do so, the Defendant is now Barred from Seeking to Establish "Good Cause."

In *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316 (3d Cir. 2020), the Third Circuit denied a movant's attempt to amend its complaint and add a party where, as here, the movant filed a motion to amend "[w]ell after the deadline the District Court set in a scheduling order." *Id*. at 319. Notably, as here, the movant incorrectly sought to amend a pleading under the more forgiving Rule 15 standard, and attempted to analyze and establish satisfaction of the "good cause" standard under Rule 16(b) for the first time in subsequent reply briefs. *Id*. at 318. In affirming the district court's decision to deny the motion to amend, the Third Circuit approvingly cited the district court's refusal to consider "issues raised by [movant] for the first time in its reply brief." *Id*. at 318, 319; *see also United States v. Tosi*, 897 F.3d 12, 15 (1st Cir. 2018) *citing United States v. Carbajal-Váldez*, 874 F.3d 778, 785 n.2 (1st Cir. 2017) ("It simplifies the discussion without

changing the outcome to assume that the alleged errors were all preserved and all subject to review under a deferential standard…save for certain specific issues raised for the first time in Tosi's reply brief, which are barred," … "But, as already noted, arguments available at the outset but raised for the first time in a reply brief need not be considered.").

The argument that Defendant could establish "good cause" under Rule 16 to establish a basis for the Court to grant its Motion to Amend was clearly "available at the outset," but the Defendant did not so much as provide a passing reference to the standard, much less provide any relevant facts or analysis as to why this standard is met here. As noted *supra*, the Defendant instead argued that all necessary facts and arguments were available to her when she filed her lawsuit in the Norfolk Superior Court. (ECF No. 45, pp. 1, 5). Having failed to do so, she cannot attempt to rehabilitate her baseless Motion to Amend through reply or later argument. That door is closed.

### III. Assuming, *arguendo*, the Rule 15 Standard Applied, the Defendant Cannot Satisfy that More Lenient Standard, Either.

As noted, while leave shall be given freely "when justice so requires," as provided in Rule 15(a)(2), "the court will not 'mindlessly grant every request.'" *Jones Lang LaSalle New England, LLC*, 2020 WL 419516, at *3 citing *Aponte-Torres*, 445 F.3d at 58. Even if this standard applied, the Court "must consider factors such as 'undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment.'" *Id*. citing *Hagerty ex rel. United States v. Cyberonics, Inc*., 844 F.3d 26, 34 (1st Cir. 2016). Additionally, the First Circuit has held that "[a]s a case progresses, the burden on the party seeking to amend a pleading 'becomes more exacting,'" *Id*. citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004), and "movant has the burden of showing a valid reason for delay." *Id*. citing *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19-20 (1st Cir. 1979).

The Motion to Amend fails to meet even this more lenient standard as, *inter alia*, it was brough after undue delay and for a dilatory purpose. In *Jones Lang LaSalle*, this Court noted that the defendants "waited four months before filing" a motion to amend their answer to assert counterclaims. *Jones Lang LaSalle New England, LLC*, 2020 WL 419516, at *3. Accordingly, this Court held that "[u]nder Rule 15, the untimeliness of this motion is sufficient to deny the motion." *Id*. Here, an entirely analogous Motion to Amend was filed not four - but thirteen – months after the initial pleading was filed, and the untimeliness of the Defendant's Motion to Amend "is sufficient to deny the Motion." *See also Hagerty ex rel. United States*, 844 F.3d at 34 ("As relevant here, undue delay, on its own, may be enough to justify denying a motion for leave to amend.").

This is especially true when one considers that in *Jones Lang LaSalle*, the defendants seeking leave to amend their answer to assert counterclaims did not "learn the facts on which they rel[ied] until" four months prior to filing their motion to amend. *Id*. Here, as is discussed *supra*, the Defendant openly states that no new facts, theories, or arguments necessitate the Motion to Amend or the relief it seeks. In denying the entirely analogous motion to amend in *Jones Lang LaSalle*, this Court noted that:

> Despite fact discovery closing on November 5, 2018, Defendants acted with no haste. Defendants did not raise the issue at the December 2018 status conference. When the parties moved jointly on February 5, 2019, to extend expert witness depositions until March 11, 2019 … Defendants again made no mention of the new claims and defense. Instead, Defendants waited four months before filing this motion.

*Id*. Here, this Court's observations in that case are on all fours with the question currently pending, and can be easily rewritten as thus:

> Despite fact discovery closing on [August 1, 2022], Defendants acted with no haste. Defendants did not raise the issue at the [September 12, 2022] status conference. When the parties moved jointly [during that status conference] to extend the [dispositive motion deadlines until October 18, 2022] … Defendant again made no

mention of the new claims and defense. Instead, Defendant waited [thirteen months] before filing this motion.

This is 1) a dilemma entirely of Defendant's own making and choices; and 2) a gross oversimplification of what are, in fact, two dramatically different causes of action under completely unrelated statutes. The Defendant has not offered an argument – much less a compelling argument – as to why or how that is not the case.

The Plaintiffs respectfully assert that the Defendant additionally has a dilatory motive in filing her Motion to Amend. As noted, the United States Supreme Court has held that although Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires," that generous standard is curtailed in scenarios where "dilatory motive on the part of the movant" is a factor. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). Here, it is clear that the Defendant has a dilatory motive in filing the Motion to Amend; she is seeking to avoid the Plaintiffs' filing of a dispositive motion in this forum. There is no other reasonable explanation for this eleventh hour gambit. As noted above, the Defendant chose to file her complaint in the Norfolk Superior Court after the Plaintiffs filed the Complaint in this matter. *See* (ECF No. 7-1, p. 6). The Defendant could have attempted to file a Counterclaim in this Court instead of filing a Complaint in Norfolk Superior. She did not avail herself of that opportunity. The Defendant could have attempted to file the counterclaim she now seeks to add more than a year later when she filed her Answer, after her counsel had the benefit of this Court's Memorandum Opinion concerning her meritless Motion to Stay. She did not avail herself of that opportunity. The Defendant could have filed the very amended Answer and Counterclaim she now seeks leave to file prior to the expiration of the deadline for doing the same set in the Court's Scheduling Order. She did not avail herself of that opportunity. Having failed throughout the progress of these matters to timely seek to amend her pleading, the Defendant cannot now seek to

do so at this exceedingly late stage by complaining of the "routine inefficiencies resulting from parallel litigation" in a forum she herself chose. *Ezike v. Bliss*, 2017 WL 1826495, at *4 (D. Mass. May 5, 2017). The Defendant does not so much as muster a plausible excuse as to why this Motion comes now, when the parties are on the cusp of filing dispositive motions.

Additionally, the sought Amendments in this case are both procedurally and substantively unnecessary. The Defendant asserted her claims in her chosen venue, discovery is complete in the proceedings pending before the Superior Court, the dispositive motion deadline – which the Defendant has already disrupted without cause - was October 4, 2022, and the case is moving ahead as scheduled. The Defendant's transparent efforts to interrupt the scheduled and agreed upon disposition of these matters after the conclusion of discovery must not be rewarded.

**IV.    The Defendant's Motion is Devoid of Supporting Law.**

In the Motion to Amend, the Defendant baldly asserts that it is entitled to the relief it seeks without offering any supportive case law. Instead, the Defendant provides only a basic articulation of a portion of the inapplicable standard under Federal Rule of Civil Procedure 15, failing to articulate the standard pursuant to which the Court must analyze the question currently pending.

For this reason, the Defendant levies misplaced accusations concerning the merits of this case and the case pending in the Superior Court, as well the progress of discovery in these matters. The Defendant implausibly asserts, without ever raising this issue with Counsel, that:

> After Ms. Alongi announced to the Funds that she intended to remove her discrimination and retaliation claims to Superior Court if the parties not could settle their claims, the Funds rushed to this Court to file this present action in a transparent (albeit misguided) attempt to force Ms. Alongi to incur additional legal fees (for example, the parties took 15 depositions with several occurring over the course of multiple days) and to harass her (the Funds deposition of Ms. Alongi lasted four days and included pages of questions regarding her sex life going back decades), by trying to repackage its defense to Ms. Alongi's claims as a breach of fiduciary duty claim against her.

(ECF No. 45, p. 2). Notably, the Defendant both complains that Ms. Alongi's deposition "lasted four days" while simultaneously noting that "several" depositions lasted "multiple days." First, Ms. Alongi is the Defendant in this lawsuit, and is a plaintiff in the lawsuit *she filed* with the Superior Court. Thus, she is party to two lawsuits in which discovery resulted in the production of well over 100,000 pages of documents – at counsel for the Defendant's insistence – as well as dozens of days of deposition testimony. The fourth day of Ms. Alongi's testimony was abbreviated and was limited to certain topics of testimony after Counsel agreed to limitations insisted upon by counsel for the Defendant. An email exchange evidencing this fact is attached as *Exhibit 1*. The Defendant's attempt to add credence to her meritless Motion to Amend with inflammatory accusations is of no value in meeting the requirements of the standard the Defendant must satisfy to establish her entitlement to the relief she seeks.

The Defendant also asserts that this lawsuit exists solely to "harass" Ms. Alongi and "force Ms. Alongi to incur additional legal fees." (ECF No. 45, p. 2). Counsel for the Defendant is well aware that, if that baseless allegation were in any way true, there are any number of remedies available, including but not limited to moving to have the Complaint dismissed. The Defendant, knowing full well that the lawsuit in this matter is soundly based in both law and fact, has availed herself to none of these remedies. Instead, she sought to stay this matter, and simply filed an Answer and engaged in discovery after that attempt to derail a meritorious claim was denied.

### V.    The Defendant has not Established that this Court Should Exercise Supplemental Jurisdiction Over the Proposed Counterclaim.

Here, the Defendant asserts without citing any authority that "this Court has supplemental jurisdiction over Ms. Alongi's state law claims against the Funds and Mr. McLaughlin, pursuant to 28 U.S.C. 1367(a)." (ECF No. 45, p. 4). 28 U.S.C. 1367(a) provides as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that they form part
> of the same case or controversy under Article III of the United States Constitution.

The Defendant's analysis regarding whether this Court has supplemental jurisdiction over her state law claim begins, and ends, as thus: "Of course, the Funds' breach of fiduciary duty suit and Ms. Alongi's state law claim that the Funds' suit is retaliatory are claims that would 'ordinarily be expected to be tried in one judicial proceeding.'" (ECF No. 45, p. 4). Defendant offers no analogous case law, relevant facts, or citations to authority supporting this pronouncement. As this Court has found, the Funds' lawsuit alleging breaches of fiduciary duty under ERISA can *only* be heard in this Court (ECF No. 22). Defendant, by contrast, seeks to assert much more than a basic retaliation claim cognizable under federal law; by her own admission, the Defendant seeks instead to add claims against a non-party, William McLaughlin, as well as claims concerning "hostile work environment, quid pro quo sexual harassment … and failure to accommodate her chronic health condition." (ECF No. 45, p. 2). The state court claims also involve allegations levied by former Fund employee Rose Marie Alongi, who is not a party to these proceedings. Thus, the Defendant seeks to both add and subtract a party, and further seeks to add at least four distinct and separate state law specific claims to advanced litigation that concerns a one count Complaint alleging breach of fiduciary duty under federal law. (Counsel for Alongi suggests that he will seek to stay the state claims of Rose Marie Alongi for later adjudication in Norfolk Superior Court, pending the outcome of this matter, thereby further eroding the notion that these actions will in any way promote judicial economy). The Defendant provides no explanation as to why such diverse cases would "ordinarily be expected to be tried in one judicial proceeding."

Indeed, the First Circuit holds that "[s]tate and federal claims are part of the same 'case or controversy' for the purposes of section 1367(a) if they 'derive from a common nucleus of

operative fact' or 'are such that [they] ... would ordinarily be expected to [be] tr[ied] ... in one judicial proceeding.'" *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 72 (1st Cir. 2013) *citing Penobscot Indian Nation v. Key Bank of Me.,* 112 F.3d 538, 564 (1st Cir. 1997). Here, the federal and state claims are not part of the same "case or controversy" and they do not "derive from a common nucleus of operative fact." Countless allegations in the state law discrimination claims have no bearing – whatsoever – on the allegations and facts concerning the federal breach of fiduciary duty claim. For example, not a single allegation involving sexual harassment on the part of Mr. McLaughlin would have any impact on whether Ms. Alongi improperly cashed out unused vacation time to which she was not entitled while she exercised control over the same. In *Medina Cintron v. Scorpio Recycling, Inc.*, 17 F. Supp. 2d 53, 54–55 (D.P.R. 1998), the district court noted that:

> Unlike in *Doral,* in which the First Circuit found supplemental jurisdiction over commonwealth civil rights claims where original jurisdiction was over essentially equivalent federal civil rights claims brought under Title VII, Plaintiffs' fraud and breach of fiduciary duty and age discrimination claims do not 'derive from a reservoir of common facts,' and 'would *[not]* ordinarily be heard together in a single consolidated trial.'

*Id. citing Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1176. Accordingly, a First Circuit district court has held that federal age discrimination claims do not "derive from a reservoir of commons facts" as non-federal breach of fiduciary duty and fraud claims. *Id*. Accordingly, the Court determined that it had "no supplemental jurisdiction over Plaintiffs' fraud and breach of fiduciary duty claims." *Id*. at 54–55. Here too, the federal breach of fiduciary duty claims do not derive from a reservoir of common facts from the state law allegations concerning harassment, discrimination, and failure to accommodate which include, for example, inappropriate comments allegedly made towards certain former Funds' employees who were not involved in any way, shape, or form with Ms. Alongi's alleged fiduciary breaches.

The district court further noted that the parties seeking to assert a state law claim pursuant to 28 U.S.C. 1367(a) "have not invoked any federal statutes supporting a cause of action for racial discrimination," just as the Defendant here has not invoked any federal statures supporting a cause of action. Thus, the district court continued:

> Plaintiffs' racial discrimination claim…has been brought under commonwealth law, Law 100 specifically. Such a claim does not arise out of a nucleus of facts in common with Plaintiffs' federal age discrimination claim.

*Id*. Despite the Defendant asserting that the mere existence of a single claim, i.e., "Ms. Alongi's state law claim that the Funds' suit is retaliatory," clearly establishes that the federal and state law claims at issue derive from a common nucleus of fact, in *Scorpio Recycling, Inc*. the district court clearly established that racial and age discrimination claims asserted against the same employer do not arise out of a common nucleus of fact where one claim is asserted under federal law and the other is asserted under commonwealth law. In light of this, it is difficult to ascertain how the claims at issue in this matter, not only plead under and implicating federal law on one hand and commonwealth law on the other, but also involving the diverse fields of multiemployer employee benefit plan administration on one hand and alleged sexual harassment and failure to accommodate on the other, are derived from a common nucleus of operative fact.

In *Cormier v. Funtown/Splashtown USA, Inc*., 294 F. Supp. 2d 125, 130 (D. Me. 2003), the district court dismissed various state law claims and counterclaims asserted pursuant to 28 U.S.C. § 1367. In so doing, the district court decided that:

> [T]he discrimination that forms the basis of Count I of the complaint is not specified in the complaint, but the plaintiff's characterization of that count as 'aris[ing] out of sexual harassment perpetrated by Funtown/Splashtown through its agents and employees, and its retaliation against [the plaintiff] in response to her complaints,' is the most logical statement of that basis given the specific factual allegations in the complaint. As was the case in *Learnard*, state-law claims of breach of fiduciary duty, intentional misrepresentation, breach of contract and withholding of wages, rely significantly on facts not involved in determination of the discrimination claim.

17

> From all that appears, the witnesses may essentially be different on the state and federal claims as well.

*Id*. (internal citations to record omitted). As in *Cormier*, the Defendant here asserts purely state law claims - harassment, hostile work environment, and failure to accommodate - that "rely significantly on facts not involved in determination of the" federal breach of fiduciary claim under ERISA. For example, the Defendant can prove that Mr. McLaughlin harassed her, and the Plaintiffs can prove that the Defendant directed Funds' employees to perform work for an unrelated third-party entity in violation of her fiduciary obligations under ERISA. Those nuclei of facts are simply unrelated.  What is more, as the district court observed in *Cormier*, a number of witnesses have no place in one proceeding, while their testimony is a focal point in the other.

Finally, assuming *arguendo* the Court determines that it may assert supplemental jurisdiction over the proposed counterclaims included in the Motion to Amend, 28 U.S.C. §1367(c) provides a compelling basis pursuant to which the Court should decline to do so. Section 1367(c)(2) provides that: "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." *Id*.

As has been noted *supra*, through its Motion to Amend the Defendant seeks to transform litigation concerning one count for breach of fiduciary duty under ERISA into litigation concerning five separate counts and claims for relief based exclusively on state law. These counts are based on the following alleged violations, each of which requires the establishment of facts and the application of state law wholly irrelevant to the one count ERISA claim currently pending:

- o "Hostile Work Environment" pursuant to M.G.L. c. 151B;
- o "Quid Pro Quo Sexual Harassment" pursuant to M.G.L. c. 151B;
- o "Retaliation" pursuant to M.G.L. c. 151B, §4(4);
- o "Failure to Accommodate" under Massachusetts law; and
- o "Interference with Rights" pursuant to M.G.L. c. 151B; §4(4A)).

In *Allstate Interiors & Exteriors, Inc*., the First Circuit considered a party's contention that "the district court should have declined to exercise supplemental jurisdiction under section 1367(c)(2) because the state claims between the non-diverse parties to the case predominated over all other claims at issue." *Allstate Interiors & Exteriors, Inc.*, 730 F.3d at 73–74. In deciding whether the district court should have declined to exercise jurisdiction, the First Circuit noted that "Section 1367(c) codifies the holding of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966), where the Supreme Court clarified that a district court may dismiss state claims 'if it appears that the state issues substantially predominate, whether in terms of proof of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'" *Id*. Here, the proposed counterclaim seeks to assert a five-count claim based entirely in state law that eclipses the straightforward breach of fiduciary duty claim alleged in the Complaint. The proposed counterclaim additionally seeks a comprehensive remedy by way of monetary damages, fees and costs, compensatory damages for emotional distress, punitive damages "pursuant to M.G.L. c. 151B, § 9," and various forms of interest. (ECF No. 45-2, p. 32). What is more, the counterclaim seeks to add a Defendant to this matter mere days before the parties were scheduled to file dispositive motions, and she seeks an award of damages against that proposed new party as well.

In *Allstate Interiors & Exteriors, Inc*., the First Circuit ultimately held that the district court did not err in exercising supplemental jurisdiction where the two disputes at issue "arose from the contracts relating to the same construction project," such that "both sets of claims thus depended on the same body of evidence and sought a similar legal remedy in the form of contractual damages." *Allstate Interiors & Exteriors, Inc*., 730 F.3d at 73–74. Here, there is no such parity of issues. In fact, the disputes arose out of distinct fact patterns such that both sets of claims depend on entirely distinct bodies of evidence: Ms. Alongi's arrival times at the office and performance

of work for a third-party utilizing Funds resources on one hand, for example, and Mr. McLaughlin's alleged comments to separate female employees in the Funds' office on the other. Finally, the remedies sought – far from being "a similar legal remedy in the form of contractual damages" – bear no relation to one another in any way, shape, or form. Put simply, the Defendant has tried to take a straightforward one count federal question case and turn it into a hybrid, six count case involving unrelated federal and state claims that must be analyzed under separate and distinct statutes and bodies of case law, all while adding a Defendant.

The Plaintiffs respectfully assert that the Court should not exercise supplemental jurisdiction over the proposed counterclaims because they do not form part of the same case or controversy as they are not derived from a common nucleus of fact as the claim currently pending before the Court. Assuming, *arguendo*, that the Court determines that the proposed counterclaims do, in fact, derive from a common nucleus, the Plaintiffs assert that the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2) for the reasons discussed herein.

## <u>Conclusion</u>

For the reasons stated herein, and in accordance with all relevant law, this Court should deny the Defendant's Motion for Leave to File Amended Answer to Assert Counterclaims.

Respectfully submitted,

Date: <u>October 7, 2022</u>

s/ Jennifer L. Markowski
Jennifer L. Markowski
**FREEMAN, MATHIS & GARY LLP**
60 State Street, Suite 600
Boston, Massachusetts 02109-1800
Telephone (617) 963-5975
jmarkowski@fmglaw.com
BBO# 655927

s/ Charles W. Gilligan
Charles W. Gilligan (admitted pro hac vice)
Jennifer Simon (admitted pro hac vice)
Daniel Keenan (admitted pro hac vice)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
cgilligan@odonoghuelaw.com
dkeenan@odonoghuelaw.com

## <u>CERTIFICATE OF SERVICE</u>

     I, Charles W. Gilligan, hereby certify that I have, on this 7th day of October, 2022, served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF).

                                                *Charles W. Gilligan*
                                              Charles W. Gilligan