# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BOARD of TRUSTEES of the IUOE LOCAL 4 PENSION FUND, BOARD of TRUSTEES of the IUOE LOCAL 4 ANNUITY & SAVINGS FUND, BOARD of TRUSTEES of the IUOE LOCAL 4 HEALTH and WELFARE FUND, BOARD OF TRUSTEES of the HOISTING and PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, INTERNATIONAL UNION of OPERATING ENGINEERS LOCAL 4, IUOE LOCAL 4 LABOR-MANAGEMENT COOPERATION TRUST, and IUOE LOCAL 4 SOCIAL ACTION COMMITTEE, <br><br> Plaintiffs, <br><br> v. <br><br> GINA ALONGI, <br><br> Defendant. | Civil Action No. 21-cv-10163-FDS |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER TO ASSERT COUNTERCLAIMS

SAYLOR, C.J.

This is an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiffs Board of Trustees of the IUOE Local 4 Pension Fund, Board of Trustees of the IUOE Local 4 Annuity & Savings Fund, Board of Trustees of the IUOE Local 4 Health and Welfare Fund, Board of Trustees of the Hoisting and Portable Engineers Local 4 Apprenticeship & Training Fund, International Union of Operating Engineers

Local 4, IUOE Local 4 Labor-Management Cooperation Trust, and IUOE Local 4 Social Action Committee (collectively, the "Funds") allege that defendant Gina Alongi breached her fiduciary duty to the Funds during her employment as the Administrator for the Funds.  In substance, the complaint alleges that Alongi diverted pension-plan assets for her own benefit and the benefit of an entity unrelated to the Funds, failed to perform work for the plan, and otherwise breached her duties as plan administrator.

Before the filing of this lawsuit, Alongi filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") against the Funds and the Chairman of the Board of Trustees of the Funds, William D. McLaughlin, alleging a hostile work environment, sexual harassment, unlawful retaliation, and disability discrimination.  The Funds filed this lawsuit four months later.  Alongi then filed suit in Massachusetts Superior Court, alleging the same claims as those asserted in the MCAD and adding a claim for interference with rights under Massachusetts employment-discrimination law.  Alongi moved to stay the federal proceeding, which this court denied.

As part of its scheduling order, and pursuant to the requirements of Federal Rule of Civil Procedure 16(b)(3)(A), the court set a deadline of November 19, 2021, for amendments to the pleadings.  The parties then completed fact discovery in both cases, which was coordinated and cross-designated, and agreed to a timeline for dispositive motions.

On September 23, 2022, Alongi moved for leave to file an amended answer to assert counterclaims against the Funds and to add McLaughlin as a counterclaim defendant.  The proposed counterclaims are, in substance, the same as those brought in the pending state-court action.  That motion was filed long after the deadline for amendment of the pleadings, and Alongi offers no valid reason for that substantial delay.

Nonetheless, the proposed amendment would help to rationalize this litigation by having all related claims resolved in a single proceeding.  Furthermore, there would be no apparent prejudice to the Funds if the motion were granted.  Accordingly, and despite the Court's concerns about the course of this litigation, the motion will be granted for the reasons set forth below.

## I.      Background

The facts are set forth as alleged in the complaint and attached exhibits, as well as in exhibits filed by the parties with this motion and the defendant's earlier motion to stay.

### A.      Factual Background

Plaintiffs are the Board of Trustees of several multiemployer employee-benefit plans, a union, a union social-action committee, and a labor-management trust fund.  (Compl. ¶ 1).

Gina Alongi was employed by the Funds as the Fund Administrator from 1996 until July 21, 2020.  (*Id.* ¶ 14).  The Administrator supervises Fund employees, oversees the operation of the Funds, and is the primary liaison to the Trustees and to outside professional advisors retained by the Funds.  (*Id.* ¶ 13).  She was responsible for administering the Funds in accordance with plan documents and policies adopted by the Trustees and acted as a fiduciary to the Funds.  (*Id.* ¶ 15).

Alongi was terminated by the Fund Trustees on July 21, 2020.  (*Id.* ¶ 14).  The Funds maintain that she was terminated because she breached her fiduciary duty by diverting plan assets for the benefit of herself and an entity unrelated to the Funds, and because she failed to perform certain services for which she was paid.  (Dkt. No. 8, Exs. B ("Funds MCAD Position Statement"), C ("Funds MCAD Sur-reply")).  She maintains that she was unlawfully retaliated against for engaging in protected activity, including reporting sexual harassment and requesting reasonable accommodations for a disability.  (Def. Mem., Ex. A ("Sup. Ct. Compl.") ¶¶ 84-88).

**B.**     **Procedural Background**

On September 3, 2020, Alongi filed a complaint against the Funds with the Massachusetts Commission Against Discrimination ("MCAD"), alleging claims of a hostile work environment in violation of Mass. Gen. Laws ch. 151B; *quid pro quo* sexual harassment in violation of Mass. Gen. Laws. ch. 151B; retaliation in violation of Mass. Gen. Laws. ch. 151B, § 4(4); and failure to accommodate a chronic health condition, all prior to and in connection with her termination.  (Dkt. No. 8, Ex. A ("MCAD Compl.")).[1]

The Funds filed a position statement and sur-reply in response to the MCAD complaint denying the allegations and contending that Alongi was terminated for "gross breach of fiduciary duty."  (Funds MCAD Position Statement at 18; Funds MCAD Sur-Reply).

On January 29, 2021, the Funds filed the complaint in the present action.  The complaint alleges one count of breach of fiduciary duty in violation of 29 U.S.C. §§ 1101-1114.  (*See* Compl. ¶¶ 26-71).

On February 10, 2021, in accordance with Mass. Gen. Laws ch. 151B, § 9, Alongi withdrew her MCAD complaint and filed a complaint in Superior Court against the Funds.[2]  The complaint alleges the same claims as the MCAD complaint and also adds a claim of interference with rights in violation of Mass. Gen. Laws. ch. 151B, § 4(4A) based on the filing of this federal lawsuit.  (Sup. Ct. Compl. ¶¶ 96-102).  The Superior Court subsequently issued a tracking order, placing the case on the "fast track" and setting various case-related deadlines.  (Dkt. No. 8, Ex.

---

[1] The MCAD complaint was asserted on behalf of Alongi and her sister, Rosemarie Alongi (a former employee of the Funds), against the "IUOE Local 4 Fringe Benefit Funds" and William D. McLaughlin, individually and in his capacity as Trustee.

[2] The Superior Court complaint is brought by Alongi and her sister against the "IUOE Local 4 Health & Welfare Fund; IUOE Local 4 Pension Fund; IUOE Local 4 Annuity & Savings Fund; Hoisting and Portable Engineers Local 4 Apprenticeship & Training Fund; Joint Labor-Management Cooperation Trust; and William D. McLaughlin, individually and in his capacity as Chairman of the Board of Trustees."

H).

On March 4, 2021, Alongi moved to stay this action pending the resolution of her state-court lawsuit.  (Dkt. No. 7).  The court denied that motion on August 9, 2021.  (Dkt. No. 22).

On October 19, 2021, the parties submitted a joint statement pursuant to Local Rule 16.1(d) that proposed various deadlines for the Rule 16 scheduling order.  (Dkt. No. 28).  Among other things, the parties proposed a deadline of November 19, 2021, for amendments to the pleadings.

The court then held the scheduling conference on October 26, 2021.  The scheduling order, issued the same day, set the following deadline:  "Except for good cause shown, no motions seeking leave to add new parties or to amend the pleadings to assert new claims or defenses may be filed after November 19, 2021."  (Dkt. No. 33).[3]

The parties agreed that discovery in the federal and state actions would be coordinated and cross-designated.  They also entered into a confidentiality agreement.  As of July 31, 2022, fact discovery had concluded in both actions.  (Def. Mem. at 3).

At a status conference held on September 12, 2022, the parties agreed to submit dispositive motions by October 18, 2022.  (Dkt. No. 43).  Counsel for Alongi did not raise the issue of amending the pleadings to assert new counterclaims, and claims against an additional party, at that conference.

Nonetheless, eleven days later, on September 23, 2022, Alongi moved for leave to file an amended answer.  The amendment seeks to add the following counterclaims, all of which were asserted in the Superior Court action:  (1) hostile work environment under Mass. Gen. Laws ch.

---

[3] Although the parties requested, and were granted, various extensions of the deadlines, no party sought to extend the deadline for amendment of the pleadings.

151B; (2) *quid pro quo* sexual harassment under Mass. Gen. Laws ch. 151B; (3) retaliation under Mass. Gen. Laws ch. 151B, § 4(4); (4) failure to accommodate a chronic health condition; and (5) interference with rights under Mass. Gen. Laws ch. 151B, § 4(4A).  The amendment also seeks to add counterclaims against McLaughlin, who is not now a party to this suit.

## II.   <u>Amendment of Pleadings</u>

Defendant contends that she has good cause to amend because the consolidation of the state and federal claims will promote "efficiency, judicial consistency and judicial economy," and will not prejudice either party.  (Def. Mem. at 5).[4]  Plaintiffs respond that defendant has failed to establish good cause because she did not diligently seek to amend.

### A.   <u>Fed. R. Civ. P. 16</u>

Under the Federal Rules of Civil Procedure, a motion to amend a pleading is subject to different standards of review depending on when it is filed.  Under Rule 15(a)(2), leave to amend a pleading shall be granted "freely . . . when justice so requires."  However, when, as here, "a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order, Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015).[5]  "The rationale is that application of the 'good cause' standard preserves the integrity and effectiveness of Rule 16(b) scheduling orders."  *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004).

---

[4] While defendant in her initial memorandum sought leave to amend under Rule 15, in her reply she does not appear to contest that Rule 16 provides the appropriate standard for her motion.

[5] Federal Rule of Civil Procedure 16(b)(1) requires that the district court enter a scheduling order setting certain deadlines.  Rule 16(b)(3)(A) requires that the scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Rule 16(b)(4) provides that a schedule "may be modified only for good cause and with the judge's consent."

The First Circuit has noted that "Rule 16's 'good cause' standard 'focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.'" *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.,* 714 F.3d 62, 64 (1st Cir. 2013) (quoting *Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 3 (1st Cir. 2013)). "[A] district court enjoys significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008).

**B.    Analysis**

Without question, defendant did not act diligently in seeking to amend her answer to assert new counterclaims. Plaintiffs filed the complaint in this matter on January 29, 2021. Rather than raise the claims she had already asserted before the MCAD as counterclaims in this action, she elected instead to file them in a separate proceeding in state court on February 10, 2021. She also moved to stay the federal action, which was denied. She then waited till September 23, 2022—more than a year after her initial answer, ten months after the deadline for amended pleadings set by the scheduling order, and almost two months after the close of fact discovery—before seeking to amend to assert counterclaims.

"Where, as here, considerable time has elapsed between the filing of the [pleading] and the motion to amend, the movant has the burden of showing some 'valid reason for [her] neglect and delay.'" *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983) (quoting *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19-20 (1st Cir. 1979)). While the discovery of new information may qualify as such a reason, courts do not "look kindly upon a [party] who seeks belatedly to amend her [pleading] based on 'information that [she] had or should have had from the outset of the case.'" *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008)).

Fact discovery in this case concluded on July 31, 2022.  Defendant does not assert that discovery revealed any new facts providing the basis for the counterclaims she now asserts.  Nor could she, because the proposed counterclaims are essentially identical to her allegations and claims in the state court action, which she filed in February 2021.

Instead, defendant points to circumstances that "did not exist at the time she initially filed her Answer"—specifically, that she was informed a week before moving to amend that "the earliest possible trial date the parties could receive in the State Court Action would likely be in Fall 2023," as opposed to February 2023, as she had anticipated.  (Def. Reply at 2-3; Def. Mem. at 5).  An unexpected delay in the state-court schedule does not provide good cause for amending claims in federal court where defendant chose to file and maintain the separate state-court action. *See Trans-Spec Truck Serv.*, 524 F.3d at 327 (finding no good cause to amend eleven months after 16(b) deadline, where party waited to amend until after court denied its motion to dismiss, because party "must be bound by the consequences of its litigation strategy").

Nevertheless, it is beyond dispute that trying the state and federal claims together will promote "efficiency, judicial consistency and judicial economy."  (Def. Mem. at 5).  "Courts often consider efficiency and case management when deciding a motion to amend."  *Gouin v. Nolan Assocs., LLC*, 325 F.R.D. 521, 523 (D. Mass. 2017); *see also Abbott Lab'ys v. Inverness Med. Tech.*, 2002 WL 1906533, at *3 (D. Mass. Aug. 19, 2002) (granting leave to amend complaint where "[a]dding the claims to the present case will promote efficiency and judicial economy"); *Smith & Nephew, Inc. v. Surgical Sols., Inc.*, 353 F. Supp. 2d 135, 138 (D. Mass. 2004) ("Plaintiff's motion to amend will be allowed to prevent subsequent inefficiencies.").  The two cases present competing theories for defendant's termination and involve the same underlying set of facts, whether offered in support of an affirmative claim or a defense.

8

Furthermore, there is no likelihood that the parties would need to conduct additional factual discovery to respond to the counterclaims, because discovery was conducted on the same claims in state court and the parties have cross-designated that discovery.  Therefore, plaintiffs are not likely to be prejudiced by the addition of the counterclaims.

Defendant's lack of diligence would normally warrant summary dismissal of a motion to amend at this late stage.  But the court cannot ignore the gross inefficiency and waste of resources caused by having two lawsuits involving the same issues in two different courts—not to mention the possibility of inconsistent verdicts.  The Court therefore concludes, with considerable misgivings, that the lack of prejudice to plaintiffs, and the dramatically increased efficiency of combining the state and federal claims, establish good cause to amend under Rule 16(b).  Nonetheless, the Court will not permit the amendment here to go forward while the state case remains pending, as that would potentially provide defendant with the unfair advantage of being able to litigate the same claims twice.  Accordingly, a condition of allowing the amendment will be that defendant dismiss her state-court claims with prejudice.

## III.   **Supplemental Jurisdiction**

Even where a party has alleged good cause to amend, the court must determine whether to exercise supplemental jurisdiction over state-law counterclaims.  Plaintiffs allege that the counterclaims form a separate case or controversy than the federal fiduciary-duty claim.  Alternatively, they contend that the court should decline to exercise jurisdiction because the state-law claims predominate over the federal claim.

### A.   **Statutory Standard**

In a civil action where a district court has original jurisdiction, the court has supplemental jurisdiction over all related claims that form part of the "same case or controversy."  28 U.S.C. § 1367(a).  "Such supplemental jurisdiction shall include claims that involve the joinder or

intervention of additional parties." *Id.*  A court has supplemental jurisdiction where state and federal claims derive from "a common nucleus of operative fact," and when the claims are such that a party would "ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  The case-or-controversy standard is the jurisdictional limit for counterclaims, *Global NAPS, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (1st Cir. 2010), and a court may exercise supplemental jurisdiction over claims asserted by a defendant against a non-diverse third party, *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 73 (1st Cir. 2013).

A court may nevertheless decline to exercise supplemental jurisdiction over a claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).

### B.   Analysis

#### 1.   Case or Controversy

The court has exclusive jurisdiction over the Funds' lawsuit alleging breach of fiduciary duty under ERISA.  *Board of Trs. of IUOE Loc. 4 Pension Fund v. Alongi*, 2021 WL 3493714, at *3 (D. Mass. Aug. 9, 2021).  Defendant's proposed counterclaim for interference with rights is clearly part of the same case or controversy as the fiduciary-duty claim.  She alleges that plaintiffs interfered with her right to pursue relief under Massachusetts employment discrimination law by filing a meritless federal case for purposes of delay and harassment.  (Def. Mem. at 2; Proposed Amend. Ans. ¶ 92-98).  In an analogous case, a district court exercised supplemental jurisdiction over state-law counterclaims where the plaintiff alleged that they were brought in retaliation for the filing of the original lawsuit.  *Ayub v. Pico*, 293 F. Supp. 3d 215,

216-17 (D.D.C. 2018).[6]  The court based its decision on its expectation that defendants would "defend against the retaliation claims on the ground that they brought their counterclaims in good faith, and not to harass or intimidate Plaintiff for filing suit," a claim which "in turn, rest[ed] on the bona fides of their counterclaims."  *Id.* at 216.  Similarly, defendant here asserts that plaintiffs acted in bad faith in filing the claim for breach of fiduciary duty, and the success of the interference claim depends upon the merit of the fiduciary duty argument.[7]  Therefore, the claims are part of the same case or controversy.

Defendant's other state-law counterclaims are also intertwined with the fiduciary-duty claim.  She alleges that McLaughlin "regularly subjected [her] to highly inappropriate and sexually offensive remarks in the workplace" and that this behavior created a hostile work environment.  (Prop. Amend. Ans. ¶¶ 68-74).  She alleges that she was "instructed [] to keep her sexual harassment allegations to herself in exchange for keeping her job."  (*Id.* ¶ 80).  Furthermore, McLaughlin allegedly denied her reasonable accommodations for a chronic health condition.  (*Id.* ¶¶ 85-91).  Defendant asserts that the denial of her accommodation requests and her eventual termination constituted retaliation for reporting McLaughlin's harassment and for conducting an independent investigation against him.  (*Id.* ¶¶ 81-84).

Whether she can prevail on her retaliation claim therefore depends to a considerable extent on the strength of her harassment and discrimination claims, as well as the credibility of plaintiffs' competing theory for her termination, which is that she misused plan funds and failed

---

[6] Plaintiff originally sued under the Fair Labor Standards Act ("FLSA"), defendants counterclaimed, and plaintiff amended her complaint to add a retaliation claim under the FLSA.

[7] The Massachusetts Supreme Judicial Court has suggested that the filing of a lawsuit may constitute interference with rights under § 4(4A) under some circumstances.  *Sahli v. Bull HN Info. Sys., Inc.*, 437 Mass. 696, 704-05 (2002) (indicating that lawsuit brought in bad faith and without "a legitimate basis in law and fact" may violate § 4(4A)).

to carry out her responsibilities as Administrator.  Those federal and state claims are factually and legally intertwined and share a common nucleus of operative fact.  *Cf. Ott v. Chacha in Art LLC*, 2019 WL 10252743, at *3 (D. Colo. May 1, 2019) (finding common nucleus of fact where good-faith basis of defendant's counterclaims "will directly bear on the strength of Plaintiff's retaliation claim" and counterclaims presented alternative theory to plaintiff's original wage claims).

### 2.    <u>Predominance</u>

Even if the claims arise from the same case or controversy, plaintiffs assert that the court should decline to exercise supplemental jurisdiction because the state-law counterclaims substantially predominate over the federal-law claim.

"[A] district court may dismiss state claims 'if it appears that the state issues substantially predominate, whether in terms of proof of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'"  *Allstate*, 730 F.3d at 73 (quoting *Gibbs*, 383 U.S. at 726)) (finding state claim did not predominate over federal claim where they arose from the same contract dispute, relied upon the same body of evidence, and both sought contractual damages).

There is likely to be significant overlap in the witnesses and evidence involved in the state and federal claims.  And the legal issues underlying the claims for fiduciary duty, harassment, and discrimination are intertwined with the claims for retaliation and interference with rights.  Finally, the remedy sought by defendant does not differ substantially from that sought by plaintiffs.  Plaintiffs seek a monetary judgment, interest, attorney's fees, and costs while defendant seeks compensatory damages for emotional distress, punitive damages, fees, costs, and interest.  Under the circumstances, the state claims do not obviously predominate over the federal ones.

While "[supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right," joining the state and federal claims in a single proceeding would further the "considerations of judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726. Accordingly, the Court will exercise supplemental jurisdiction over the proposed counterclaims.

## IV.   <u>Addition of Counterclaim Defendant</u>

The final issue is whether defendant may add McLaughlin as an additional counterclaim defendant.

Federal Rule of Civil Procedure 13(h) states that the addition of a party to a counterclaim is governed by Rules 19 and 20. Rule 20 allows for persons to be joined as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction[ or] occurrence . . ." and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Misjoinder of parties is not a ground for dismissing an action," and "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

The retaliation, *quid pro quo* harassment, hostile work environment, and failure to accommodate claims alleged against both McLaughlin and the Funds arise out of the same transaction or occurrence. Liability under the counterclaims will likely involve a question of fact or law common to all counterclaim defendants, such as whether the Funds are vicariously liable for McLaughlin's actions. Accordingly, McLaughlin may properly be joined to the action as a counterclaim defendant.

## V.   <u>Conclusion</u>

For the foregoing reasons, defendant's motion to amend is GRANTED. However, in order to avoid further inefficiency and potential unfairness to plaintiffs, the granting of this motion shall be subject to the condition that defendant dismiss her claims in state court with

prejudice.  Failure to do so within 14 days of this order may result in the vacating of this order.

The requirement of dismissal shall not apply to any claims asserted by Rosemarie Alongi in the

state-court action.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: December 7, 2022