UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND; BOARD OF TRUSTEES OF THE IUOE LOCAL 4 ANNUITY & SAVINGS FUND; BOARD OF TRUSTEES OF THE IUOE LOCAL 4 HEALTH AND WELFARE FUND; BOARD OF TRUSTEES OF THE HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4; IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST; AND IUOE LOCAL 4 SOCIAL ACTION COMMITTEE,

    Plaintiffs,

v.

GINA ALONGI,

    Defendant and Counterclaim/Third-Party Plaintiff,

v.

IUOE LOCAL 4 PENSION FUND; IUOE LOCAL 4 ANNUITY & SAVINGS FUND, IUOE LOCAL 4 HEALTH AND WELFARE FUND; HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND; IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST; and WILLIAM D. MCLAUGHLIN, individually and in his capacity as Chairman of the Boards of Trustees,

    Counterclaim/Third-Party Defendants.

Civil Action No. 1:21-cv-10163-FDS

**OPPOSITION TO COUNTERCLAIM DEFENDANTS' RULE 702 MOTION TO EXCLUDE COUNTERCLAIM PLAINTIFF'S EXPERT WITNESS FROM TESTIFYING**

Counterclaim Plaintiff Gina Alongi ("Ms. Alongi") opposes Counterclaim Defendants IUOE Local 4 Pension Fund, IUOE Local 4 Annuity and Savings Fund, IUOE Local 4 Health and

Welfare Fund, Hoisting and Portable Engineers Local 4 Apprenticeship & Training Fund, IUOE Local 4 Labor-Management Co-Operation Trust (collectively the "Funds") and William D. McLaughlin's ("Mr. McLaughlin," and together with the Funds "Counterclaim Defendants") motion to exclude the testimony of Christopher Reece[1], Ms. Alongi's expert witness, pursuant to Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## BACKGROUND

### A. Mr. Reece's Experience.

Mr. Reece is a founder and managing director of Forensic Employment & Compensation Consultants, LLC, a consultancy specializing in providing litigation support and expert testimony to law and accounting firms across the country in connection with matters involving questions of, *inter alia*, employability and earnings capacity. *See* Christopher Reece's Resume, a copy of which is attached hereto as **Exhibit 1**, p. 2. Mr. Reece has more than 40 years of senior management experience in management consulting, executive search, and operations functions. *Id.*, p. 1. Prior to co-founding Forensic Employment & Compensation Consultants, he co-founded (i) a management consulting, compensation, and executive search firm called Group/HSA in 2002; and (ii) an executive search and consulting firm called Reece & Mruk Partners in 1991. *Id.*, pp. 1, 3.

Mr. Reece has conducted over 350 executive searches, organizational, executive and management assessments, with an emphasis on executive and general management level searches. Ex. 1, p. 1. Over the course of his career, Mr. Reece has placed approximately 350-400 executives

---

[1] As set forth in Footnote 1 to Counterclaim Defendants' Motion (Mot., p. 3), undersigned counsel has stipulated that Richard Sbarbaro of Forensic Employment & Compensation Consultants, LLC, will not be called to testify at the trial in this action. Despite this, Counterclaim Defendants' Motion seeks to "exclude the testimony of Richard Sbarbaro and Christopher Reece…" (Mot., p. 2). Based on the foregoing stipulation, Ms. Alongi's Opposition to Counterclaim Defendants' Motion pertains only to Christopher Reece's prospective trial testimony.

in various roles. *See* Deposition of Christopher Reece, excerpts of which are attached hereto as **Exhibit 2**, 28:19-22. The organizations Mr. Reece has worked with range in size from entrepreneurial start-ups to billion-dollar corporations, in numerous industries including telecommunications, software, financial services, business services, and real estate. Ex. 1, p. 1. He did not focus his career on any particular industry or industries and considers himself a "generalist." Ex. 2, 28:23-29:2. Mr. Reece earned his B.A. from the University of Pennsylvania and is a member of WorldatWork (formerly known as the American Compensation Association), and the American Board of Vocational Experts. *Id.*, pp. 2, 4.

### B. Employability Opinion.

At trial, and as summarized in his report, Mr. Reece will provide the jury with his expert opinion, based on 40 years of management consulting experience, as to how employers and executive search firms screen candidates and the effect of Ms. Alongi's termination on her employability. Mot., Ex. A, pp. 8-11; Mot., Ex. B, 38:13-17. Mr. Reece will explain the steps he took to arrive at his opinion, including (i) his analysis of Ms. Alongi's resume and LinkedIn profile, the Fund Administrator job description, Ms. Alongi's termination letter, and a news article regarding such termination; (ii) his interview of Ms. Alongi; and (iii) research he performed to confirm his understanding of how employers screen candidates. Mot., Ex. A, pp. 4, 8.

Based on his analysis, and in light of his 40 years of experience, Mr. Reece will opine that:

> The manner in which Ms. Alongi's termination was conducted, along with statements made at the IUOE Member Meeting and the publication of her alleged malfeasance, has made it impossible for her to find gainful employment as an executive. In essence, her executive career ended on July 21, 2020, with her termination. No organization or executive search firm would consider a candidate accused of significant financial malfeasance. Employers have a fiduciary responsibility to ensure that new hires have acceptable background, references and internet/social media results. Ms. Alongi's results would certainly raise a "red flag" during her screening process and, therefore, not be considered as acceptable to an organization or executive search firm, especially when other prospective candidates

have no "red flags."

Mot., Ex. A, pp. 10-11.

### C. Compensation Damages Opinion.

Mr. Reece will also provide the jury with his expert opinion regarding (i) Ms. Alongi's projected compensation through retirement had she worked until she planned to retire, and through age 87; (ii) Ms. Alongi's projected income from her termination through age 87; and (iii) the difference between the compensation Ms. Alongi would have received had she retired when planned versus what she is projected to receive as a result of her termination in July 2020. Mot. Ex. A, pp. 11-13. Mr. Reece will explain the steps he took to arrive at his conclusions, including (i) analysis of the IUOE Local 4 Benefits Summary: Pension Plan, Ms. Alongi's IUOE Local 4 Monthly Pension Distribution Form, Ms. Alongi's General Pension Election of Form Payment, Ms. Alongi's W2s and Earnings Summaries, and Ms. Alongi's tax returns; (ii) an interview of Ms. Alongi; and (iii) calculation of financial projections utilizing information from the Social Security Life Expectancy Calculator. Mot., Ex. A, pp. 4, 11.

Based on his analysis, Mr. Reece will opine that "Ms. Alongi will be deprived of $2,224,928 in total income with a Present Value of $1,778,768 when comparing Ms. Alongi's total compensation/income had she retired from the IUOE until age 87 against the scenario where she is terminated at age 60 and therefore receives reduced income from the Local 4 pension, the General pension and Social Security." Mot., Ex. A, p. 14.

## ARGUMENT

An expert's opinion is admissible if "the proponent demonstrates to the court that it is more likely than not that: (a) the expert's…specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Under Rule 702, district courts are required "to act as gatekeepers, ensuring that an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012), quoting *Daubert*, 509 U.S. at 597.

However, "'the trial court's role as gatekeeper [under *Daubert* and Rule 702] is not intended to serve as a replacement for the adversary system.'" Fed. R. Evid. 702, 2000 Amendments Advisory Committee Notes, quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). "[T]he rejection of expert testimony is the exception rather than the rule." *Id*. As the Supreme Court held in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

### A. Counterclaim Defendants' Critiques of Mr. Reece's Methodology Amount to Fodder for Cross-Examination.

Counterclaim Defendants do not assert that Mr. Reece failed to employ *any* methodology in arriving at his conclusions, rather, they challenge Mr. Reece's conclusions because they *disagree* with the methodology he utilized. To this end, with respect to Mr. Reece's employability determination, Counterclaim Defendants assert that Mr. Reece's methodology cannot "be tested or peer reviewed because it is entirely subjective;" that "Mr. Reece did not undertake to speak to anyone in the ERISA field about Ms. Alongi's potential employment;" and that "Mr. Reece did not undertake to evaluate Ms. Alongi's relevant skills, or research in earnest available positions for someone with Ms. Alongi's skills." Mot., p. 10. Further, with respect to Mr. Reece's compensation damages determination, Counterclaim Defendants critique the assumption that Ms.

Alongi "would continue to work over ten months after her sixty fifth birthday until the end of 2025" and Mr. Reece's approach to developing the figures set forth in this portion of Mr. Reece's opinion. (Mot., pp. 12-13).  Counterclaim Defendants' complaints go to the weight of Mr. Reece's prospective testimony, rather than to its admissibility.

In *Riani v. Louisville Ladder, Inc.*, No. 4:07-cv-40258 (FDS), 2010 WL 2802040, at *7 (D. Mass. July 14, 2010), the defendants argued that the plaintiff's expert's methods were "simply too crude and too disconnected from the facts to be admissible.  Among other things, the methodology assumes that [plaintiff] would work continuously, without interruption, at a union wage for the rest of his career, without a single week of unemployment or lost pay.  It also assumes that he would continue to work well past normal retirement age."  The court found that "[t]hose assumptions may well be unrealistic or even foolish.  Nonetheless, those criticisms go to the weight to be given the testimony, not its admissibility.  ***Defendants will have an opportunity to cross-examine [plaintiff's expert] and attack his assumptions and his methodology***."  (Emphasis added).  *See also Netherlands Ins. Co. v. HP, Inc.*, 646 F. Supp. 3d 139, 145 (D. Mass. 2022) ("Moreover, as *Daubert* is careful to underscore, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'")

Furthermore, as set forth in *Doe v. Trustees of Dartmouth Coll.*, 699 F. Supp. 3d 171, 176 (D.N.H. 2023), "notwithstanding the deep dive that courts often take to adequately assess the reliability of expert methodology, they must stop short of weighing the evidence, evaluating credibility, or unnecessarily picking sides.  So long as an expert's...testimony rests upon good grounds, based on what is known, it should be tested by the adversarial process..." (Internal quotation marks and citations omitted).  The court went on to find that Dartmouth's arguments

went "not so much to the reliability of [plaintiff's expert's] methodology, but to the factual inputs she did or did [not] include in conducting her analysis. Dartmouth's contentions—that [the expert] should have considered other potential jobs [plaintiff] could obtain if he did not complete his medical degree, or the possibilities of promotion, stock options, or bonuses at his current employer—is fodder for cross-examination, not for exclusion of [the expert's] testimony." *Doe v. Trustees of Dartmouth Coll.*, 699 F. Supp. at 178. *See also United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *Murphy v. Gallery Model Homes, Inc.*, No. CIV A H-04-0621, 2005 WL 5396166, at *2 (S.D. Tex. Feb. 18, 2005) ("Defendant argues that…[plaintiffs' expert] assumed certain benefits rather than identifying Plaintiffs' actual benefits…the Court finds that each of the complaints goes to the weight to be given to [plaintiffs' expert's] testimony by the jury, rather than the admissibility of his testimony."); *Fuentes v. MB Ry. Servs., LLC*, No. 8:20CV190, 2021 WL 4805174, at *4 (D. Neb. Oct. 14, 2021) ("With respect to the defendants' more-specific in limine challenges, such as their objections to…[plaintiff's expert's] assumptions about [plaintiff's] living expenses in Nebraska, the Court finds those objections go more to the weight and credibility of the challenged testimony rather than to its admissibility.") Similarly, here, Counterclaim Defendants' critiques of Mr. Reece's methodology, including assertions regarding what he could or should have done or assumed, are fodder for cross-examination during trial rather than grounds for precluding his testimony altogether.

Further, Counterclaim Defendants argue that Mr. Reece's opinions related to Ms. Alongi's projected compensation are unreliable "primarily because they are based on assumptions incapable

of validation," but offer no argument as to how this is the case. Mot., p. 12. Counterclaim Defendants cite *Saia v. Sears Roebuck and Co., Inc.*, 47 F. Supp. 2d 141, 146 (D. Mass. 1999) in support of this argument despite its clear inapplicability here.[2] Mot., p. 12. In *Saia*, the court discussed certain assumptions that were incapable of validation, including "an assumption that people consider and accurately evaluate the risks they face when making purchases or choosing employment, an assumption that people have freedom to choose whether to work in a high risk or low risk job, and the assumption that risk calculation governs decision making." 47 F. Supp. 2d at 146. In contrast, here, the assumptions that Counterclaim Defendants take issue with are, for the most part, costs that are inherently capable of validation. Counterclaim Defendants simply disagree with the way Mr. Reece arrived at his assumptions, which, as set forth above, constitutes fodder for cross-examination.

### B. Counterclaim Defendants' Critiques of Mr. Reece's Experience Amount to Fodder for Cross-Examination.

Counterclaim Defendants assert that Mr. Reece's opinion somehow "falls far short of the intellectual rigor required of an expert in his field" apparently because Mr. Reece's hiring experience is too "niche." To this end, Counterclaim Defendants assert, *inter alia*, that "Mr. Reece has no experience hiring for ERISA funds;" that Mr. Reece "has no idea how seventy percent (70%) of employers hire candidates;" and that "in Mr. Reece's experience, he begins with between 100 and 200 resumes for potential candidates, and 'there are always people available for jobs.'" Mot., p. 11. Similar to Counterclaim Defendants' critiques of Mr. Reece's methodology,

---

[2] Notably, *Saia* does not stand for the proposition that experts are prohibited from relying upon assumptions that are incapable of validation. Rather, the court in *Saia* discussed the fact that the U.S. District Court for the Western District of Michigan reasoned that the plaintiffs' expert's method of calculating hedonic damages included certain assumptions that could not be validated and was a "troubled science in the courtroom, with the vast majority of published opinions rejecting the evidence." 47 F. Supp. 2d at 146 (internal quotation marks and citations omitted).

Counterclaim Defendants' critiques of Mr. Reece's experience constitute fodder for cross-examination.

In *Doe v. Trustees of Dartmouth Coll.*, 699 F. Supp. 3d at 178, Dartmouth argued that the plaintiff's expert lacked the requisite knowledge to opine as to plaintiff's lost wages and lost earning capacity because her specialization was in business valuation. The court rejected this argument, finding, "[t]hat [plaintiff's expert] has never before conducted a lost wages or lost earning capacity analysis for someone in [plaintiff]'s precise position does not mean she lacks the requisite knowledge to do so." In so ruling, the court cited, *inter alia*, 29 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 6264.2 (2d ed.) (noting that most courts conclude that general knowledge in a particular subject area is sufficient to qualify a witness as an expert even if they are not a specialist in a specific portion of the relevant subject area). *See also*, *e.g.*, *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 WL 4673554, at *4 (S.D.N.Y. Sept. 24, 2019) ("[Defendant's] objections to [plaintiff's expert's] experience go to the weight of his testimony, not its admissibility.")

Here, Counterclaim Defendants do not argue that Mr. Reece lacks general knowledge in a particular subject area, specifically that of being involved in hundreds of hiring decisions over the course of a 40+ year career. Rather, Counterclaim Defendants assert that Mr. Reece's experience is too niche (or rather, not sufficiently niche) so as to allow him to render an expert opinion in this particular case. As illustrated above, Counterclaim Defendants' position is far too narrow, amounts to nothing more than fodder for cross-examination, and should be rejected in connection with the instant motion to exclude expert testimony.

Further, Counterclaim Defendants' arguments that (i) Mr. Reece's employability determination "is based solely on his own subjective belief, which is insufficient to establish

reliable expert testimony," and (ii) "[i]f Mr. Reece's personal opinion were considered methodologically reliable testimony, anyone who had made a hiring decision could present evidence to a jury that an individual was unemployable," are without basis. Mot., pp. 10-11. As Counterclaim Defendants acknowledge in their Motion, experts may testify on the basis of their experience to the extent that the expert "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Zolot*, 968 F. Supp. 2d 411, 430 (D. Mass. 2013); Mot., p. 9.

As set forth above, Mr. Reece has more than 40 years of senior management experience in management consulting and executive search functions. Ex. 1, p. 1. He has placed approximately 350-400 executives in various roles and has not focused his career on any particular industry – he considers himself a "generalist." Ex. 2, 28:19-29:2. At trial, Mr. Reece will provide the jury with his expert opinion, based on his decades of experience, as to how employers and executive search firms screen candidates and the effect of Ms. Alongi's termination on her employability. Mot., Ex. A, pp. 8-11; Mot., Ex. B, 38:13-17. He will also explain the steps he took to arrive at his opinion, including (i) his analysis of Ms. Alongi's resume and LinkedIn profile, the Fund Administrator job description, Ms. Alongi's termination letter, and a news article regarding such termination; (ii) his interview of Ms. Alongi; and (iii) research he performed to confirm his understanding of how employers screen candidates. Mot., Ex. A, pp. 4, 8. Accordingly, Mr. Reece's employability determination certainly constitutes more than just his "say so."

### C. Mr. Reece's Testimony Will Assist the Jury.

Counterclaim Defendants cite one case—*Earley Info. Science, Inc. v. Omega Engineering, Inc.*, 575 F. Supp. 3d 242, 245 (D. Mass. 2021)—in support of their argument that Mr. Reece's

testimony regarding Ms. Alongi's employability should be excluded because it will not assist the jury. Mot., p. 12. *Earley Info. Science, Inc.* provides that, "[i]n evaluating whether expert testimony will be helpful to the trier of fact, the court must determine whether it is relevant, 'not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.'" 575 F. Supp. 3d at 245, quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998). However, the court's decision in *Earley Info. Science, Inc.* did not specifically examine whether the subject expert's prospective testimony would be "helpful" to the jury in the manner advanced by Counterclaim Defendants, and as such, provides no support for Counterclaim Defendants' assertion that Mr. Reece's testimony would not be helpful here.

In essence, Counterclaim Defendants claim that Mr. Reece's prospective testimony regarding employability is common sense, and as such, is unnecessary. *See* Mot., p. 12. As an initial matter, this position undercuts Counterclaim Defendants' assertion that this prospective testimony is somehow not reliable. *See* Mot., p. 10. Notwithstanding the foregoing, vocational/employability experts are frequently permitted to testify during trial regarding an individual's employability or lack thereof. *See*, *e.g.*, *Bohmbach v. Shivers*, No. 1:22-cv-10318 (JEK), 2024 WL 4505215, at *4, *6 (D. Mass. Oct. 16, 2024); *Joffe*, 2019 WL 4673554, at *4-*5. Moreover, Mr. Reece's prospective testimony regarding compensation damages involves explanation of complex calculations relating to, *inter alia*, the present value of projected income. Accordingly, Mr. Reece's prospective testimony will be helpful to the jury.

## CONCLUSION

For the reasons set forth above, this Court should deny Counterclaim Defendants' motion in its entirety.

Respectfully submitted,
GINA ALONGI

By her attorneys,

/s/ *Ashley M. Barnes*
Timothy P. Van Dyck (BBO #548347)
Robert G. Young (BBO #650541)
Ashley M. Barnes (BBO #706121)
BOWDITCH & DEWEY, LLP
200 Crossing Boulevard
Framingham, MA 01702
Telephone: 617.757.6537
Facsimile: 508.929.3137
tvandyck@bowditch.com
ryoung@bowditch.com
abarnes@bowditch.com

November 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Ashley M. Barnes*
Ashley M. Barnes
