UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND, BOARD OF TRUSTEES OF THE IUOE LOCAL 4 ANNUITY & SAVINGS FUND, BOARD OF TRUSTEES OF THE IUOE LOCAL 4 HEALTH AND WELFARE FUND, BOARD OF TRUSTEES OF THE HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4, IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST, AND IUOE LOCAL 4 SOCIAL ACTION COMMITTEE
Plaintiffs,

v.

GINA ALONGI,
Defendant/Plaintiff-in Counterclaim

v.

IUOE LOCAL 4 PENSION FUND, IUOE LOCAL 4 ANNUITY & SAVINGS FUND, IUOE LOCAL 4 HEALTH AND WELFARE FUND, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST, WILLIAM D. MCLAUGHLIN, individually and in his capacity as Chairman of the Boards of Trustees,
Defendants-in-Counterclaim,

Civil Action No. 1:21-cv-10163-FDS

**PLAINTIFFS/DEFENDANTS-IN-COUNTERCLAIMS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED COMMENTS OR ACTIONS OCCURING OUTSIDE GINA ALONGI'S PRESENCE OF WHICH SHE WAS NOT AWARE DURING HER EMPLOYMENT**

Plaintiffs/Defendants-in-Counterclaim IUOE Local 4 Health & Welfare Fund, IUOE Local 4 Pension Fund, IUOE Local 4 Annuity & Savings Fund, Hoisting and Portable Engineers Local

4 Apprenticeship & Training Fund, Joint Labor-Management Cooperation Trust, and William McLaughlin (individually, "Mr. McLaughlin") (collectively, "Defendants-in-Counterclaim")[1] move the Court *in limine* for an order instructing Ginamarie Alongi ("Gina Alongi") and her counsel not to refer to, interrogate witnesses concerning, attempt to offer into evidence, or convey to the jury in any manner, either directly or indirectly, evidence of comments or actions allegedly made by Mr. McLaughlin that Gina Alongi did not witness and about which Gina Alongi was not aware during her employment with the Funds as they cannot support Gina Alongi's hostile work environment claim and are therefore irrelevant and likely to confuse the jury.

In support of their Motion, the Funds provide the following:

**BRIEF FACTUAL BACKGROUND**

Gina Alongi began working as a fulltime employee for the Funds in 1980 and was ultimately promoted to the position of Administrator, serving in that position from 1996 through July 21, 2020. As Administrator, Gina Alongi had oversight over all Fund employees.

While serving as Administrator, Gina Alongi had an intimate relationship with IUOE Local 4 Business Manager, Louis Rasetta ("Mr. Rasetta"), who was also Mr. McLaughlin's immediate predecessor. There is ample evidence that Gina Alongi's relationship with Mr. Rasetta benefitted her in numerous ways over many years. Those benefits included, among other things, the setting of her compensation, receipt of additional vacation time, abbreviated working hours, and involvement in unnecessary Union activities.

In August 2017, Mr. McLaughlin succeeded Mr. Rasetta. Mr. McLaughlin never had an intimate relationship with Gina Alongi and did not condone the excesses granted by Mr. Rasetta.

[1] William McLaughlin is a Defendant-in-Counterclaim, only.

Gina Alongi was displeased with the change and, on May 1, 2018, called for a meeting with Mr. McLaughlin for the purpose of telling him how the office would be run. The interaction ultimately became heated.

After May 1, 2018, Gina Alongi questioned whether Mr. McLaughlin's behavior and comments on that day constituted sexual harassment. In the following weeks, Gina Alongi consulted an attorney and waffled about whether the behavior rose to the level of sexual harassment or was treatment as "one of the guys." By May 16, 2018, she decided she was going to pursue a sexual harassment complaint. To that end, she decided to approach certain female Fund employees, including Rose Alongi, Jennifer Dow ("Ms. Dow"), Jennifer Vachon ("Ms. Vachon"), and Taylor Ryan ("Ms. Ryan"). She asked then Assistant Funds Administrator, Greg Geiman, to interview Rosemary Ortega ("Ms. Ortega"). The interviews had a singular question: "Tell me the ways Mr. McLaughlin makes you uncomfortable." Until May 2018, she had never asked any of the employees – employees she supervised – such a question. Gina Alongi and Mr. Geiman took notes and Ms. Ortega and Ms. Ryan supplemented with their own responses. The information each interviewee provided was specific to her own experience. After Gina Alongi complained on May 21, 2018 of sexual harassment, she did not follow-up with any of the women regarding her discussions. Prior to and after the May 2018 questioning, not one of the employees complained to Gina Alongi about Mr. McLaughlin's alleged inappropriate behavior. Moreover, Gina Alongi and Mr. McLaughlin's professional relationship continued thereafter essentially without incident.

In July 2020, more than two (2) years after Gina Alongi's complaint, the Funds' Board of Trustees unanimously voted to terminate Gina Alongi's employment after they discovered she had failed to keep mandatory Department of Labor time sheets, failed to accurately allocate her time

across the Funds, utilized the Funds' resources, including employee time, to perform work for another organization in which she held a paid position, disclosed confidential information, and made material misrepresentations to the Board and Fund counsel. Rose Alongi was terminated on August 5, 2020, by the newly appointed Administrator because she failed to properly protect the Funds' IT infrastructure, leading to a crippling ransomware attack.

**RELEVANT PROCEDURAL BACKGROUND**

The Funds filed the instant action against Gina Alongi for breach of fiduciary duty in violation of the Employment Retirement Income Security Act of 1974. Thereafter, Rose and Gina Alongi filed a Complaint in Norfolk Superior Court alleging hostile work environment and retaliation (third-party retaliation as to Rose Alongi). Gina Alongi also asserted claims of quid pro quo sexual harassment, failure to accommodate, and interference with rights. Prior to the Court's allowance of Gina Alongi's motion to amend her answer to dismiss her state court claims to pursue them in this case, the parties conducted joint discovery in both matters. Each of the women Gina Alongi questioned in May 2018 were deposed during discovery. They also testified in Rose Alongi's October 2024 Norfolk Superior Court trial that resulted in a defense verdict for Mr. McLaughlin and the Funds.

In the Norfolk Superior Court matter, the Funds successfully moved *in limine* to preclude evidence and argument of experiences of other women in the Funds office about which Rose Alongi was unaware as deposition testimony had established that the employees had limited discussions with Rose and Gina Alongi.[2] Despite the clear pre-trial ruling, counsel elicited

[2] The motion was denied only as to statements/actions of which Rose Alongi was *aware* during her employment with the Funds. The trial judge agreed evidence or argument about the experiences of other women about which Rose Alongi was *unaware* was to be precluded. Counsel was permitted to present evidence of what was reported to Gina Alongi in May 2018 as Rose Alongi's theory was that the Funds terminated her to retaliate against Gina for making the May 2018 report, which included certain information Gina Alongi received from the questioning of certain other female employees.

testimony using leading questions that contained alleged comments that were not known to nor reported to Rose or Gina Alongi. The testimony was stricken, but, of course, the bell could not be unrung. Compounding matters, counsel referenced the stricken comments in closing. In light of the foregoing, the undersigned is wary of such tactics and makes this motion *in limine* to ensure the only evidence that the jury hears is relevant to Gina Alongi's hostile work environment – not the alleged experiences of others about which she had no knowledge.

## LAW

### I. Motion *in Limine* Legal Standard.

The Court "may exclude evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. § 403. Evidence that has an undue tendency to prompt a decision founded on an improper basis by the factfinder should be excluded. *See U.S. v. Benedetti*, 433 F.3d 111, 118 (1st Cir. 2005), citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also Neece v. city of Chicopee*, 106 F.4th 83, 96 (1st Cir. 2024) (district court permitted to exclude relevant evidence if probative value substantially outweighed by various factors).

### II. Evidence of Alleged Incidents About Which Gina Alongi Was Not Aware Have No Probative Value As To Whether Gina Alongi was Subjected to a Hostile Work Environment.

To establish her individual claim for hostile work environment based on harassment, Gina must demonstrate: (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the sexual harassment was based on sex; (4) the harassment was severe or pervasive enough to create an abusive work environment; (5) the sexually objectionable conduct was both objectively and subjectively offensive, and (6) that some basis for employer liability has been established. *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002); *College-Town,*

*Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 162 (1987). A hostile work environment is one "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, pos[ing] a formidable barrier to the full participation of an individual in the workplace." *Downey v. Johnson*, 104 Mass. App. Ct. 361 (2024) (citing *College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162(1987)).

Any alleged harassment directed at individuals that Gina Alongi herself did not experience, witness, or that she was not told about during her employment, is not probative of the issues in this case; namely, whether Gina Alongi ***herself*** was subjected to a hostile work environment. To the extent that Gina Alongi seeks prove her hostile work environment claim based on alleged behavior that she did not ***personally experience*** and, indeed, that she did not know occurred, she cannot do so. Gina Alongi must have had knowledge of the alleged incidents during her employment for her to rely upon them in establishing her hostile work environment claim. *See Green-LaRoche v. Bos. Univ. Neurology Assocs., Inc.*, No. 1784CV02040, 2019 WL 5100407, at *5 (Mass. Super. Sept. 18, 2019) (holding that acts plaintiff was unaware of could not have contributed to a hostile work environment); *see also Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 171 (10th Cir. 1996) (plaintiff may only rely on evidence relating to harassment of which she was aware during the time she was allegedly subject to a hostile work environment); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 978 (7th Cir. 1996) (noting that plaintiff was unaware of her supervisor's specific incidents of harassment against her coworkers at the time, and thus could not complain that such incidents altered her conditions of employment). As such, Rose Alongi, Ms. Dow, Ms. Vachon, Ms. Ortega, and Ms. Ryan should not be permitted to testify concerning alleged inappropriate comments that were not personally witnessed by Gina Alongi nor directly discussed with her.

## ARGUMENT

**I. Prior Deposition And Trial Testimony By Former Funds Employee-Witnesses Establishes That No Witness Told Gina Alongi About Mr. McLaughlin's Alleged Inappropriate Behavior After May 2018.**

Ms. Vachon, Ms. Ryan, Ms. Ortega, Ms. Dow, and Rose Alongi have been deposed in this matter and testified at Rose Alongi's state court trial against the Funds and Mr. McLaughlin in October 2024. Each of the non-Alongi witnesses testified that prior to May 2018, they did not complain to Gina Alongi that Mr. McLaughlin made offensive comments of a sexual nature, nor did they discuss the issue of sexual harassment with Gina Alongi. Each also testified at deposition and trial that after May 2018, they never told Gina Alongi that Mr. McLaughlin engaged in inappropriate behavior towards them. Thus, the only comments or behavior that were brought to Gina Alongi's attention occurred in response to her questions (or Mr. Geiman's at her direction) to tell her all the ways Mr. McLaughlin made them uncomfortable. Moreover, Ms. Ryan and Ms. Ortega testified that after May 2018, the behavior they had described to Gina Alongi in response to her questioning ceased entirely after May 2018.

**a. Jennifer Vachon.**

Ms. Vachon testified that May 2018 was the first time that she and Gina Alongi discussed whether Ms. Vachon felt uncomfortable around Mr. McLaughlin. **Exhibit 1**, J. Vachon Deposition Transcript, p. 55: 5-23. Ms. Vachon also testified that she did not have any further conversations with Gina Alongi about Mr. McLaughlin's inappropriate behavior after Gina Alongi approached her for such information in May 2018. Ms. Vachon testified to the following at her deposition:

Q: So all you remember telling Gina, then, is about the massages?
A: From what I recall, yes.
Q: And when was the—did Gina do any follow-up after the conversation with you?
A: No, she didn't.
Q: All right. So just to be very clear, she asked you the one question about whether you ever felt uncomfortable with Billy, and you gave her the one

example of the massages, and then that was the end of that—the discussion with Gina that day?
A: From what I recall.
Q: Okay. And then did you ever thereafter have any discussions with Gina about comments by Bill or ways in which he made you feel uncomfortable?
A: No. I don't believe she ever asked me again.
Q: And did you volunteer any further information to Gina?
A: No.

**Exhibit 1**, J. Vachon Deposition Transcript, p. 61: 12 – 62: 9. Based on Ms. Vachon's prior testimony, there is no reasonable likelihood that counsel could elicit testimony from Ms. Vachon concerning her experiences with Mr. McLaughlin after May 2018 that would be relevant to Gina Alongi's hostile work environment claim.

**b. Jennifer Dow.**

Jennifer Dow testified at her deposition that she did not report any alleged comments that Mr. McLaughlin made to her during her employment to Gina Alongi. *See* **Exhibit 2**, J. Dow Deposition Transcript, p. 70: 21-23, p. 158: 2-4. Ms. Dow has consistently testified both at her deposition and at trial that when Gina Alongi approached her in May 2018 and asked if Mr. McLaughlin had been inappropriate towards her, Ms. Dow told her, "not really" and did not provide further details. *See* **Exhibit 2**, J. Dow Deposition Transcript, p. 63: 17 - 64: 12; *see also* **Exhibit 3**, J. Dow Trial Transcript, p. 11: 6 – 12: 2. Ms. Dow also testified that after their conversation in May 2018, she and Gina Alongi never discussed the issue of Mr. McLaughlin's behavior again during her employment. *See* **Exhibit 2**, J. Dow Deposition Transcript, p. 66: 14-21. Ms. Dow further testified at trial that she never told Gina Alongi about her own alleged inappropriate encounters with Mr. McLaughlin:

Q: Did Mr. McLaughlin say things to you that you thought were inappropriate?
A: Yes.
Q: Did you convey these things to … Gina Alongi?
A: No.
Q: Did you have any conversations with Gina Alongi about any of these topics?

A: No.

**Exhibit 3**, J. Dow Trial Transcript, p. 10: 3 – 11: 5. Based on Ms. Dow's prior testimony, there is no reasonable likelihood that counsel could elicit testimony from Ms. Dow concerning her experiences with Mr. McLaughlin at ***any time*** during her employment that would be relevant to Gina Alongi's hostile work environment claim.

**c. Taylor Ryan.**

At trial, Taylor Ryan confirmed that prior to the May 1, 2018 incident, she had never reported to Gina Alongi that she felt Mr. McLaughlin had been inappropriate. *See* **Exhibit 4**, T. Ryan Trial Transcript, p. 56: 6-14. Ms. Ryan has also conclusively testified that after May 2018, she did not complain to Gina Alongi concerning any alleged inappropriate behavior by Mr. McLaughlin. At trial, Ms. Ryan testified to the following:

Q: And after the May 1st—after you've wrote that statement in response to her request to you, you didn't go back to Gina Alongi and make any complaints about Bill McLaughlin and the things he said to you, right?
A: I don't think so. Certainly, no complaints, no.
Q: All right. You didn't go back and say he said something else inappropriate to you after May 1st of 2018, right?
A: I don't remember doing that. And I don't think—I don't think he did do anything inappropriate after that incident.

**Exhibit 4**, T. Ryan Trial Transcript, p. 56: 15 – 57: 9. Indeed, Ms. Ryan testified at her deposition that she could not recall a single other instance of inappropriate comments or behavior by Mr. McLaughlin after May of 2018. **Exhibit 5**, T. Ryan Deposition Transcript, p. 58: 11 -59: 7. Based on Ms. Ryan's prior testimony, there is no reasonable likelihood that counsel could elicit testimony from Ms. Ryan concerning her experiences with Mr. McLaughlin after May 2018 that would be relevant to Gina Alongi's hostile work environment claim.

**d. Rosemary Ortega.**

At trial, Rosemary Ortega confirmed that prior to May 2018, she and Gina Alongi had never discussed the topic of Mr. McLaughlin's alleged inappropriate comments. **Exhibit 6**, R. Ortega Trial Transcript, p. 45: 10-21. Ms. Ortega also testified at her deposition that she did not hear Mr. McLaughlin make any inappropriate comments after May 2018. *See* **Exhibit 7**, R. Ortega Deposition Transcript, p. 101: 4-19. At trial, Ms. Ortega reiterated that no inappropriate comments were made after May 2018 and that Gina Alongi did not follow up with her on the issue after May 2018. Ms. Ortega testified:

> Q: And after Ginia asked you for that statement that you wrote for her, did she ever come back and follow up with you on it? Did she ever ask—ask you if anything else had happened?
> A: No.
> Q: And you never heard him after May 1, 2018 make any other comments that you believe to be inappropriate?
> A: That is correct.

**Exhibit 6**, R. Ortega Trial Transcript, p. 48: 9 – 49: 1. Based on Ms. Ortega's prior testimony, there is no reasonable likelihood that counsel could elicit testimony from Ms. Ortega concerning her experiences with Mr. McLaughlin after May 2018 that would be relevant to Gina Alongi's hostile work environment claim.

**e. Rose Alongi.**

At trial, Rose Alongi provided the following testimony concerning her discussions with Gina Alongi about Mr. McLaughlin's inappropriate behavior after May 2018:

> Q: And after that discussion that you had with Gina in May 2018, you never went back to Gina and made another complaint [about] Mr. McLaughlin, right?
> A: That's correct.
> Q: And your sister didn't come back to you and follow up with you about issues related to sexual harassment complaints against Mr. McLaughlin, fair to say?
> A: That's correct.

Q: Ok. So she interviewed you shortly after that May 1st blow up. You told her everything you knew at that point. And that was the end of it, right?
A: Correct.
Q: And just to be clear, that's May 2018, and you were terminated in August 2020, right?
A: Correct.
Q: And you never, again just to be clear, made any kind of a formal complaint to anybody else during that period about Mr. McLaughlin or sexual harassment, fair to say?
A: Could you repeat the time period?
Q: Sure. Form May 2018 all the way up through August of 2020?
A: That's correct.

**Exhibit 8**, R. Alongi Trial Transcript, p. 95: 19 – 97: 8. Based on Rose Alongi's prior testimony, there is no reasonable likelihood that counsel could elicit testimony from Rose Alongi concerning her experiences with Mr. McLaughlin after May 2018 that would be relevant to Gina Alongi's hostile work environment claim.

## II. Inappropriate Elicitation Of Inadmissible Testimony And Related Arguments During Rose Alongi's Norfolk Superior Court Trial Must Be Prevented During this Trial.

As noted above, it was well-established prior to Rose Alongi's state court trial that Ms. Vachon, Ms. Dow, Ms. Ryan and Ms. Ortega never told Gina Alongi or Rose Alongi about their alleged inappropriate interactions with Mr. McLaughlin or that any such interactions ceased after May 2018. Despite the guard-rails provided by the trial judge's ruling on the Fund's motion *in limine*, through leading questions, Plaintiff's counsel elicited testimony from several witnesses that should not have been uttered in front of the jury as they were highly prejudicial and not competent to establish Rose Alongi's hostile work environment claim.

For example, when Ms. Dow was on the witness stand, counsel quickly established to the jury what was already known to the parties based on Ms. Dow's deposition testimony—Ms. Dow ***never*** told Gina Alongi about her own alleged inappropriate encounters with Mr. McLaughlin during her employment tenure. Despite Ms. Dow's clear testimony that she did not discuss Mr.

McLaughlin's alleged inappropriate behavior towards her with Gina Alongi, counsel proceeded to ask Ms. Dow a series of questions that elicited testimony about alleged interactions with Mr. McLaughlin that she considered to be inappropriate. *See* **Exhibit 3**, J. Dow Trial Transcript, p. 12: 3 – 17: 18. Ms. Dow testified at trial that Mr. McLaughlin asked her if she wore a one piece or two-piece bathing suit, that she observed him rubbing another employee's shoulders, that he told her Gina Alongi was a "selfish fucking bitch," and that he told her that her husband checked other women out at worksites. *See id.* All of this testimony was elicited through leading questions by counsel. An objection to the line of questioning was lodged, and Ms. Dow's testimony was stricken. *See id.*

Similarly, when Ms. Vachon was on the witness stand, the jury was presented with handwritten notes and heard testimony that when Gina Alongi asked Ms. Vachon to tell her about the ways in which Mr. McLaughin made her uncomfortable in May 2018, Ms. Vachon told Gina Alongi that Mr. McLaughlin attempted to give her massages and that he called her and other co-workers "peons." Based on the trial judge's ruling on the Funds' motion *in limine* concerning statements of which Gina Alongi was not aware, the line of questioning should have ended there. However, counsel then elicited the following testimony through a leading question:

> Q: Did he ever talk to you about having sex with his wife?
>
> A: Yes.

**Exhibit 9**, J. Vachon Trial Transcript, p. 10: 24 – 11: 9. This question was withdrawn by counsel after an objection.

While Ms. Dow's testimony was stricken from the record and counsel's question to Ms. Vachon was withdrawn, this does not change the fact that the jury heard testimony that was not only highly prejudicial, but ultimately had no bearing on Rose Alongi's individual work

environment, which was the only work environment at issue at the state court trial. In his closing argument, counsel reminded the jury that Ms. Dow told them she observed Mr. McLaughlin rub Ms. Vachon's shoulders, described inappropriate comments Mr. McLaughlin made to her, told them that Mr. McLaughlin asked her what kind of bathing suit she wore, and testified that Mr. McLaughlin told her that her husband checked other women out at a worksite. *See* **Exhibit 10**, T. Van Dyck Closing Argument Transcript, p. 13: 8-21. Counsel also reminded the jury in his closing argument that Ms. Vachon testified that Mr. McLaughlin told her about having sex with his wife. *See* **Exhibit 10**, T. Van Dyck Closing Argument Transcript, p. 12: 19-22. None of this testimony should have been elicited in the first place, let alone re-stated to the jury, as both Ms. Dow and Ms. Vachon had conclusively testified at their depositions and at trial that neither Gina Alongi nor Rose Alongi were aware of any of the above comments. Moreover, the improperly elicited testimony and reiteration of them in closing is exactly the type of inflammatory and prejudicial testimony that a jury cannot effectively "disregard." It is confusing to the jury and misleading, not to mention a waste of time in an already lengthy trial.

## III. Gina Alongi's Counsel Should Be Precluded From Asking Ms. Vachon, Ms. Dow, Ms. Ryan, Ms. Ortega And Rose Alongi Any Questions About Their Interactions With Mr. McLaughlin Other Than What They Reported To Gina Alongi Or Greg Geiman In May 2018.

To prevent the same misleading, confusing, and prejudicial testimony and arguments presented at Rose Alongi's State Court trial from tainting this trial, Gina Alongi's counsel should be precluded from asking Ms. Vachon, Ms. Dow, Ms. Taylor, Ms. Ortega, and Rose Alongi ***any*** questions about their interactions with Mr. McLaughlin other than what they reported to Gina Alongi and Greg Geiman in May 2018 in response to Gina Alongi's inquiry to tell her the things he said or did that made them uncomfortable. As noted above, each of these witnesses has testified under oath that they did not discuss Mr. McLaughlin's inappropriate behavior with Gina Alongi

after May 2018, nor did they report anything to her prior to May 2018. Based on their prior deposition and trial testimony, there is no reasonable likelihood that these women will testify to any alleged comments that would support Gina Alongi's hostile work environment claim. Further, the fact that Gina Alongi did not see fit to make any inquiry of these employees until she was looking for support for her own complaint – even though she was the Funds' employee responsible for investigating claims of discrimination and harassment – makes her reliance upon them to support her hostile work environment claim them highly dubious.

## CONCLUSION

For the foregoing reasons, this Court should enter an order precluding Gina Alongi and her counsel from eliciting testimony or making arguments concerning statements or actions made outside of her presence of which she was not aware during her employment. To this end, Gina Alongi's counsel should be precluded from asking Jennifer Vachon, Jennifer Dow, Taylor Ryan, Rosemary Ortega and Rose Alongi questions about their personal interactions with Mr. McLaughlin outside of their May 2018 report as each witness has testified she did not tell Gina Alongi about any alleged inappropriate interactions before or after Gina Alongi's May 2018 inquiry.

[**Remainder of page left intentionally blank. Signatures on next page**]

Defendants-in-Counterclaim,

IUOE LOCAL 4 HEALTH AND WELFARE FUND, IUOE LOCAL 4 PENSION FUND, IUOE LOCAL 4 ANNUITY AND SAVINGS, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP AND TRAINING FUND, JOINT LABOR-MANAGEMENT COOPERATION TRUST, and WILLIAM D. MCLAUGHLIN

By their attorneys,

*/s/ Jennifer Markowski*

Jennifer L. Markowski, BBO# 655927
Katherine C. Chenail, BBO# 655927
Alexandra F. Held, BBO# 711052
FREEMAN MATHIS & GARY, LLP
60 State Street, Suite 600
Boston, MA 02109
Tel: (617) 963-5975
jmarkowski@fmglaw.com
Katherine.chenail@fmglaw.com
Alexandra.held@fmglaw.com

*/s/ Charles W. Gilligan*

Charles W. Gilligan, pro hac vice
Daniel Keenan, pro hac vice
**O'Donoghue & O'Donoghue**
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20015
Tel: (202) 362-0041
*cgilligan@odonoghuelaw.com*
*dkeenan@odonoghuelaw.com*

Date: January 3, 2025

**CERTIFICATE OF SERVICE**

I, Jennifer L. Markowski, hereby certify that I have, on this 3rd day of January 2025, served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF).

*/s/ Jennifer L. Markowski*
Jennifer L. Markowski