# **EXHIBIT 7**

# In the Matter of:

*Ginamarie Alongi, et al. vs*

*Iuoe Local 4 Health & Welfare Fund, et al.*

*Rosemary Ann Ortega*

*July 08, 2022*

68 Commercial Wharf • Boston, MA 02110
888.825.3376 - 617.399.0130
Global Coverage
court-reporting.com



O&L O'BRIEN & LEVINE COURT REPORTING SOLUTIONS
A MAGNA LEGAL SERVICES COMPANY

Case 1:21-cv-10163-FDS    Document 134-7    Filed 01/03/25    Page 3 of 3

Ginamarie Alongi, et al. vs
Iuoe Local 4 Health & Welfare Fund, et al.

Rosemary Ann Ortega
July 08, 2022

Page 101

1  hot.
2  Q. Do you have any idea when that was?
3  A. No.
4  Q. Do you know if it was before that
5  May 1st?
6  A. Yes, because I didn't -- after that
7  incident with Gina, we rarely saw Bill McLaughlin come
8  into the office, into our side of the office after that
9  incident.
10 Q. After the May 1st of 2018?
11 A. Yes.
12 Q. So in terms of the socializing with
13 Mr. McLaughlin, between Mr. McLaughlin and the Funds
14 office employees, that didn't really occur after May of
15 2018?
16 A. No.
17 Q. So fair to say then you never heard any
18 other comments after May of 2018?
19 A. That's correct.
20 Q. Ms. Ortega, I just placed in front of you
21 an exhibit, again, marked in a previous deposition,
22 Exhibit No. 13. Do you recognize the document?
23 A. I do.
24 Q. And whose handwriting is that?

Page 102

1  A. That is my handwriting.
2  Q. And up at the top, it looks like under
3  your name is at the top right-hand corner; is that
4  right?
5  A. Yes.
6  Q. And it looks like maybe this was written
7  out on lined paper; is that right?
8  A. Yes.
9  Q. And under your name, does that indicate
10 May 2018?
11 A. Yes.
12 Q. It does not indicate a specific date in
13 May though; is that right?
14 A. Correct.
15 Q. Is this the statement that you wrote in
16 response to Gina Alongi's request?
17 A. Yes.
18 Q. Have you read this statement recently?
19 A. Yes.
20 Q. When was the last time you read it?
21 A. In the car.
22 Q. On the way over here?
23 A. As I was sitting in the parking lot.
24 Q. Before you came in here today.

Page 103

1  A. Yes.
2  Q. And having gone back and reread that this
3  morning, does this contain a full description of
4  everything that you believe Mr. McLaughlin said and did
5  up until May of 2018 that was inappropriate?
6  A. Oh, no, there was a lot more.
7  Q. Did Ms. Alongi, Gina Alongi ask you to
8  put everything you could recall into your statement?
9  A. Just a few, you know, what I could think
10 of. I mean, there was so much that I just took -- I
11 just provided the comments that I had firsthand
12 knowledge of that was between him and I.
13 Q. Which is all you would -- I mean, that's
14 what Ms. Gina Alongi was asking you to do.
15 A. Right.
16 Q. I do want to focus on I don't -- I'm not
17 asking you about things you heard secondhand, thirdhand
18 from other people, okay?
19 A. Yes.
20 Q. So what is contained in this exhibit that
21 is in front of you, Exhibit No. 13, was that your best
22 effort to put together every interaction and statement
23 you had firsthand knowledge of?
24 A. Yes.

Page 104

1  Q. Have you ever said things that are
2  inappropriate around the Funds office?
3  A. I'm sure I have.
4  Q. And have you ever talked about things
5  involving sex around the office?
6  A. No.
7  Q. Never any comments about that around the
8  office?
9     MR. TOSTI: Objection. You can answer.
10    THE WITNESS: I may -- I mean, certainly
11    not to a man. I mean, I may have shared things
12    with other women that in conversation if we were
13    talking about a show, and we commented on the
14    man in the show. I mean, that type but...
15 Q. (By Ms. Markowski) You ever talk about
16 men that you found attractive?
17 A. Yes.
18 Q. You would talk about the appearances of
19 men with your coworkers?
20 A. Yes.
21 Q. How about Chris Carry, did you ever make
22 comments about Chris Carry around the office?
23 A. To the girls that he was handsome maybe,
24 sure.