# EXHIBIT 8

# *Condensed Transcript*

## Sheet 1 Page 1

```
                                   Pages: 1-206
                                   Exhibits:  One.
           COMMONWEALTH OF MASSACHUSETTS
    NORFOLK, SS      SUPERIOR COURT DEPARTMENT
                     OF THE TRIAL COURT
* * * * * * * * * * * * * * * * * * * * *
ROSEMARIE ALONGI,                        *
                                         *
                Plaintiff,               *
                                         *
v.                                       *
                                         *
IUOE LOCAL 4 HEALTH & WELFARE            *
FUND, et als.,                           *
                                         *
                Defendants.              *
* * * * * * * * * * * * * * * * * * * * *
BEFORE THE HONORABLE BRENT A. TINGLE
DOCKET NUMBER 2182CV00125

       TESTIMONY OF ROSE ALONGI, CONTINUED

              Tuesday, October 15, 2024
                   Courtroom:  20

THIS TRANSCRIPT HAS NOT BEEN PROOFREAD OR CORRECTED BY
THE COURT REPORTER.  DIFFERENCES WILL EXIST BETWEEN
THE UNCERTIFIED DRAFT VERSION AND THE CERTIFIED
VERSION.


                    Tamira Acce
                   Court Reporter
```

## Page 2

```
APPEARANCES:

COUNSEL FOR THE PLAINTIFF:

TIMOTHY P. VAN DYCK
ROBERT G. YOUNG
BOWDITCH & DEWEY, LLP
200 CROSSING BOULEVARD
FRAMINGHAM, MA 01702
617-757-6537
tvandyck@bowditch.com
ryoung@bowditch.com


COUNSEL FOR DEFENDANTS:

JENNIFER MARKOWSKI
JENNAWE HUGHES
ALEXANDRA HELD
OTHER HUGES GOES HERE
FREEMAN MATHIS & GARY, LLP
60 STATE STREET, SUITE 600
BOSTON, MA  02109
jennifer.markowski@fmglaw.com
jennawe.hughes@fmglaw.com
alexandra.held@fmglaw.com
```

## Page 3

```
                      I N D E X
WITNESS:             DIRECT    CROSS
ROSE ALONGI
By Mr. Van Dyck        4
By Ms. Markowski                82
```

## Page 4

```
 1            P R O C E E D I N G S
 2       (Testimony of Rose Alongi
 3       resumes at 9:17 a.m.)
 4       (Jury present)
 5            (WITNESS PREVIOUSLY
 6       SWORN)
 7            THE COURT:  I just
 8       remind you, you're still under
 9       oath, Ms. Alongi.  We'll have
10       you to have a seat if you're
11       comfortable.  You can certainly
12       stand if you want to.  But feel
13       free to make yourself
14       comfortable, and we'll resume
15       your examination.
16            ROSE ALONGI:  Thank you.
17            THE COURT:  Thank you.
18       (DIRECT EXAMINATION OF ROSE
19       ALONGI, CONTINUED)
20       BY MR. VAN DYCK:
21   Q   Good morning, Rose.
22   A   Good morning, Tim.
23   Q   You may recall on Friday we
24       went through your background,
```

# *Condensed Transcript*

```
Sheet 24   Page 93
                                              93
 1    A    Yes.
 2    Q    Right.  Specifically, under
 3         both the United States Equal
 4         Employment Opportunity
 5         Commission, the EEOC, for
 6         short, and under the
 7         Massachusetts Commission
 8         Against Discrimination, the
 9         MCAD, it states that you have
10         300 days to report a complaint
11         if you have one, right?
12    A    Correct.
13    Q    Okay.  And this information was
14         accessible and available to you
15         when you worked there, right?
16    A    Correct.
17    Q    Okay.  And at no time did you
18         report to Gina Alongi or Kate
19         Shea that you had a complaint
20         of sexual harassment about
21         Bill McLaughlin, right?
22    A    That's correct.
23    Q    And if you felt that you had
24         one, you would have been
```

```
Page 94
                                              94
 1         comfortable going to your
 2         sister, Gina, right?
 3    A    Right.
 4    Q    Okay.  And at some point, your
 5         sister, Gina, after the May
 6         1st, 2018, blow up between her
 7         and Bill McLaughlin, she came
 8         to you and asked you some
 9         questions about your
10         interactions with
11         Bill McLaughlin, right?
12    A    That's correct.
13    Q    And specifically, she asked you
14         to talk to her about the things
15         that you believed, if any, that
16         Mr. McLaughlin did that made
17         you uncomfortable, right?
18    A    Correct.
19    Q    And you gave her some
20         information that day, correct?
21    A    Correct.
22    Q    And the information that you
23         gave her was far less than what
```

```
Page 95
                                              95
 1         you have testified to today,
 2         fair to say?
 3    A    That's correct.
 4    Q    And you, after having provided
 5         that information to Gina, you
 6         are aware that she had also
 7         spoken to other Fund employees
 8         around that same time, right?
 9    A    I was not aware.
10    Q    You weren't aware that she had
11         spoken to other folks?
12    A    No.
13    Q    Okay.  You were aware, I think
14         you testified, that you knew
15         she had spoken to Kate Shea
16         after your conversation with
17         her?
18    A    That's correct.
19    Q    All right.  And after that
20         discussion that you had with
21         Gina in May of 2018, you never
22         went back to Gina and made
23         another complaint after Mr.
24         McLaughlin, right?
```

```
Page 96
                                              96
 1    A    That's correct.
 2    Q    And your sister didn't come
 3         back to you and follow up with
 4         you about issues related to
 5         sexual harassment complaints
 6         against Mr. McLaughlin, fair to
 7         say?
 8    A    That's correct.
 9    Q    Okay.  So she interviewed you
10         shortly after that May 1st blow
11         up.  You told her everything
12         you knew at that point.
13              And that was the end of
14         it, right?
15    A    Correct.
16    Q    And just to be clear, that's
17         May of 2018, and you were
18         terminated in August of 2020,
19         right?
20    A    Correct.
21    Q    And you never, again just to be
22         clear, made any kind of a
23         formal complaint to anybody
24         else during that time period
```

# *Condensed Transcript*

Sheet 25   Page 97

**97**

```
 1        about Mr. McLaughlin or sexual
 2        harassment, fair to say?
 3   A    Could you repeat the time
 4        period?
 5   Q    Sure.  From May 2018 all the
 6        way up and through August of
 7        2020?
 8   A    That's correct.
 9   Q    And also you didn't file a
10        charge with either the Mass
11        Commission Against
12        Discrimination or the EEOC
13        until after you were fired,
14        right?
15   A    Correct.
16   Q    And in terms of what you say,
17        what you testify occurred
18        between May of 2018 and August
19        of 2020, you can only recall
20        one specific conversation that
21        you had with Bill McLaughlin
22        that you say was of a sexual
23        nature, right?
24   A    No.  That's not correct.
```

Page 98

**98**

```
 1   Q    You say that you recall more
 2        than one conversation?
 3   A    From May until the day I got
 4        fired?  What -- what was the
 5        time period again?
 6   Q    May of 2018, well actually
 7        after May of 2018.  After you
 8        spoke with your sister, all the
 9        way up until the time that you
10        were terminated, you have a
11        specific memory of one single
12        conversation with
13        Bill McLaughlin --
14   A    That's not correct.
15   Q    So how many conversations do
16        you have a memory of?
17   A    I have a memory that Kate Shea,
18        after the fight --
19   Q    Excuse me.  I have asked you
20        about conversations that you
21        had with Mr. McLaughlin.
22   A    He would come in my office
23        several times a week.
```

Page 99

**99**

```
 1             Instead of two to three
 2        times a week, he came in one to
 3        two times a week, and this was
 4        after the fight.  And after the
 5        -- Kate told him to stay away
 6        from the Funds.
 7   Q    I just want you to focus on the
 8        question.
 9             So Mr. McLaughlin, I'm
10        trying to get at what you say
11        he said to you after May of
12        2018.  So it's your testimony
13        that several times a week, for
14        every single week for the next
15        two years, he came to your
16        office several times?
17   A    That's correct, Jennifer.
18   Q    Okay.  And in terms of specific
19        conversations that occurred
20        during that time, you didn't
21        take any notes of anything that
22        occurred?
23   A    Greg Geiman knew about them.
24        He wrote notes to himself.
```

Page 100

**100**

```
 1             THE COURT:  Listen.  The
 2        question is just whether you
 3        took any notes.
 4             THE WITNESS:  I did not
 5        take notes.
 6        BY MS. MARKOWSKI:
 7   Q    And you already testified that
 8        you didn't report to anybody
 9        what he was saying to you?
10   A    That's correct.
11   Q    And throughout this time
12        period, you continued to do
13        your job, right?
14   A    Absolutely.
15   Q    Right.  And you did it very
16        well?
17   A    Not after Billy left, I did
18        not.
19   Q    I'm sorry.  I didn't hear the
20        last part.  Not after?
21   A    When Billy would leave my
22        office, he totally made me --
23        my thoughts were not together.
```