UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND; BOARD OF TRUSTEES OF THE IUOE LOCAL 4 ANNUITY & SAVINGS FUND; BOARD OF TRUSTEES OF THE IUOE LOCAL 4 HEALTH AND WELFARE FUND; BOARD OF TRUSTEES OF THE HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4; IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST; AND IUOE LOCAL 4 SOCIAL ACTION COMMITTEE,<br><br>        Plaintiffs,<br><br>v.<br><br>GINA ALONGI,<br><br>        Defendant and<br>        Counterclaim/Third-Party<br>        Plaintiff,<br><br>v.<br><br>IUOE LOCAL 4 PENSION FUND; IUOE LOCAL 4 ANNUITY & SAVINGS FUND, IUOE LOCAL 4 HEALTH AND WELFARE FUND; HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND; IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST; and WILLIAM D. MCLAUGHLIN, individually and in his capacity as Chairman of the Boards of Trustees,<br><br>        Counterclaim/Third-Party<br>        Defendants. | Civil Action No. 1:21-cv-10163-FDS |

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S OPPOSITION TO PLAINTIFFS/COUNTERCLAIM DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED COMMENTS OR ACTIONS OCCURRING OUTSIDE GINA ALONGI'S PRESENCE OF WHICH SHE WAS NOT AWARE DURING HER EMPLOYMENT**

Defendant/Counterclaim Plaintiff Gina Alongi ("Ms. Alongi") hereby opposes Plaintiffs Board of Trustees of the IUOE Local 4 Pension Fund; Board of Trustees of the IUOE Local 4 Annuity & Savings Fund; Board of Trustees of the IUOE Local 4 Health and Welfare Fund; Board of Trustees of the Hoisting and Portable Engineers Local 4 Apprenticeship & Training Fund; International Union of Operating Engineers Local 4; IUOE Local 4 Labor-Management Co-Operation Trust and IUOE Local 4 Social Action Committee's (collectively, "Plaintiffs") and Counterclaim Defendants IUOE Local 4 Pension Fund; IUOE Local 4 Annuity & Savings Fund; IUOE Local 4 Health and Welfare Fund; Hoisting and Portable Engineers Local 4 Apprenticeship & Training Fund; IUOE Local 4 Labor-Management Co-Operation Trust and William D. McLaughlin's (the "Counterclaim Defendants")[1], motion *in limine* seeking an Order excluding evidence of comments made or actions taken by Mr. McLaughlin that Ms. Alongi did not witness and about which Ms. Alongi was not aware during her employment with the Funds.

As detailed below, the Funds' request that Ms. Alongi's undersigned counsel be precluded from asking certain prospective trial witnesses "***any*** questions about their interactions with Mr. McLaughlin other than what they reported to Gina Alongi and Greg Geiman in May 2018" is without basis, would result in undue prejudice to Ms. Alongi, and should be denied. *See* Mot., p. 13. (Emphasis in original). The mere assertion that these witnesses did not formally report certain conduct directly to Ms. Alongi does not establish that Ms. Alongi was not aware of such conduct during her employment. Further, even if Ms. Alongi was not aware of certain of Mr. McLaughlin's offending conduct during her employment, testimony regarding such conduct should be deemed admissible because it (i) goes directly to Mr. McLaughlin's and Ms. Alongi's credibility; and (ii)

---

[1] For purposes of this Opposition, Plaintiffs and Counterclaim Defendants shall be referred to herein together as the "Funds."

illustrates Mr. McLaughlin's knowing disregard of employees' rights, in furtherance of Ms. Alongi's punitive damages claim. In further support of her Opposition, Ms. Alongi states as follows:

### Brief Factual Background

Ms. Alongi began her employment with the Funds in 1978 in a clerical position. She was promoted several times throughout her 42-year long employment and was ultimately promoted to the role of Administrator of the Funds in 1996. Ms. Alongi held the Administrator position for 24 years, from 1996 until her abrupt termination in 2020. As the Funds' Administrator, Ms. Alongi worked under the direction and control of the Boards of Trustees of the Funds. From August 2017 until the end of her employment, Ms. Alongi reported to Mr. McLaughlin, who was elected Business Manager of the Local 4 union and Chairman of the Boards of Trustees of the Funds in 2017.

From the beginning of his tenure as Chairman, Mr. McLaughlin routinely made highly inappropriate and sexually charged comments in the workplace to Ms. Alongi, her twin sister Rose Alongi, and to many other female employees. On May 1, 2018, Ms. Alongi requested that Mr. McLaughlin meet with her in her office to discuss, among other things, Mr. McLaughlin's inappropriate conduct and comments in the workplace. As Ms. Alongi began providing Mr. McLaughlin some examples of how his behavior had made her feel uncomfortable, Mr. McLaughlin started to pace in front of Ms. Alongi, invade her personal space, raise his fists as though he might punch her, and yell obscenities to the point where other Funds employees were fearful for Ms. Alongi's physical safety. One employee had dialed 911 and was ready to punch the number on her cell phone to call for emergency help.

A few weeks after the May 1 altercation, in mid-May 2018, Ms. Alongi interviewed several

female Funds staff members—including Rose Alongi, Jennifer Dow ("Ms. Dow"), Jennifer Vachon ("Ms. Vachon"), and Taylor Ryan ("Ms. Ryan")—regarding their experiences with Mr. McLaughlin.  She made notes of these interviews.  Each reported feeling uncomfortable with the way Mr. McLaughlin looked at, talked to, or touched them, and testified under oath in connection with this case regarding these experiences.  Further, in mid-May 2018, Gregory Geiman ("Mr. Geiman") interviewed Rosemary Ortega ("Ms. Ortega"), another female employee in the Funds' office, regarding Mr. McLaughlin's unwanted and inappropriate conduct in the office.  Ms. Ortega similarly testified under oath in connection with this case regarding these experiences.

In response to these events during and leading up to May 2018, Ms. Alongi requested to meet with Kate Shea, a partner at Segal Roitman and outside employment counsel to the Funds, and did so on or about May 21, 2018.  Ms. Alongi told Attorney Shea about the May 1 incident and detailed Mr. McLaughlin's severe and constant bullying and sexual harassment of Ms. Alongi and other Funds employees.  Despite telling Ms. Alongi that she had "no case" as Mr. McLaughlin's conduct purportedly failed to rise to the level of sexual harassment, Attorney Shea suggested to Mr. McLaughlin that he should be "more formal in his manner" in the office going forward.  He was not disciplined in any way.

Following Ms. Alongi's and Mr. McLaughlin's meetings with Attorney Shea, Mr. McLaughlin continued to subject Ms. Alongi, Rose Alongi, and other female employees to frequent sexual comments well into 2020.

## Argument

**I. The Funds Failed to Establish that Ms. Alongi was Unaware of Mr. McLaughlin's Sexual Harassment of Other Funds Employees Before and After May 2018.**

In their Motion, the Funds assert that harassment directed toward individuals that Ms.

Alongi "herself did not experience, witness, or that she was not told about during her employment, is not probative of the issues in this case; namely, whether Gina Alongi *herself* was subjected to a hostile work environment."  See Mot., p. 6.  (Emphasis in original).  The Funds' attempt to avoid introduction of evidence of this nature, by seeking an Order prohibiting Ms. Alongi's counsel from asking five prospective trial witnesses—Rose Alongi, Ms. Vachon, Ms. Ryan, Ms. Ortega, and Ms. Dow—*any* questions about their interactions with Mr. McLaughlin, other than what they reported to Ms. Alongi and Mr. Geiman in May 2018, is overly broad and without basis in the record. [2]

With respect to Rose Alongi, the Funds argue that "there is no reasonable likelihood that counsel could elicit testimony from Rose Alongi concerning her experiences with Mr. McLaughlin after May 2018 that would be relevant to Gina Alongi's hostile work environment claim."  Mot., p. 11.  In support of this argument, the Funds point to a portion of Rose's State Court Trial testimony in which Rose confirmed, *inter alia*, that after the discussion she had with Ms. Alongi in May 2018, she never went back to Ms. Alongi to make another "complaint" about Mr. McLaughlin, nor did she make "any kind of a formal complaint" to anybody else about Mr. McLaughlin or sexual harassment, from May 2018 through August 2020.  Mot., p. 11.  However, the fact that Rose Alongi did not make a formal complaint to Ms. Alongi about Mr. McLaughlin after May 2018 is not enough to show that Ms. Alongi was unaware of Mr. McLaughlin's inappropriate conduct toward Rose Alongi from May 2018 through August 2020.  For example, during her deposition, following a series of questions regarding a conversation that took place

---

[2] The Funds' argument regarding the propriety of certain questions asked during Rose Alongi's October 2024 Norfolk County Superior Court trial ("State Court Trial") is a red herring.  Any objections actually raised by the Funds were addressed and ruled upon by the State Court Judge during the pendency of the trial and provide no support for the relief the Funds request via their instant Motion.

between Rose Alongi and Mr. McLaughlin in December 2019, Rose Alongi testified as follows:

> A: It was at the time of the Christmas party in December of 2019.
> Q: Okay. So it occurred the day of the Christmas party?
> A: I don't recall.
> Q: Okay. And did you ever report any of these conversations to Gina that you believed you had been sexually harassed?
> A: I think Gina was --
> \*\*\*
> A: Yes.
> Q: You did?
> A: I think she knew about them.
> Q: Well, did you report them to her?
> A: Not formally.
> Q: Well, did you report them in any way to her?
> A: She knew, along with the other women in the office.
> Q: I want to know --
> A: Yes.
> Q: -- if you reported it to her.
> A: Not formally on paper.
> Q: Well, how did you report it to her?
> A: In conversation over the phone.

R. Alongi Dep., excerpts of which are attached hereto as **Exhibit A**, 247:7-248:8. Accordingly, the Funds' assertion that Rose Alongi did not make a formal complaint to Ms. Alongi regarding Mr. McLaughlin's sexual harassment after May 2018 is insufficient to show that Ms. Alongi was unaware of Mr. McLaughlin's inappropriate conduct toward Rose Alongi after May 2018.

The same is true with respect to Ms. Vachon's, Ms. Ryan's, Ms. Dow's, and Ms. Ortega's experiences with Mr. McLaughlin before and after May 2018. With respect to these witnesses, the Funds argue that "[e]ach of the non-Alongi witnesses testified that prior to May 2018, they did not complain to Gina Alongi that Mr. McLaughlin made offensive comments of a sexual nature, nor did they discuss the issue of sexual harassment with Gina Alongi. Each also testified at deposition and trial that after May 2018, they never told Gina Alongi that Mr. McLaughlin engaged in inappropriate behavior towards them." Mot., p. 7. Even if the foregoing were true, this fails to

establish that (i) Mr. McLaughlin did not make offensive comments of a sexual nature or engage in inappropriate behavior toward these individuals after May 2018, or before May 2018 despite not being formally reported to Ms. Alongi; or (ii) Ms. Alongi did not find out about such comments or behavior in some manner during her employment. For example, during her deposition, Ms. Alongi indicated that she learned of an inappropriate comment Mr. McLaughlin made toward Ms. Vachon and Ms. Dow, before he became Business Manager, as a result of conversations she had with Ms. Dow, Ms. Vachon, and Louis Rasetta. Specifically, Ms. Alongi testified as follows:

> A: Can I back up for a minute?
> Q: Sure.
> A: Before Billy actually was business manager, I was a little concerned about Billy's behavior with respect to two women that worked for me.
> Q: And what were you concerned about?
> A: His attitude and his tone of voice.
> Q: What precisely what happened?
> A: He was sitting in the kitchen with Lou and two of my employees went in, and he called them fucking peons. I don't know what the topic of discussion was, why he did that, why he snapped but it was totally inappropriate for a professional person.
> Q: Did you hear that comment?
> A: No, but I heard it from the two Jens.
> Q: That's what they reported to you?
> A: Yes.
> Q: But you, yourself, didn't hear the comment?
> A: No, I heard it from Lou.
> Q: And when you say the two Jens, is that Jen Vachon and Jen Dow?
> A: Yes.
> Q: Roughly when did they say this event occurred?
> A: Right before Billy took over. I mean, it was probably within months.
> Q: And did they say whether Lou Rasetta said anything to Billy at the time of that interaction?
> A: Well, you know, after Billy had given one of them or two of them the finger and told them to get the fuck out of the kitchen, Lou was totally embarrassed of Billy's behavior.
> Q: How do you know he was embarrassed by his

```
                behavior?
        A:      He told me.
        Q:      When did he tell you that?
        A:      Shortly after the event.
```

G. Alongi Dep., excerpts of which are attached hereto as **Exhibit B**, 159:8-160:21.

Accordingly, the Funds' assertion that Ms. Vachon, Ms. Ryan, Ms. Dow, and Ms. Ortega did not complain to Ms. Alongi directly regarding Mr. McLaughlin's sexual harassment before or after May 2018 is insufficient to show that Ms. Alongi was unaware of Mr. McLaughlin's inappropriate conduct toward these employees during these timeframes.

> II. **Even if Ms. Alongi was Unaware of Instances of Mr. McLaughlin's Sexual Harassment of Other Funds Employees, Such Evidence is Relevant to Credibility and Ms. Alongi's Punitive Damages Claim.**

While Ms. Alongi does not intend to rely upon instances of sexual harassment that she did not experience, witness, or about which she was not aware during her employment to satisfy an element of her hostile work environment claim, testimony of this nature is highly probative of other issues in this case. First, testimony of this nature goes directly to Mr. McLaughlin's and Ms. Alongi's credibility, and the credibility of witnesses who provide testimony during trial is always at issue during trial. *See, e.g.*, *Montoya v. Sheldon*, 898 F. Supp. 2d 1259, 1275 (D.N.M. 2012) ("The credibility of any witness who takes the stand is always an issue at trial."); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("[T]he jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); *Korbe v. Doug Andrus Distrib., LLC*, No. 1:23-CV-01145-SKC-JPO, 2024 WL 2754050, at *1 (D. Colo. May 29, 2024) ("[A] testifying witness's credibility is always at issue and the jury must assess witness credibility.")

During the State Court Trial, Mr. McLaughlin denied all allegations of sexual harassment and claimed that six (6) trial witnesses who testified regarding his inappropriate conduct were lying:

> Q: Fair enough. I think you've been in this courtroom for the entire trial, correct?
> A: Yes.
> Q: So you've heard pretty much all of the testimony, correct?
> A: Yes.
> Q: And you've heard [*sic*.] an opportunity to hear Rose Alongi, correct?
> A: Yes.
> Q: You've heard [*sic*.] an opportunity to hear Gina Alongi, correct?
> A: Yes.
> Q: Jen Vachon, Jen Dow, Rosemary Ortega, you've heard all of their testimony, correct?
> A: Yes.
> Q: And also Taylor Ryan, correct, you were there for all of that?
> A: Correct.
> Q: And you heard them get on this witness stand and talk about comments of a sexual nature that you made to them.
> A: I did hear that.
> Q: And you think they're all lying?
> A: Yes.
> 
> \*\*\*
> 
> Q: Do you think that all six of these women are making this up?
> A: Yes.

W. McLaughlin Trial Tr., excerpts of which are attached hereto as **Exhibit C**, 150:8-151:11, 151:22-24. Testimony regarding specific instances of Mr. McLaughlin's inappropriate sexual comments and behavior from five prospective trial witnesses—regardless of whether Ms. Alongi was aware of such conduct—go directly to the credibility of Mr. McLaughlin's claim that he never harassed anyone at the Funds at any time. This testimony also goes directly to Ms. Alongi's credibility, who will testify that, from the beginning of his tenure as Business Manager, Mr.

McLaughlin routinely made highly inappropriate and sexually charged comments to her, her twin sister Rose Alongi, and to many other female employees. Ms. Alongi will testify that this behavior continued well into 2020, despite Mr. McLaughlin's assertions to the contrary.

Further, testimony of this nature is relevant to Ms. Alongi's claim for punitive damages. To this end, Mr. McLaughlin's reprehensible conduct toward other Funds employees, before and after May 2018, is directly relevant to whether his blatant disregard of employees' rights to work in a harassment-free environment, particularly in light of Attorney Shea's suggestion that he should be "more formal in his manner" following Ms. Alongi's sexual harassment complaint, was "so egregious that it warrants public condemnation and punishment." *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 91, 111 (2009).

## Conclusion

For the reasons set forth above, Ms. Alongi respectfully requests that the Court deny the Funds' Motion in its entirety.

Respectfully submitted,

GINA ALONGI

By her attorneys,

/s/ *Ashley M. Barnes*
Timothy P. Van Dyck (BBO #548347)
Robert G. Young (BBO #650541)
Ashley M. Barnes (BBO #706121)
BOWDITCH & DEWEY, LLP
200 Crossing Boulevard
Framingham, MA 01702
Telephone: 617.757.6537
Facsimile: 508.929.3137
tvandyck@bowditch.com
ryoung@bowditch.com
abarnes@bowditch.com

January 10, 2025

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

    /s/ *Ashley M. Barnes*