UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND, BOARD OF TRUSTEES OF THE IUOE LOCAL 4 ANNUITY & SAVINGS FUND, BOARD OF TRUSTEES OF THE IUOE LOCAL 4 HEALTH AND WELFARE FUND, BOARD OF TRUSTEES OF THE HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4, IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST, AND IUOE LOCAL 4 SOCIAL ACTION COMMITTEE<br>                Plaintiffs,<br><br>v.<br>GINA ALONGI,<br>                Defendant/Plaintiff-in Counterclaim<br><br>v.<br><br>IUOE LOCAL 4 PENSION FUND, IUOE LOCAL 4 ANNUITY & SAVINGS FUND, IUOE LOCAL 4 HEALTH AND WELFARE FUND, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST, WILLIAM D. MCLAUGHLIN, individually and in his capacity as Chairman of the Boards of Trustees,<br>                Defendants-in-Counterclaim, | Civil Action No. 1:21-cv-10163-FDS |

**PLAINTIFFS/DEFENDANTS-IN-COUNTERCLAIMS' OPPOSITION TO GINA ALONGI'S MOTION IN LIMINE TO PRECLUDE PLAINTIFFS/DEFENDANTS-IN-COUNTERCLAIM FROM OFFERING EVIDENCE OF GINA ALONGI'S PURPORTED GREED OR "LAVISH SPENDING"**

Plaintiffs/Defendants-in-Counterclaim IUOE Local 4 Health & Welfare Fund, IUOE Local 4 Pension Fund, IUOE Local 4 Annuity & Savings Fund, Hoisting and Portable Engineers Local

4 Apprenticeship & Training Fund, Joint Labor-Management Cooperation Trust, and William McLaughlin (individually, "Mr. McLaughlin") (collectively, "Defendants-in-Counterclaim")[1] hereby oppose Defendant/Plaintiff-in-Counterclaim Gina Alongi's Motion *in Limine* to Preclude Plaintiffs/Defendants-in-Counterclaim from Offering Evidence of Gina Alongi's Purported Greed or "Lavish Spending." The testimony Gina Alongi seeks to exclude is central to the Funds' defense of her counterclaim.[2] As discussed herein, Gina Alongi's counterclaim stems from a May 1, 2018 verbal dispute between her and Mr. McLaughlin. Evidence will show that leading up to that meeting, Gina Alongi was getting increasingly upset that Mr. McLaughlin was attempting to reign in the excesses Gina enjoyed under Mr. McLaughlin's predecessor, Lou Rasetta. Gina called the meeting to discuss her gripes and how the Funds' office would be run going forward. Although she alleges in support of her counterclaim that sexual harassment was a topic of discussion, there is evidence that it was neither intended to be nor an actual topic of discussion. Understanding Mr. McLaughlin's view of how Gina Alongi was running the Funds' office is critical to understanding the genesis of the May 1, 2018 dispute and the sexual harassment complaint that followed – especially where there are factual disputes regarding key aspects of the meeting.

## BRIEF FACTUAL BACKGROUND

Gina Alongi began working fulltime for the Funds in 1980 and was promoted Funds Administrator in 1996. She remained in that role until her termination on July 21, 2020.

While serving as Administrator, Gina Alongi had an intimate relationship with IUOE Local 4 Business Manager, Louis Rasetta ("Mr. Rasetta"), who was also Mr. McLaughlin's immediate predecessor. There is ample evidence that Gina Alongi's relationship with Mr. Rasetta benefitted

---

[1] William McLaughlin is a Defendant-in-Counterclaim, only.
[2] Gina Alongi's Motion *in Limine* focuses on whether the evidence is relevant to the breach of fiduciary duty claim, but does not address its relevance to the counterclaim, which is the purpose for which it would be offered.

2

her in numerous ways over many years. Those benefits included, among other things, the setting of her compensation, receipt of additional vacation time, abbreviated working hours, and unnecessary involvement in Union activities.

In August 2017, Mr. McLaughlin succeeded Mr. Rasetta as Business Manager. Mr. McLaughlin never had an intimate relationship with Gina Alongi and did not condone the excesses granted by Mr. Rasetta. For example, Mr. McLaughlin was concerned that Gina Alongi drove a Cadillac Escalade, paid for by the Funds, when her role as Administrator did not require her to drive beyond commuting to work. Mr. McLaughlin asked Ms. Alongi to downgrade to a less expensive vehicle. Mr. McLaughlin also asked Ms. Alongi to adhere to Funds' business hours. The evidence will show Gina Alongi was displeased with Mr. McLaughlin's approach and, on May 1, 2018, called for a meeting with him to him how the office would be run. Pre-meeting notes prepared for Gina indicate "respect, **money**, move, contract, and confidentiality" were her points of discussion. Sexual harassment was not mentioned in the notes.

The May 1, 2018, meeting became heated. Subsequently, Gina Alongi questioned whether Mr. McLaughlin's behavior and comments on that day constituted sexual harassment. In the following weeks, Gina Alongi consulted an attorney and waffled about whether the behavior rose to the level of sexual harassment or was a product of her role as "one of the guys." By May 16, 2018, she decided to pursue a sexual harassment complaint. To that end, she approached certain female Fund employees and asked them to, "[t]ell [her] the ways Mr. McLaughlin makes [them] uncomfortable."[3] Until May 2018, she had never asked any of the employees – employees she

---

[3] She directed Assistant Administrator, Greg Geiman, to question one of the Fund employees.

supervised – such a question. On May 21, 2018 Gina met with outside counsel and reported that she believed sexual harassment had occurred.

Gina Alongi's complaint was addressed on the day it was made. The evidence will show that for the following twenty-six (26) months, Gina and Mr. McLaughlin worked together without incident. There were no other complaints of sexual harassment and there is no evidence that Mr. McLaughlin engaged in behavior in Gina's presence during that period that was of a sexual nature or could be characterized as sexual harassment.

In July 2020, after discovering that Gina Alongi failed to keep mandatory Department of Labor time sheets, failed to accurately allocate her time across the Funds, utilized the Funds' resources, including employee time, to perform work for another organization in which she held a paid position, disclosed confidential information, and made material misrepresentations to the Board and Fund counsel, the Funds' Board of Trustees unanimously voted to terminate Gina.

The Funds filed the instant action against Gina Alongi for breach of fiduciary duty in violation of the Employment Retirement Income Security Act of 1974. Thereafter, Rose and Gina Alongi filed a Complaint in Norfolk Superior Court alleging hostile work environment and retaliation (third-party retaliation as to Rose Alongi). Gina Alongi also asserted claims of quid pro quo sexual harassment, failure to accommodate, and interference with rights. Gina Alongi later dismissed her claims from state court to assert them as a counterclaim in the instant action.

## ARGUMENT

I. **Evidence Of Gina Alongi's Spending In Her Capacity As Administrator Is Relevant To the Funds' Defense Of Her Hostile Work Environment And Retaliation Claims And Does Not Constitute Impermissible Character Evidence.**

Gina Alongi's motion *in limine* is premised on her assertion that her spending is irrelevant to the "four categories of conduct allegedly attributable to Ms. Alongi" that form the basis of the

4

Funds' breach of fiduciary duty claim against her. The motion does not, however, address the relevance to the Funds' defense of the counterclaim, which is the primary reason the evidence at issue will be offered.[4]

To prove her hostile work environment claim, Gina Alongi must establish that Mr. McLaughlin's actions caused her environment to be "pervaded by harassment or abuse," which "result[ed] [in] intimidation, humiliation, and stigmatization," such that it posed "a formidable barrier" to her full participation in the workplace. *Bennefield v. Kohl's Dep't Stores, Inc.*, No. 2012 WL 1560407, at *3 (Mass. Super. Ct. Feb. 17, 2012) (citing *Cuddyer*, 434 Mass. at 532). The totality of the circumstances must be considered in assessing whether a hostile work environment exists, including the frequency and severity of the conduct; whether the conduct includes physical threats or humiliation, as opposed to an offensive remark; and whether the conduct unreasonably interfered with Gina Alongi's work performance. *See Henry v. Sterling Collision Centers, Inc.*, 252 F. Supp. 3d 42, 50 (D. Mass. 2017). Gina Alongi claims that during the May 1, 2018 meeting she discussed sexual harassment with Mr. McLaughlin and that some of his behavior toward her constituted sexual harassment. There is contrary evidence to both of her contentions, but her hostile work environment claim both stems from and hinges on what occurred during the May 1, 2018 meeting. The Funds will present evidence that Gina called the meeting to essentially set Mr. McLaughlin straight and tell him how the Funds were going to be run and that she did this because Mr. McLaughlin did not approve of the "excesses" she enjoyed under Mr. McLaughlin. Mr. McLaughlin will testify that Gina Alongi's primary focus during the meeting was telling him that he needed to treat her as Lou Rasetta had and that things should return to the way they had been

---

[4] It is worth noting that less than ten (10) minutes during the trial was spent on the testimony at issue. While the testimony is critically important to the Funds' presentation of what occurred and why, it is a relatively brief issue to address.

before Mr. McLaughlin was elected Business Manager. Mr. Geiman will also testify that Gina Alongi was growing increasingly unhappy with the differences Mr. McLaughlin and Mr. Rasetta's management style. Thus, it is important for the Funds and Mr. McLaughlin to present evidence concerning what led to that meeting.

To prove her retaliation claim, Gina Alongi must establish that she engaged in protected activity and that the Funds terminated her for doing so. *See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 405 (2016); *Fanti v. Salem State College*, 557 F.3d 22, 32 (1st Cir. 2009)). Gina Alongi contends that her May 21, 2018 report concerning, in part, what occurred on May 1, 2018, was protected activity. Again, it will be for the jury to decide what transpired on May 1, 2018. To make that determination, they will need to hear evidence about Gina Alongi and Mr. McLaughlin's relationship leading up to the event to parse through what is more likely than not to have happened.

Furthermore, the Funds do not seek to offer evidence of Gina Alongi's personal spending habits or her personal wealth in their defense of her claims, nor did they do so during Rose Alongi's trial. All evidence would concern Ms. Alongi's spending in her professional capacity as Administrator of the Funds. Such evidence would not constitute impermissible character evidence as it would not be presented to show she acted in accordance with a particular character trait. Rather, it would be offered to provide context as to Ms. Alongi's motivations for calling the May 1, 2018 meeting and lodging a sexual harassment complaint against Mr. McLaughlin.

**II.    There Is No Indication That The Funds Will Present Irrelevant Or Impermissible Evidence Concerning Gina Alongi's Purported Greed Or Lavish Spending.**

Ms. Alongi asserts that the Funds litigation strategy in depositions and during the state court trial of Rose Alongi's claims against the Funds indicate the Funds plan to "characterize Ms. Alongi as greedy and/or will attempt to show that Ms. Alongi spent money lavishly while working

for the Funds during the upcoming trial in this case." This is an exaggeration of the lines of questioning and testimony presented to date. First, the word "greed" or "greedy" was never uttered by Funds counsel or any witness for the Funds during depositions or the state court trial. The only trial testimony elicited by Funds counsel concerning Ms. Alongi's spending in her capacity as Administrator was offered during Mr. McLaughlin's direct examination. Mr. McLaughlin testified that when he became Business Manager, he was concerned with Ms. Alongi's lavish spending. In particular, he was concerned that she drove a Cadillac Escalade, paid for by the union members, when driving beyond her commute to work was not a part of her responsibilities as Administrator. Mr. McLaughlin testified that after he became Business Manager, he asked Gina Alongi to downgrade to a less expensive vehicle. This brief testimony was offered for the purpose of providing context to Ms. Alongi's issues with Mr. McLaughlin that led to the May 1, 2018 blow-up and subsequent sexual harassment complaint.

      The only other time that Ms. Alongi's spending in her capacity as Administrator was offered during the state court trial was in response to Ms. Alongi's counsel's cross examination of Mr. McLaughlin. Ms. Alongi's counsel asked Mr. McLaughlin to read a portion of his deposition transcript in which he testified that he believed Ms. Alongi is a "selfish fucking bitch." On re-direct, under the Completeness Doctrine, Funds counsel was permitted to read the entirety of Mr. McLaughlin's deposition testimony in which he explained that he thought Ms. Alongi was a "selfish fucking bitch" because of her lavish spending on the backs of union members. This testimony was part of Mr. McLaughlin's answer during his deposition, but was not read into the record by counsel on cross-examination and thus important context was omitted. *See* **Exhibit 2**. In reading the additional testimony counsel for the Funds was ensuring that an important part of Mr. McLaughlin's answer was not kept from the jury.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Gina Alongi's motion in limine to preclude the Funds from offering evidence of Gina Alongi's purported greed or "lavish spending."

[**Remainder of page left intentionally blank. Signatures on next page**]

Defendants-in-Counterclaim,

IUOE LOCAL 4 HEALTH AND WELFARE FUND, IUOE LOCAL 4 PENSION FUND, IUOE LOCAL 4 ANNUITY AND SAVINGS, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP AND TRAINING FUND, JOINT LABOR-MANAGEMENT COOPERATION TRUST, and WILLIAM D. MCLAUGHLIN

By their attorneys,

*/s/ Jennifer Markowski*
_____
Jennifer L. Markowski, BBO# 655927
Katherine C. Chenail, BBO# 655927
Alexandra F. Held, BBO# 711052
FREEMAN MATHIS & GARY, LLP
60 State Street, Suite 600
Boston, MA 02109
Tel: (617) 963-5975
jmarkowski@fmglaw.com
Katherine.chenail@fmglaw.com
Alexandra.held@fmglaw.com

*/s/ Charles W. Gilligan*
_____
Charles W. Gilligan, pro hac vice
Daniel Keenan, pro hac vice
**O'Donoghue & O'Donoghue**
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20015
Tel: (202) 362-0041
*cgilligan@odonoghuelaw.com*
*dkeenan@odonoghuelaw.com*

Date: January 10, 2025

**CERTIFICATE OF SERVICE**

      I, Jennifer L. Markowski, hereby certify that I have, on this 10th day of January 2025, served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF).

                                                                    */s/ Jennifer L. Markowski*
                                                                    Jennifer L. Markowski