# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IUOE LOCAL 4 PENSION FUND, BOARD OF TRUSTEES OF THE IUOE LOCAL 4 ANNUITY & SAVINGS FUND, BOARD OF TRUSTEES OF THE IUOE LOCAL 4 HEALTH AND WELFARE FUND, BOARD OF TRUSTEES OF THE HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4, IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST, AND IUOE LOCAL 4 SOCIAL ACTION COMMITTEE<br>       Plaintiffs,<br><br>v.<br><br>GINA ALONGI,<br>       Defendant/Plaintiff-in Counterclaim<br>v.<br><br>IUOE LOCAL 4 PENSION FUND, IUOE LOCAL 4 ANNUITY & SAVINGS FUND, IUOE LOCAL 4 HEALTH AND WELFARE FUND, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICESHIP & TRAINING FUND, IUOE LOCAL 4 LABOR-MANAGEMENT CO-OPERATION TRUST, WILLIAM D. MCLAUGHLIN, individually and in his capacity as Chairman of the Boards of Trustees,<br>       Defendants-in-Counterclaim, | Civil Action No. 1:21-cv-10163-FDS |

## PLAINTIFFS/DEFENDANTS-IN-COUNTERCLAIM'S OPPOSITION TO DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM, GINA ALONGI'S MOTION IN LIMINE TO PRECLUDE TESTIMONY OF JOYCE A. MADER, JAMES HEINZMAN, AND GARY WALDREN

Plaintiffs/Defendants-in-Counterclaim IUOE Local 4 Health & Welfare Fund, IUOE Local 4 Pension Fund, IUOE Local 4 Annuity & Savings Fund, Hoisting and Portable Engineers Local 4 Apprenticeship & Training Fund, Joint Labor-Management Cooperation Trust, and William

McLaughlin (individually, "Mr. McLaughlin") (hereinafter "Fund Plaintiffs")[1] hereby file this opposition to Defendant/Plaintiff-in-Counterclaim Gina Alongi's ("Defendant Alongi') Motion *in Limine* to preclude testimony of Joyce A. Mader,[2] James Heinzman, and Gary Waldren. Defendant Alongi seeks to preclude the testimony of the Fund Plaintiffs' independent auditors, James Heinzman and Gary Waldren, who will testify as to their personal review of the Fund Plaintiffs' regularly kept business records in their investigation of various matters, many at issue in this case, which arose during Defendant Alongi's tenure as Administrator to the Fund Plaintiffs. Defendant contends that Heinzman and Waldren's are (1) undisclosed expert witnesses and (2) cannot give lay opinion testimony because their testimony is, in her view, "clearly based on technical or specialized knowledge." (ECF 127, p. 6-7).

Heinzman and Waldren are not, however, providing expert testimony. Rather, they will testify, based on personal knowledge, regarding the various factual findings from their audit of the Fund Plaintiffs' regularly kept business records concerning the time period at issue in this case, pursuant to Federal Rule of Evidence 602. To the extent they offer any opinions concerning the operation of the Funds under Defendant's administration, they are permitted to do so pursuant to Federal Rule of Evidence 701. In any event, it is premature at this juncture to exclude Heinzman and Waldren's testimony. Accordingly, Defendant's Motion *in Limine* to preclude Heinzman and Waldren's testimony must be denied.

## I.    FACTUAL BACKGROUND

The Fund Plaintiffs commenced this action on about January 29, 2021 after learning of Defendant Alongi's use of Funds' resources to benefit an unrelated third party in contravention of

---

[1] William McLaughlin is a Defendant-in-Counterclaim, only.
[2] The Fund Plaintiffs are not producing Joyce A. Mader to testify in this matter in any capacity. Accordingly, Defendant's Motion *in Limine* to preclude Mader's testimony should be denied as moot.

her duty to use such resources for the sole and exclusive benefit of participants or to defray reasonable and necessary costs.  (ECF No. 1). After Defendant Alongi's termination, the Fund Plaintiffs retained Schultheis & Panettieri, LLP ("Schultheis"), an independent auditing firm that specializes in providing services to multiemployer employee benefit plans, to investigate "whether or not inappropriate transactions occurred under the supervision of the former Fund Administrator," Defendant Alongi. (ECF No. 127-3, p. 4; Exhibit A, Heinzman Deposition, 9:1-25, 11:2-15, 12:1-2).  Heinzman oversaw the investigation, personally interviewed individuals,[3] reviewed emails, schedules and worksheets, and personally drafted the report with the assistance of Waldren and Vincent Panettieri. (Ex. A, p. 20:2-16, 21:15-22).

Heinzman's deposition discusses the processes employed in the investigation. In addition to interviewing employees of the Fund Plaintiffs at the relevant times (Heinzman 20:17-24), Heinzman and Waldren requested and reviewed a myriad of the Fund Plaintiffs' business records and summarized their findings in the report. For example, to investigate vacation time payouts, Heinzman analyzed "vacation/sick schedules by person" that the Fund office maintains, "laying out the allotted vacation time versus the vacation time actually taken and/or paid." (Ex. A, p. 27:15-20). When Heinzman "looked at those schedules and calculations, there were 38 and a half hours additional vacation paid out…due to the alleged spreadsheet errors." (Ex. A, p. 28:1-12). Heinzman also investigated the Coalition's financial statements, such as the Form 990, to determine how many hours per week Defendant Alongi worked for the Coalition while employed by the Fund Plaintiffs, also analyzing records showing her start times, when she was in the office, and when she used her work phones. (Ex. A, p. 104:11-19). He also received the data from

---

[3] Heinzman interviewed Laura-Jean Hickey, Rosemarie Ortega, and Rebecca Zaccardi. (Heinzman 20:17-24). Hickey, Ortega, and Zaccardi are all identified as witnesses on the Fund Plaintiffs' witness list pursuant to Federal Rule of Civil Procedure 26(a)(3)(A)(i). (ECF No. 133, p. 2).

Defendant Alongi's swipe card to see when she was in the office, and compared those times to records of her phone calls and emails. (Ex. A, p. 103:10-15, 106:4-24).

After requesting and reviewing these various records and interviewing employees, Heinzman and Waldren drafted a report in late 2020, summarizing their findings and providing summary charts of the relevant records. (ECF No. 127-3 pp. 10-53). The report was then issued in final form on April 21, 2021. (ECF No. 127-3, p. 9). Heinzman did not offer any opinion on his findings; rather, the report specifically provides:

> We were not engaged to and did not conduct an examination or review engagement, the objective of which would be the expression of an opinion or conclusion, respectively, on the extent of questionable transactions, payments, expenditures, misappropriation and/or other irregularities that may have occurred. Accordingly, we do not express an opinion or conclusion.

*Id.*

## II.    <u>LEGAL ARGUMENT</u>

Heinzman and Waldren are permitted to testify concerning their investigation and review of the Fund Plaintiffs' regularly kept business records pursuant to Federal Rules of Evidence 602 and 701. While Defendant Alongi's Motion *in Limine* specifically asks this Court to preclude Heinzman and Waldren's testimony as experts, she also suggests that they may not serve as fact witnesses under Federal Rule of Evidence 602 or lay witnesses under Federal Rule of Evidence 701 because, in her view, their "prospective testimony is clearly based on technical or specialized knowledge outside the bounds of permissible lay witness testimony." (ECF No. 127, p. 7). Notably, Defendant makes no effort to argue how Heinzman and Waldren's testimony is "clearly" based on "technical or specialized knowledge" and cites no authority whatsoever for the proposition. Discussed below, Heinzman and Waldren's testimony is not expert testimony, but rather, is permissible fact and lay witness testimony under Rules 602 and 701.

### A.  Heinzman and Waldren Are Not Providing Expert Testimony

Whether testimony is expert or lay "does not depend on the identity of the witness, but rather on the nature of the testimony." *Official Committee of Unsecured Creditors v. CalPERS Corporate Partners, LLC*, 2021 WL 3264272 (D. Me. July 30, 2021) (citing *Portland Pipe Line Corp. v. City of Portland,* 288 F.Supp.3d 321, 336 Fn. 10 (D. Me. 2017). "[T]he distinction between lay and expert testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field." *Perez v. Hyundai Motor Co.*, 440 F.Supp.2d 57, 70 (D. P.R. 2006) (citing Fed. R. Evid. 701 Advisory Committee Note (2000)). The fact that a witness has specialized knowledge or could qualify as an expert is irrelevant. *See Falconer v. Penn Maritime, Inc.,* 421 F.Supp.2d 190, 208 (D. Me. 2006) ("The line between lay and expert testimony is not always easily drawn, and the same witness may be qualified to provide both."); *see e.g., Bank of China, New York Branch v. NBM, LLC*, 359 F.3d 171, 181 (2nd Cir. 2004) ("the fact that Huang has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise in international banking.").

Heinzman and Waldren's testimony, concerning their review of the Funds Plaintiffs' business records concerning payroll, annuity distributions, phone calls, office entry, vacation time, and cost allocations to the Coalition, along with the employee handbook and employee emails, is not expert testimony. Reviewing, summarizing, and noting inconsistencies in these business records does not require "a process of reasoning which can be mastered only by specialists in the field" – rather, these are the kinds of records that lay people, such as the Fund's office staff, work

with daily. "The First Circuit has explained the distinction between 'experiential knowledge that relies on reasoning processes familiar to the average person and more specialized knowledge.'" *Official Committee of Unsecured Creditors*, 2021 WL 3264272 at *3 (citing *United States v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016)).

Heinzman and Waldren's testimony concerning their investigation of the Fund Plaintiffs' business records does not require the kind of "specialized" or "technical" knowledge or them to be "specialists in the field" to render it expert testimony. *Perez,* 440 F.Supp.2d at 70. For example, in *Perez*, a witness's testimony concerning the operation of a vehicle's "electronic control unit," which "records the hours of operation of the airbag sensor," and how to retrieve and download the data it creates, was expert testimony because it "derives exclusively from a formal education or specialized training not from ordinary observations," as the "intricacies  of the retrieval and function of the [electronic control unit] constitutes specialized technical knowledge." 440 F.2d at 70-71, Fn. 26; *see also Vega*, 813 F.3d at 395 (witness was an expert where "they could form their opinions only by understanding technical Medicare laws and regulations."); *Boudreau v. Lussier*, 2015 WL 7720503 at *7 (D. R.I., Nov. 30, 2015) (testimony was expert testimony when it concerned "technology…[that] is not commonly used and therefore… not within the experience of the average juror.").

By contrast, Heinzman and Waldren testimony concerns their investigation of the Fund Plaintiffs' simple, unencrypted business records for which no specialized or technical knowledge or ability is required to review, compare and summarize. It does not require specialized or technical knowledge to review, compare and summarize Defendant's office entry and phone call times to her assigned hours of work. Nor does it require any specialized knowledge or training to review, compare and summarize records showing annuity distributions, approval for vacation time, or

records concerning reimbursement or costs allocated for the Coalition. Reviewing, summarizing, and doing simple mathematical calculations is hardly complex enough to constitute expert testimony. Indeed, in *Bryant v. Farmers Ins. Exchange,* the court permitted lay opinion testimony over objection that the testimony was based on specialized or technical knowledge, explaining that "[t]aking a simple average of 103 numbers, though technically a statistical determination, is not so complex a task that litigants need to hire experts in order to deem the evidence trustworthy." 432 F.3d 1114, 1124 (10th Cir. 2005). "A mathematical calculation well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed.R.Evid. 701." *Id*.

There is nothing in Heinzman's deposition indicating that any kind of specialized or technical knowledge was required to obtain the data (which he simply requested), interpret the data, or summarize the data. Rather, these are regularly kept business records that lay people manage on a daily basis, not novel technologies or processes for which a formal education or specialized training is required to understand. *See Perez*, 440 F.2d at 70-71, Fn. 26. Accordingly, Heinzman and Waldren are not testifying as experts but rather, as lay witnesses under Rule 602 and, to the extent they offer opinions, Rule 701.

**B.  Heinzman and Waldren May Testify Regarding Their Investigation of the Fund Plaintiffs' Business Records Pursuant to Rule 602**

Heinzman and Waldren's non-expert testimony is governed by Rule 602, which simply requires that a witness have personal knowledge of the matters to which they testify. Fed. R. Evid. 602. In fact, in the First Circuit and elsewhere, auditors such as Heinzman and Waldren are routinely permitted to testify under Rule 602 regarding the results of their investigations or audits without qualification as experts, where they reviewed relevant records. *See Trustees of Intern. Pension Fund v. Paul G. White Tile Co*., 2000 WL 761888, Fn. 2 (D. Me. March 21, 2000) (an

accountant, hired "to review Defendant's records and conduct an audit to determine the amount of contributions Defendant underpaid to the funds," was able to testify regarding the amount owed by Defendants based on his "personal knowledge of Defendant's records"); *Campbell v. CGM, LLC*, 2016 WL 6989769 (D. N.H. Nov. 29, 2016) ("a company's accountant with personal knowledge of the company's books may testify about the specific factual information with which he is familiar from his work, that is, the accountant's personal knowledge based on his ordinary duties."); *Official Committee of Unsecured Creditors*, 2021 WL 3264272 at *2 (explaining that "[a]s an independent auditor, Mr. Rendell possesses first-hand knowledge about LPT's financial records during the relevant time period" and finding that he can testify about the same as a lay witness "about the specific factual information with which he is familiar from his work.").[4]  For example, in *Deslauriers v. Chertoff*, 2008 WL 5428161 (D. Me. 2008), a non-expert witness, retained by the Department of Homeland Security ("DHS") to analyze their business records concerning hiring and promotion in an age discrimination case, was permitted to testify about the "data in question" because she reviewed DHS's business records. *Id*. at *4. She could also testify

---

[4] Reviewing a business's records is nearly always a sufficient basis of personal knowledge for fact witness testimony. *U.S. v. Sutton*, 795 F.2d 1040 (Temp. Emergency Ct. of App. June 11, 1986) (finding that witness could testify as a lay witness about an audit, where he supervised the audit and summarized the work of approximately 20 auditors who worked on the project, because his testimony was based on personal knowledge of the audit); *United States v. Aubrey*, 800 F.3d 1115, 1129-30 (9th Cir. 2015) (auditor, who was not disclosed as an expert, could testify regarding the investigation, the documents he reviewed, and the methods he used to prepare his summary, but could not provide an in-depth analysis of various accounting methods); *Brown v. Bank of Am.*, 2015 WL 5163045, at *3 (D. Mass. Sept. 3, 2015) (personal knowledge requirement for an affidavit satisfied by an affiant was "reviewed [the bank]'s regularly kept business records pertaining to the [plaintiff's] Loan"); *Cremaldi v. Wells Fargo Bank*, 2017 WL 1190377, at *3 (D. Mass. Mar. 30, 2017) (sufficient personal knowledge where affiant was "familiar with the business records maintained by Wells Fargo for the purpose of servicing mortgage loans and [has] personal knowledge of the operations and the circumstances surrounding the preparation, maintenance and retrieval of records in Wells Fargo's recordkeeping systems."); *Holland v. Select Portfolio Servicing, Inc.,* 301 F.Supp.3d 218, 224 (D. Ma. 2018) (witness had sufficient personal knowledge of facts alleged in the affidavit where "the affiant conducted a personal review of the records."); *Facey v. Dickhaut*, 91 F.Supp.3d 12, 20-21 (D. Ma. 2014) ("Motions to strike have been denied even where the declarant did not personally experience the matters discussed in the affidavit but did review business or public records and included information from those records with the affidavit."); *Bonner v. Triple-S Management Corp.,* 68 F.4th 677, 687-88 (1st Cir. 2023) (affiant's affidavit based on sufficient personal knowledge where the affiant "personally reviewed the employment records.").

about data concerning transfers of employees because it is "nothing more than factual testimony drawn from her review and organization of certain Department hiring data." *Id*.

Similarly here, Heinzman and Waldren can testify regarding the "data in question" – *i.e.*, the records concerning wages, vacation reporting and buyouts, PTO use, cost allocation to the Coalition, phone call logs and office entry times – because they reviewed those records, and their testimony is thus "nothing more than factual testimony drawn from" their review of the Fund Plaintiffs' business records. Heinzman and Waldren will testify regarding the specific factual information gleaned from the Fund Plaintiffs' business records and, therefore, their testimony is permitted under Rule 602, without the need for expert qualification.

### C.  Heinzman and Waldren May Offer Lay Opinion Testimony Pursuant to Federal Rule of Evidence 701

To the extent their testimony includes opinions, Heinzman and Waldren are permitted to testify under Rule 701, which permits lay opinion testimony where the opinions are "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see United States v. Vega-Figueroa*, 234 F.3d 744, 755 (1st Cir. 2000) ("[T]he modern trend favors the admission of opinion testimony provided it is well founded on personal knowledge and susceptible to cross-examination."). Heinzman and Waldren's testimony concerning their investigation is undoubtedly based on their perception of the Fund Plaintiffs' records, is helpful in understanding the facts and data underlying this case concerning Defendant's misuse of Fund resources, and as explained above, is not based on any scientific, technical or specialized knowledge.

Heinzman and Waldren's review and perceptions of the Fund Plaintiffs' business records are proper for lay opinion testimony under Rule 701. "A witness may testify under Rule 701 about

'inferences that he could draw from his perceptions of a business's records, or 'facts and data perceived' by him in his corporate capacity." *National Starch and Chemical Trading Co., Ltd. v. M/V STAR INVENTANA*, 2006 WL 1876996 at *3 (D. Me., July 5, 2006) (citing *Teen-Ed, Inc. v. Kimball Intern., Inc*., 620 F.2d 399, 403 (3rd Cir. 1980)); *United States v. Paiva*, 892 F.2d 148, 157 (1st Cir.1989) ("[T]he individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge."); *Allied Systems, Ltd. v. Teamsters Auto. Transport Chauffeurs, Demonstrators and Helpers, Local 604*, 304 F.3d 785, 792 (8th Cir. 2002) ("Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony."). Moreover, a lay witness "may express certain opinions about business operations and industry practices so long as the testimony is based on personal knowledge." *United States v. Thompson,* 229 F.Supp.3d 91, 93 (D. Ma. 2017).

In *Teen-Ed*, for example, the Third Circuit found that "[t]he personal knowledge of appellant's balance sheets acquired by [plaintiff's accountant] was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify this opinion of how lost profits could be calculated and to inferences that he could draw from his perception of [plaintiff's] books" and that he "could have testified on the basis of facts or data perceived" by him in his capacity as the plaintiff's accountant." *Teen-Ed*, 620 F.2d at 403. No different here, the "personal knowledge of" the Fund Plaintiffs' wage, annuity, vacation, hours, call logs and cost allocation records "acquired by" auditors Heinzman and Waldren is "clearly sufficient under Rule 602 to qualify" them as witnesses under Rule 701 to testify regarding their perceptions and inferences arising from their investigation and review of the Fund Plaintiffs' records.

Heinzman and Waldren's testimony will concern a factual recitation of their review of the Fund Plaintiffs' business records and any perceptions or inferences drawn from such review, none of which requires technical or specialized knowledge, and all of which will assist the Court in understanding the facts of this case, which will require an analysis of the Fund Plaintiffs' records to determine the extent of Defendant Alongi's fiduciary violations. To the extent Defendant Alongi takes issue with Heinzman or Waldren's methods of investigation or findings, her quarrel is with the weight that should be given to such testimony, not its admissibility. *Robinson v. Watts Detec. Agency, Inc*., 685 F.2d 729, 739 (1st Cir. 1982) (explaining that whether an "opinion is accurate goes to the weight of the testimony, not its admissibility."). Accordingly, Heinzman and Waldren's are permitted under Rules 602 and 701 to testify regarding their investigation, and Defendant's Motion *in Limine* should be denied.

### D. It Is Entirely Too Premature to Exclude Heinzman and Waldren's Testimony

Alternatively, even if this Court is not entirely convinced that Heinzman and Waldren's testimony would not cross the line into expert testimony, "it is premature at this juncture to prohibit [them] from testifying." *Official Committee of Unsecured Creditors*, 2021 WL 3264272 at *3. While there is no reason to believe that Heinzman and Waldren's testimony will invoke any specialized or technical knowledge, at this late stage of the case, the issue is best left to management at trial, if necessary, where Defendant can object to testimony it believes crosses the line and may subject Heinzman and Waldren to vigorous cross examination. *National Starch and Chemical Trading Co*., 2006 WL 1876996 at *3 (finding it "not possible to determine what portion of [the witness's] testimony, if any, will constitute lay opinion," holding that "[t]hose determinations must be left until trial," as it was "only possible now to conclude that the testimony

should not be excluded at this time."). As such, Defendant Alongi's Motion *in Limine* should be denied.

### III.  <u>**CONCLUSION**</u>

For all of the foregoing reasons, the Fund Plaintiffs respectfully request that this Honorable Court enter an order DENYING Defendant Alongi's Motion *in Limine* to preclude the testimony of James Heinzman and Gary Waldren.

**[Remainder of page left intentionally blank. Signatures on next page]**

Respectfully submitted,

IUOE LOCAL 4 HEALTH AND WELAFARE
FUND, IUOE LOCAL 4 PENSION FUND, IUOE
LOCAL 4 ANNUITY AND SAVINGS,
HOISTING AND PORTABLE ENGINEERS
LOCAL 4 APPRENTICESHIP AND TRAINING
FUND, IUOE LOCAL 4 LABOR-
MANAGEMENT COOPERATION TRUST,
INTERNAIONAL UNION OF OPERATING
ENGINEERS LOCAL 4, AND IUOE LOCAL 4
SOCIAL ACTION COMMITTEE
*/s/ Jennifer L. Markowski*
Jennifer L. Markowski, BBO# 655927
Katherine C. Chenail, BBO# 655927
Alexandra F. Held, BBO# 711052
FREEMAN MATHIS & GARY, LLP
60 State Street, Suite 600
Boston, MA 02109
Tel: (617) 963-5975
jmarkowski@fmglaw.com
Katherine.chenail@fmglaw.com
Alexandra.held@fmglaw.com

s/ Charles W. Gilligan
Charles W. Gilligan (admitted pro hac vice)
Daniel Keenan (admitted pro hac vice)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
cgilligan@odonoghuelaw.com

<u>Date</u>: January 10, 2025                    dkeenan@odonoghuelaw.com

13

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer L. Markowski, hereby certify that I have, on this 10th day of January 2025, served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF).

<i>/s/ Jennifer L. Markowski</i>